FAXED

E-filing

FILED

2012 AUG 21 P 2: 25

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL

1  SEAN P. REIS - SBN 184044
   (sreis@edelson.com)
2  EDELSON MCGUIRE, LLP
   30021 Tomas Street, Suite 300
3  Rancho Santa Margarita, California 92688
   Telephone: (949) 459-2124
4  Facsimile: (949) 459-2123

5  JAY EDELSON
   (jedelson@edelson.com)*
6  RAFEY S. BALABANIAN
   (rbalabanian@edelson.com)*
7  BENJAMIN H. RICHMAN
   (brichman@edelson.com)*
8  CHANDLER R. GIVENS
   (cgivens@edelson.com)*
9  EDELSON MCGUIRE, LLC
   350 North LaSalle Street, Suite 1300
10 Chicago, Illinois 60654
   Telephone: (312) 589-6370
11 Facsimile: (312) 589-6378

12 *Pro hac vice admission to be sought

13 Attorneys for Plaintiff BENSON WORLEY

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION

17 BENSON WORLEY, individually and on behalf    Case No.  CV 12 4391
   of all others similarly situated,
18                                              COMPLAINT FOR:
              Plaintiff,
19                                              1. Violations of California's Unfair
        v.                                         Competition Law, Cal. Bus. & Prof.
20                                                 Code §§ 17200, et seq.;
   AVANQUEST NORTH AMERICA INC., a              2. Fraudulent Inducement;
21 California corporation,                      3. Breach of Express Warranties, Cal.
                                                   Com. Code § 2313;
22            Defendant.                        4. Breach of Contract; and
                                                5. Breach of the Implied Covenant of
23                                                 Good Faith and Fair Dealing

24                                              DEMAND FOR JURY TRIAL

25                                              CLASS ACTION

26
27
28
   CLASS ACTION COMPLAINT

Plaintiff Benson Worley brings this Class Action Complaint ("Complaint") against Defendant Avanquest North America Inc. ("Avanquest" or "Defendant") for its practice of defrauding consumers through the deceptive design and sale of its software products. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Avanquest is a multi-national developer of software products that claim to increase the speed, performance, and stability of a consumer's personal computer ("PC"), protect against privacy risks, remove harmful errors, and improve Internet speeds.

2. At issue in this lawsuit are two of Avanquest's software products: Fix-It Utilities and System Suite PC Tune-Up & Repair (collectively, the "Scareware").[2] The Scareware is available for purchase online through Avanquest's websites, third-party resellers, and in packaged form at brick-and-mortar stores such as Best Buy and Office Depot. Through the marketing materials contained on its websites, as well as the software's packaging itself, Avanquest represents that the Scareware detects and repairs a wide range of PC errors, privacy threats, viruses, and other computer problems. Avanquest also promises that the Scareware increases system startup speeds, optimizes a user's PC performance, and removes security risks.

3. In reality, Avanquest's descriptions of the Scareware's utility serve as the initial phase of a fraudulent scheme to induce consumers into purchasing its products, and then to convince them into paying ongoing subscription fees to continue using the software.

4. Although its software is technologically complex, the paradigm used by Avanquest to defraud consumers is simple. First, Avanquest describes its Scareware as software that will restore a PC's functionality by removing harmful errors, privacy threats, and increasing Internet speeds. Induced by these representations, the consumer purchases the Scareware. After installing

---

[2] Although the functionality and graphical aesthetics of System Suite PC Tuneup & Repair and Fix-It Utilities are nuanced, the two products deceive users in a common deceptive manner.

and running the Scareware, the consumer is encouraged to conduct a "diagnostic scan" to assess the condition of his or her PC.

5. The Scareware then invariably reports, in ominous fashion, that harmful problems are lowering the PC's condition. The user is then offered the ability to "fix" the PC by removing the errors reported by the Scareware. However, as explained more fully herein, the Scareware's diagnostic testing procedure *does not perform any credible evaluation* of consumers' PCs. Instead, Avanquest intentionally designed the Scareware to always report that a user's PC needs repair and is afflicted with harmful errors, privacy risks, and other problems—regardless of its actual state. The average consumer logically assumes that errors detected through this "diagnostic scan" correspond to the harmful problems identified by Avanquest's marketing materials.

6. The process described above is repeated each time a user runs the Scareware. Critically, the Scareware is offered on a yearly subscription basis. As such, the average consumer (unaware of the deceptive nature of the software) is convinced that the Scareware is detecting, reporting, and repairing actual errors harming their PC's performance. Thus, because the Scareware was designed to invariably "detect" harmful errors, the consumer is fraudulently induced into continuing to renew his or her subscription.

7. Avanquest holds itself out as a reputable leader in the "utility software" industry—i.e., software that enhances and or repairs a PC's functionality. Because average consumers lack the requisite technical expertise to understand the underlying operations of Avanquest's software, they trust the company to convey truthful information about its products, and for its products to honestly and accurately identify and remove harmful errors from their PCs. Avanquest betrayed that trust, and as a result thousands of consumers have been, and continue to be, tricked into paying for its unlawful Scareware.

**PARTIES**

8. Plaintiff Benson Worley is a natural person and citizen of the state of Wisconsin.

9. Defendant Avanquest North America Inc. is a California corporation with its

CLASS ACTION COMPLAINT                      3

headquarters and principal place of business located at 7031 Koll Center Parkway, Suite 150, Pleasanton, California 94566.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) at least one Class member is a citizen of a different state than Defendant, (b) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11. This Court has personal jurisdiction over Avanquest because it conducts business in California and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from California.

12. More specifically, Avanquest's relevant operations, including its headquarters and primary sales and marketing operations are located in California. Vital employees, such as Avanquest's Director of Online Marketing, Vice President of Strategic Sales and Marketing, Director of Business Development, and Vice President of eCommerce and Direct Marketing are all located in California. Thus, Avanquest's decisions regarding the programmatic design of the software, as well as the representations made about the Scareware's utility, emanated from California.

13. Venue is proper in this District because Avanquest maintains its headquarters in this District and because the improper conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

## INTRADISTRICT ASSIGNMENT

14. Pursuant to Civil Local Rule 3-2(d), this case shall be assigned to the San Francisco Division.

# FACTUAL BACKGROUND

15. Founded in 1984 as French company BVRP Software, Avanquest[3] has today become a global leader in the PC utility software industry. Avanquest boasts that it is one of the "ten leading consumer software developers" in the world,[4] and asserts that its mission is to design software to "provide a more secure and enjoyable experience to people looking for easy and affordable software solutions in everyday life."[5]

16. According to Avanquest, Fix-It Utilities Professional and System Suite PC Tune-up & Repair are its "#1 selling disk utility" and "Anti-virus/Anti-spyware" products. Avanquest claims that these software products offer a "complete package" that "make it easy to diagnose and fix your computer."

## I. Avanquest Tricks Consumers into Purchasing its Scareware Through a Common Deceptive Scheme.

17. A consumer searching the World Wide Web for software to repair a damaged computer, protect against privacy threats, or generally increase the speed or performance of a PC will likely encounter advertisements for Avanquest's Scareware. Upon clicking on an advertised hyperlink, the individual will be re-directed to Avanquest's website, which contains representations about the Scareware's utility—thus triggering the initial phase of Avanquest's deceptive scheme.

18. These same representations are likewise found on Avanquest's product packaging. Statements about the Scareware's alleged utility and function are located on both the front and back cover of the box containing the software, and are meant to be viewed by consumers contemplating purchasing the product.

---

[3] In 1996, Defendant formed BVRP USA, which was later renamed Avanquest North America Inc.

[4] Corporate Profile, http://www.avanquest.com/USA/corporate/company/history.html (last visited June 19, 2012).

[5] Mission and Values, http://www.avanquest.com/USA/corporate/company/mission_and_values.html (last visited June 19, 2012).

*Avanquest uniformly misrepresents the utility of its Scareware.*

19. On its websites, as well as on the Scareware products' packaging, Avanquest provides specific affirmations about the Scareware's functionality. Generally, Avanquest asserts that using its Scareware will improve the efficiency and performance of PCs, increases system stability, repair errors, stop PC crashes and freezes, and serve as a comprehensive tool to fix problems.

20. Specifically, Avanquest represents through its website (www.avanquest.com) that its Fix-It Utilities and System Suite PC Tune-Up & Repair products are designed to:

- "Clean, fix and optimize the Windows Registry";
- "Stop PC Crashes and Freezes";
- "Repair System Errors";
- "Optimize Internet speed and memory";
- Provide "Total Virus and Spyware Protection"; and
- Provide "Complete PC Maintenance."

21. On its website, Avanquest further asserts that "with Fix-It Utilities and System Suite's award-winning integrated technology[,] you'll get complete Virus Protection" and "[r]emove existing viruses, malware and spyware from your PC, plus prevent future infections without sacrificing speed and performance." Avanquest also states that "Fix-it Utilities runs hundreds of comprehensive diagnostic tests for you and will have your PC running like new all over again."

22. Likewise, on its System Suite PC Tune-Up and Repair 12 retail product packaging, Avanquest asserts that the product will:

- "Fix Windows Problems";
- "Speed Up PC Start Time";
- Provide "Malware, Virus, and Spyware Protection";
- Provide "PC Diagnostics and Maintenance";
- "Eliminate PC Crashes and Freezes"; and

- "Clean and Repair Windows Registry."

23. Regarding Fix It Utilities 12, Avanquest's retail product packaging states that the product will:

- "Keeps your PC running like new";
- "Intelligently identifies system slowdowns";
- "Fixes problems and speeds up Windows";
- Provides "Real time virus and spyware protection"; and
- "Stops PC Crashes and Freezes."

24. On information and belief, each of these representations were designed by and disseminated from Avanquest's sales and marketing teams located in its California offices and headquarters.

25. Because of the impression created in consumers' minds by the foregoing affirmations of fact about the Scareware products, individuals rightfully believe that Avanquest's software will detect the errors and problems identified above. To validate this belief, Avanquest designed the Scareware to appear as though it is performing an actual analysis of consumers' PCs. This facade, however, is simply the second phase of Avanquests's scheme.

*Avanquest falsely informs consumers that their computers need repair, without conducting any credible evaluation of the PCs' conditions.*

26. Upon purchasing, installing, and running the Scareware for the first time, a display screen is presented to the user, which indicates that the computer's condition is dangerously low. Visual representations of three cylinders, labeled "Optimization," "Security," and "Maintenance," are shown, with color spectrums ranging from red to green, along with corresponding percentages supposedly representing an analysis of the computer's health status. Clicking on a link to view the problems that Avanquest claims are afflicting the computer reveals a message that "X amount of problems are affecting your PC's health and security."

27. While these visual and textual representations appear alarming to the user, the truth is that Avanquest designed the Scareware to report these conditions without *any* real evaluation of

the computer's condition. In this way, the user believes that the Scareware is actually detecting and reporting harmful errors, presumably associated with the errors that Avanquest represented the software would remedy, i.e. PC crashes and freezes.

### II. Plaintiff's Expert Uncovers that Avanquest Designed its Scareware to Invariably Report Benign Errors as Harmful.

28. On the surface, it appears as if the software is actually detecting, reporting, and repairing errors that threaten the operations of a user's PC. In reality, however, Avanquest intentionally designed its Scareware to vastly overstate both the amount and severity of errors that the software purportedly fixes in an effort to convince consumers that the software functions as advertised—i.e., that it actually detects and removes harmful threats and PC problems.

29. Through his attorneys, Plaintiff has engaged a computer forensics expert to examine Avanquest's Scareware. The results of this investigation confirm that the software always reports that a user's PC is in poor condition, without performing any credible analysis. In certain versions of the software, users are informed that their system's health is dangerously low—before *any* scan is conducted. Ostensibly these representations scare the user into believing that the PC is damaged or at risk, and that use of the Scareware is necessary to "fix" these problems. Worse, Plaintiff's expert determined that, by any stretch of the imagination, many of the errors detected *are not credible threats* to a PC's functionality.

30. In relevant part, the expert's investigation further uncovered that Avanquest programmed its Scareware to (i) always identify problems on a user's computer (even when none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous items as harmful threats, and (iv) arbitrarily report that the user's "Overall," "Security," and "Maintenance" are low without using any credible metrics to assess these issues.

31. Through the deceptive scheme described above, Avanquest has profited, and continues to profit, by defrauding consumers into believing that their PCs are severely damaged and/or at risk, and that the purchase and continued use of its Scareware is necessary to "fix" these problems.

### III. Plaintiff Worley's Experience.

32. In early 2012, Plaintiff Benson Worley began to experience problems with his computer. Specifically, Plaintiff's computer would occasionally "freeze up" and malfunction.

33. Accordingly, Worley visited his local Wal-Mart retailer to search for software that would remedy his computer problems. At the store, Plaintiff discovered Avanquest's System Suite 12 software, and viewed Defendant's representations about the software's utility located on its box and packaging materials, such as those described in Paragraph 23, including its assertion that the product will "Eliminate PC Crashes and Freezes."

34. Relying upon the packaging's representations, Plaintiff purchased Avanquest's System Suite 12 for $35.00. Plaintiff purchased System Suite under the false belief—created by Avanquest's representations—that the software would accurately scan his computer for issues and prevent his computer from continuing to malfunction.

35. Upon running System Suite 12 for the first time, the software reported that the "Security," "Maintenance," and "Overall" status of his computer was poor, and displayed graphical representations reflecting the same. Because Avanquest designed its software to *always* report these statuses, Worley was misled into believing that his computer was riddled with errors that were causing it to malfunction—as no actual assessment of the computer occurred.

36. Through the software's design, Avanquest deceived Worley into thinking the Scareware was making meaningful repairs to his PC, thus he elected to continue using the program rather than ever seeking a refund. Worley was further deceived by the software's representations that it was removing harmful errors and threats from his computer.

37. Contrary to Defendant's representations, the System Suite software purchased by Plaintiff did not perform the functions as described on its packaging, and Plaintiff's computer continued to malfunction.

38. Plaintiff reasonably relied upon Avanquest's representations about System Suite's utility, in that he believed the software would actually perform the operations described above and

restore his computer's functionality. But for these representations, Plaintiff would not have purchased the software.

**CLASS ALLEGATIONS**

39. **Class Definition:** Plaintiff Benson Worley brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States and its territories that have purchased Fix-It Utilities Professional or System Suite PC Tune-up & Repair.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

40. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, Avanquest has sold its software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through Avanquest's records.

41. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Avanquest's uniform wrongful conduct during transactions with Plaintiff and the Class. Plaintiff's claims are typical of the claims of all of the other members of the Class.

42. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Avanquest has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this

CLASS ACTION COMPLAINT 10

action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

43. **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members:

    a) whether Defendant intentionally designed its software to deceive consumers into purchasing its products;

    b) whether Defendant's conduct described herein constitutes a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

    c) whether Defendant's conduct described herein constitutes fraudulent inducement;

    d) whether Defendant's conduct described herein constitutes a breach of express warranties under the California Commercial Code § 2313; and

    e) whether Defendant's conduct described herein constitutes a breach of contract.

44. **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Avanquest's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Avanquest's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

1. court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

45. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Avanquest has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Avanquest's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Avanquest's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Avanquest has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.

46. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned in discovery.

### FIRST CAUSE OF ACTION
### Violations of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff and the Class)

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48. California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

49. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.

50. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

51.     Likewise, the price of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a product is materially misleading.

52.     As described herein, Avanquest engaged in fraudulent, unfair, and unlawful business practices as defined by the UCL by, *inter alia*: (i) misrepresenting the utility of its Scareware to consumers through representations such as those described in Paragraphs 20-23, (ii) misrepresenting the results of diagnostic scans to consumers, (iii) scaring consumers with false scan results for the purpose of tricking consumers into using the Scareware, (iv) breaching its express warranties in violation of California Commercial Code § 2313, and (v) selling Scareware that lacks the advertised utility.

53.     Specifically, Avanquest affirmatively represented to Plaintiff that the Scareware would honestly and accurately scan his PC for harmful problems, increase his PC's speed and stability, increase the speed of his Internet connection, and protect his PC from harmful programs. Further, through the Scareware itself, Avanquest affirmatively represented that Plaintiff's PC system status was low and that errors existed on his PC.

54.     The above affirmative representations, as well as the results of the "diagnostic scan" provided by the software were in fact false. The Scareware did not perform an actual evaluation of Plaintiff's computer or any problems contained on it, and did not function as Avanquest described.

55.     Avanquest violated the UCL's fraudulent prong by intentionally designing the Scareware to report fake errors and misrepresent the system status of consumers' computers, with the intent to defraud consumers into purchasing the Scareware. A reasonable consumer was likely to rely, as Plaintiff and the Class did, on Avanquest's misrepresentations regarding the benefits conferred by the Scareware. Moreover, Avanquest's misrepresentations were likely to deceive reasonable consumers, and, in fact, did deceive Plaintiff and the Class into purchasing Scareware that lacked the advertised utility.

56.     Avanquest has also violated the UCL's "unfair" prong by causing substantial injury

to consumers through the conduct alleged above. The injuries caused by Avanquest's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and could not reasonably have been known by consumers. Given the information asymmetry between Avanquest and consumers regarding the Scareware's functionality, Plaintiff and the Class could not reasonably have known of the falsity of Avanquest's representations or avoided the harm those misrepresentations caused.

57. Further, Avanquest violated the UCL's "unlawful" prong by breaching its express warranties to Plaintiff and the Class, in violation of Cal. Com. Code § 2313 (as detailed in Count III below). Avanquest's fraudulent marketing practices also violate California's public policies favoring enforcement of express and implied warranties.

58. Avanquest's fraud and unfair conduct occurred during the marketing and sale of computer software products, and therefore occurred in the course of Avanquest's business practices. This conduct occurred out of and emanated from Defendant's offices and headquarters in California.

59. Plaintiff and the Class have suffered harm in the form of actual monetary damages as a direct and proximate result of Avanquest's fraudulent and unfair conduct.

60. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Avanquest from continuing to engage in the unfair, unlawful, and fraudulent conduct described herein. Plaintiff seeks an order (1) requiring Avanquest to cease the unfair and unlawful practices described herein; and (2) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

### SECOND CAUSE OF ACTION
### Fraudulent Inducement
### (On Behalf of Plaintiff and the Class)

61. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

62. As described with particularity in Paragraphs 15 through 38 and throughout all

CLASS ACTION COMPLAINT                 14

1  Counts of this Complaint, Avanquest has used, and continues to use, marketing tactics it knows or
2  reasonably should know are false and misleading.

3      63.    To induce Plaintiff to purchase the Scareware, Avanquest affirmatively represented
4  to Plaintiff that the Scareware possessed certain utility. Specifically, Avanquest represented that the
5  Scareware would honestly and accurately scan his PC for harmful problems, increase his PC's
6  speed and stability, increase the speed of his Internet connection, protect his computer from harmful
7  programs, and perform beneficial tasks such as those described in Paragraph 23. Further, through
8  the Scareware itself, Avanquest affirmatively represented that Plaintiff's PC system status was low
9  and that errors existed on his PC.

10      64.    The utility of a consumer product is a material term of any transaction because it
11  directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any
12  deception or fraud related to the utility of a product is materially misleading.

13      65.    As the Scareware's developer, Avanquest knew that its representations about the
14  Scareware's utility were false. Avanquest intentionally designed its public representations to
15  mislead consumers about the Scareware's utility, and programmed the Scareware to falsely report
16  PC errors and to deceive users about their computers' system health

17      66.    Avanquest made its misrepresentations specifically so as to induce Plaintiff and the
18  Class' reliance. Plaintiff and the Class did in fact rely upon these misrepresentations and purchased
19  the Scareware to their detriment.

20      67.    As a consumer lacking the requisite technical expertise to independently gauge the
21  Scareware's underlying functionality, and taking Avanquest's statements at face value, Plaintiff
22  justifiably relied upon Avanquest's misrepresentations and would not have purchased the Scareware
23  but for the misrepresentations that the Scareware would perform the beneficial tasks advertised.

24      68.    By using false and fraudulent marketing tactics to misrepresent the Scareware's
25  actual utility, and inducing Plaintiff and the Class to purchase the Scareware based on those
26  misrepresentations, Avanquest has engaged in fraudulent practices designed to mislead and deceive

27
28

CLASS ACTION COMPLAINT             15

consumers.

69. As a result of relying on Avanquest's misrepresentations, Plaintiff has been damaged in the amount of the Scareware's purchase price.

70. Plaintiff therefore prays for relief in the amount of the purchase price of Avanquest's Scareware. Plaintiff further alleges that Avanquest's conduct and misrepresentations were made with malice and in conscious disregard of Plaintiff's rights, thereby entitling him to punitive damages against Avanquest in an amount sufficient to deter such conduct in the future.

### THIRD CAUSE OF ACTION
### Breach of Express Warranties
### Pursuant to Cal. Comm. Code § 2313
### (On Behalf of Plaintiff and the Class)

71. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72. Pursuant to California Commercial Code § 2313, Avanquest's sale of the Scareware included express warranties created by Avanquest's affirmations of facts and promises through its advertising, websites, and in-software representations.

73. Avanquest's express warranties included affirmations of fact and promises that the Scareware would truthfully identify and repair critical PC errors; increase PC speed, performance, and stability; protect against harmful programs; remove errors; increase Internet download speeds, and perform beneficial tasks such as those described in Paragraphs 20-23. In actuality, Avanquest fraudulently designed its software to falsely identify and/or exaggerate the presence of harmful errors and misrepresent the overall status of the PC to deceive consumers into thinking their PC needed repair, and that the Scareware offered meaningful utility to repair their computers.

74. Plaintiff and the Class relied upon Avanquest's affirmations and promises when purchasing the Scareware, and the affirmations formed the basis for the bargain, in that Plaintiff and the Class believed they were purchasing software that would honestly and accurately fix their PCs. But for Avanquest's affirmations and promises, Plaintiff and the Class would not have purchased the Scareware.

CLASS ACTION COMPLAINT 16

75. Avanquest breached its express warranties because the Scareware did not perform any real diagnostic test on Plaintiff's or the Class's PCs. Rather, it artificially and arbitrarily reported harmful computer errors and low PC system health.

76. Avanquest's breach injured Plaintiff and the Class because they purchased a product of diminished value—software that does not actually perform the beneficial tasks represented to them through Avanquest's affirmations and promises about the utility of the Scareware.

77. By serving this Complaint, Plaintiff and the Class hereby give Defendant notice that it has breached its express warranties and request maximum damages as provided for under California Commercial Code.

### FOURTH CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

78. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

79. Plaintiff and the Class members entered into agreements with Avanquest whereby Avanquest agreed to sell, and Plaintiff and the Class agreed to purchase, software that would detect and remove legitimate computer errors from Plaintiff's and the Class's computers, and perform the beneficial tasks described in Paragraphs 20-23.

80. Avanquest voluntarily assumed a contractual obligation to honestly diagnose problems on Plaintiff's and the Class's PCs and to honestly indicate whether problems exist. This obligation is a material term of the agreement. Avanquest did not honor this obligation.

81. Avanquest also assumed an obligation to provide Plaintiff and the Class a product that would remove errors from their PCs. Avanquest did not honor this obligation.

82. Plaintiff and the Class paid, and Avanquest accepted, the Scareware's purchase price, and therefore Plaintiff and the Class performed their obligations under the contracts.

83. Avanquest breached its contracts with Plaintiff and the Class by failing to honestly and accurately inform them about the true condition of their computers, and further by providing

1  software that failed to offer the benefits promised.

2      84.   The aforementioned breaches of contract have directly and proximately caused
Plaintiff and the Class economic injury and other damages, because they purchased a product that does not perform as Avanquest represented, and therefore lacks the promised and paid-for utility.

### FIFTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

85.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

86.  In order to benefit from Avanquest's supposed threat-removal software products, Plaintiff and the Class affirmatively allowed Avanquest to install the Scareware on their PCs.

87.  Avanquest's agreement to install software to diagnose and remove threats from Plaintiff's and the Class's PCs in the manner described in Paragraphs 20-23 in exchange for fees is a valid and enforceable contract between Plaintiff and the Class on the one hand, and Avanquest on the other.

88.  Avanquest breached the provisions of the agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations.

89.  California law recognizes the implied covenant of good faith and fair dealing in every contract.

90.  Implicit in the contract were provisions prohibiting Avanquest from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the contract.

91.  Plaintiff and the Class sought to receive the bargained-for benefit of obtaining a software product that performed truthful diagnostic and remedial operations, as advertised by Defendant.

92.  Rather than provide the bargained-for benefit to Plaintiff and the Class, Defendant produced software that falsely represented the condition of scanned computers and failed to perform

its advertised functions. Defendant's conduct frustrated Plaintiff's and the Class's rights to receive the benefits of the contract by creating the illusion that the benefits were supplied (when in fact, they were not), and leading Plaintiff and the Class to believe that their contracts had been fulfilled.

93.     Avanquest's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury to Plaintiff and the Class in the form of price paid in excess of the Scareware's actual utility and/or money conferred on Avanquest by Plaintiff and the Class, in exchange for fully functional software, that was knowingly and wrongfully retained by Avanquest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Benson Worley, on behalf of himself and the Class, respectfully requests that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing himself as class representative, and appointing his counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above, violate California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitute fraudulent inducement, breach of express warranties in violation of Cal. Com. Code § 2313, breach of contract, and breach of the implied covenant of good faith and fair dealing;

C.     Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia,* an order: (i) prohibiting Avanquest from engaging in the wrongful and unlawful acts described herein, (ii) requiring Avanquest to disclose and admit the wrongful and unlawful acts described herein, and (iii) requiring Avanquest to fully disclose the true nature of its software products in the future;

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G. Entering such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H. Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: August 21, 2012

**BENSON WORLEY**, individually and on behalf of all others similarly situated,

By: /s/ Sean P. Reis
One of Plaintiff's Attorneys

SEAN P. REIS - SBN 184044
(sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON
(jedelson@edelson.com)*
RAFEY S. BALABANIAN
(rbalabanian@edelson.com)*
BENJAMIN H. RICHMAN
(brichman@edelson.com)*
CHANDLER R. GIVENS
(cgivens@edelson.com)*
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Pro hac vice admission to be sought