IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENSON WORLEY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>AVANQUEST NORTH AMERICA, INC.,<br><br>    Defendant.<br>_____/ | No. C 12-04391 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO STRIKE; DENYING MOTION TO STAY** |

Currently before the Court are defendant's motion to dismiss and strike and defendant's motion to stay discovery. Docket Nos. 36 & 37. Having considered the papers submitted, and for good cause shown, the Court hereby DENIES in part and GRANTS in part defendant's motion to dismiss. The Court DENIES the motions to strike and stay discovery.

**BACKGROUND**

Plaintiff's class action complaint alleges that he purchased defendant's software product – System Suite PC Tune-Up & Repair 12 – as a result of false and misleading statements about what the software would but in fact could not or did not do.[1] Specifically, plaintiff alleges that on its website, in marketing materials and on the software's packaging, defendant claims that its software can detect and fix a wide range of PC errors, privacy threats, viruses and other complaints. In reality, plaintiff alleges, the software overstates both the amount and severity of errors and threats that the software

---

[1] The Complaint repeatedly refers to another of defendant's products, "Fix-it Utilities," but the Complaint does not identify how that product is related to System Suite or whether plaintiff Worley purchased the "Fix-It" software. The Complaint says only that the two products "deceive users in a common deceptive manner." Complaint ¶ 2, n2.

purportedly fixes, in order to convince consumers that the product is functioning as advertised. *See* Complaint ¶¶ 2-5, 28. According to plaintiff, the software also over-reports alleged "threats" to the computer, in order to induce customers to keep the software and/or pay for ongoing subscription fees. *Id.*, ¶¶ 2-5, 29-30, 36. In his complaint, plaintiff also repeatedly characterizes the software he purchased as "scareware," because the software misleadingly overstates the threats to the computer.

Plaintiff asserts five claims against defendant: (1) violation of California's Unfair Competition Law, (Cal. B&P Code § 17200 *et seq.*); (2) fraudulent inducement; (3) breach of express warranty (Cal. Comm. Code § 2313); (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing. Defendant moves to dismiss each of the claims, arguing plaintiff lacks Article III standing and has failed to state his claims. Defendant also asks the Court to strike references to "scareware" from the complaint and to stay discovery.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend

the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. Civ. P. 12(f). However, because of the limited importance of pleadings in federal matters, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Finally, "[w]ith a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party. *Id.*

**DISCUSSION**

**I.    Motion to Dismiss or Strike**

**A.    Plaintiff's Standing**

Defendant argues that Worley has failed to allege Article III standing because he fails to assert an injury in fact traceable to defendant's conduct. Defendant contends that Worley has failed to adequately allege injury because he: (1) fails to allege that particular deficiencies in System Suite 12 affected his computer in any way; (2) fails to explain how System Suite 12 did not function as advertised; and (3) failed to seek a refund within 90 days. However, Worley's complaint specifically alleges that because System Suite deceived plaintiff into thinking it was "making meaningful repairs" to his PC, he continued to use the software and did not seek a refund. Complaint, ¶36. Worley also alleges that because the software was not performing as advertised (*i.e.*, not running true diagnostic scans, not eliminating PC crashes and freezes) and was over-reporting threats and problems with his PC, the utility of the software was diminished. Plaintiff alleges that had he known this in advance, he would not have purchased the product. *Id*., ¶¶ 34, 38. The Court finds these allegations are sufficient to plead injury in fact traceable to defendant's conduct. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

3

1 595 (9th Cir. 2012) (allegation that class members "paid more" for or were induced to purchase products 2 because of defendant's misrepresentations, sufficient to allege "injury in fact"). The fact that Worley 3 does not address in his complaint whether System Suite 12 fixed some of his issues, does not affect his 4 standing at this juncture. Even if it is shown that Worley received some utility from the product, he may 5 maintain his claim that the actual utility of the product is not what it was marketed to be. Similarly, the 6 fact that Worley did not seek a refund does not extinguish his standing, at least for purposes of ruling 7 on the motion to dismiss.

### B. Plaintiff's Fraudulent Inducement Claim

Defendant argues that plaintiff's fraudulent inducement claim fails to meet Rule 9(b)'s specificity requirement. In order to state a claim for fraudulent inducement under California law, a plaintiff must plead: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Defendant argues that while plaintiff identified the specific representations defendant made on its System Suite 12 packing, plaintiff fails to allege which, if any, of those representations were false.

Worley responds that the false representations he relied on were the "eliminate PC crashes and freezes" and "fix windows problems" representations, and that after running the software his computer continued to malfunction. Oppo. at 10.[2] However, as defendant points out, the Complaint is devoid of any specifics regarding how plaintiff's computer continued to malfunction. For example, the complaint does not allege that plaintiff's computer continued to freeze and crash (contrary to the representation on the software) or that specific windows problems were not fixed. Nor does the Complaint rely on plaintiff's expert to support the specific fraudulent misrepresentations claims. The expert conclusions cited in the Complaint deal primarily with the software's exaggeration of the amount and severity of

---

[2] In his Opposition, Worley repeatedly cites paragraph 23 of the Complaint as containing the representations at issue. However, the allegations regarding Systems Suite 12 are contained in paragraph 22. Paragraph 23 addresses alleged representations made on the packing of the Fix-It Utilities software which Worley does not allege *he* purchased. The Court, therefore, relies solely on allegations in paragraph 22.

4

1 errors, and do not address whether System Suite 12 – the only software at issue – eliminated PC crashes
2 and freezes or fixed windows problems. *See* Complaint, ¶¶ 28 - 31.

3 Plaintiff has failed to meet Rule 9(b)'s heightened pleading requirements, and defendant's
4 motion to dismiss the fraudulent inducement claim is granted with leave to amend. If plaintiff wishes
5 to amend, he must provide more specificity regarding the falsity of the exact representations he relies
6 on to support this claim.

### C. Plaintiff's Contract Claims

9 Defendant moves to dismiss plaintiff's contract claims, arguing that plaintiff's failure to
10 acknowledge or make any allegations regarding the actual contract at issue – the "End Users Licensing
11 Agreement" ("EULA") that Worley necessarily accepted when he installed and used System Suite 12
12 – is fatal to his claims. Motion at 3-4, 12. Defendant also contends that the EULA, and its disclaimer
13 of warranties, prevents Worley from resting his breach of contract claim on vague "promises" made on
14 the packaging of System Suite 12. Defendant argues that the EULA was incorporated by reference into
15 the Complaint[3] because its contents are "central" to plaintiff's allegation that he did not seek a refund,
16 and refunds are governed by the EULA. Motion at 12 & n.12.

17 The Court finds that the EULA has not been incorporated by reference into plaintiff's Complaint.
18 Its contents are not alleged in the Complaint and, therefore, the EULA is not "central" to plaintiff's
19 claims. *See, e.g., Gross v. Symantec Corp.*, 2012 U.S. Dist. LEXIS 107356, *38 (N.D. Cal. 2012)
20 (EULA not incorporated by reference).[4] Moreover, defendant has not explained why the issue of a

---

[3] A document not attached to a pleading may be "incorporated by reference" when the contents of the document are either mentioned in the Complaint or otherwise "central" to the allegations, and no party questions the document's authenticity. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[4] In its Reply, defendant attempts to distinguish Judge Breyer's decision in *Gross v. Symantec* – refusing to consider a EULA as incorporated by reference – because in that case there was no allegation that the EULA was incorporated by a specific reference in the complaint (here, "refund"), and the defendant in *Gross* did not separately request judicial notice of the EULA. Defendant's first argument has already been rejected and the second one bears no weight. Defendant's Request for Judicial Notice, Docket No. 35, asks the Court to take judicial notice of various documents *through* the doctrine of "incorporation by reference," which the Court has already rejected. *See* RJN at 3. Defendant has advanced no basis for taking "judicial notice" of the EULA separate from the "incorporation by reference" doctrine.

5

"refund" is central to any of plaintiff's claims – as opposed to a potential defense – and the one mention of "refund" in the complaint does not somehow make the EULA central where defendant admits the 90 day "money-back guarantee" is described on the packaging for System Suite 12, without *any* mention of the EULA. Motion at 3; Declaration of Carter Ott, Ex. A.

Defendant also argues that Worley has failed to plead the elements of his breach of contract claim.[5] Worley alleges a breach of his sales contract (distinct from the EULA) under which defendant sold and plaintiff purchased software that would "detect and remove legitimate computer errors" and perform the tasks that were advertised on the product's packaging. Complaint, ¶ 79. Worley pleads that the software did not and could not perform as defendant represented (breach), because the software failed to perform "any credible evaluation" of his or other computers. *Id.*, ¶¶ 29-30, 37, 87. The Court finds that Worley has adequately alleged his breach of sales contract claim.

Finally, defendant contends that because of the EULA, plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing claim.[6] The Court has already determined that the EULA is irrelevant for purposes of this motion. The Court also concludes that plaintiff has adequately alleged his breach of the implied covenant claim, based on the allegations that defendant intentionally designed the software so it would not honestly and accurately diagnose and meaningfully repair legitimate errors on users' systems. Complaint, ¶ 92.

### D.   Plaintiff's Warranty Claim

Defendant argues that Worley's breach of warranty claim under California Commercial Code section 2313 must fail because: (1) the purchase of the System Suite 12 is not a "good" under the U.C.C.; (2) Worley fails to plead an enforceable express warranty; and (3) Worley did not provide timely notice of his warranty claim.

---

[5] A breach of contract cause of action "requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (Cal. App. 2d Dist. 2006).

[6] A claim for breach of the covenant has five elements: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 968 (N.D.Cal.2010).

With respect to notice, under California Commercial Code section 2607, "[t]he buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Cal. Comm. Code § 2607(3)(A). "The question of whether notice was reasonable must be determined from the particular circumstances and, where but one inference can be drawn from undisputed facts, the issue may be determined as a matter of law." *Fieldstone Co. v. Briggs Plumbing Products, Inc*., 54 Cal. App. 4th 357, 370 (Cal. App. 4th Dist. 1997). Here, plaintiff admits that notice was not given until the filing of the lawsuit, which occurred within eight months of his purchasing the product. Complaint, ¶¶ 32-33, 77.

Defendant argues that under *Alvarez v. Chevron Corp*., 656 F.3d 925, 932 (9th Cir. 2011), "reasonable" notice under section 2607 must be pre-suit notice. In *Alvarez*, the Ninth Circuit held that plaintiffs failed to plead "reasonable notice" when they sent notice simultaneously with service of their complaint. *Id*., at 932. The basis of the Ninth Circuit's adoption of an apparent *per se* rule requiring pre-suit notice is unclear but, in the absence of any California Supreme Court precedent on point, this Court is required to follow *Alvarez*.[7] Here, because plaintiff admits that notice was not provided pre-suit, the Court GRANTS defendant's motion to dismiss the California Commercial Code-based breach of warranty claims without leave to amend.

### E.   **Plaintiff's Unfair Competition Law Claims**

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL "is written in the disjunctive [and] it establishes three varieties of unfair competition - acts or practices that are unlawful, or unfair, or

---

[7] *Alvarez* relied on the California Court of Appeal decision in *Cardinal Health 301, Inc. v. Tyco Electronics Corp*., 169 Cal. App. 4th 116 (Cal. App. 4th Dist. 2008). The Court in *Cardinal Health* did not hold that notice must be pre-suit to be reasonable. Instead, the *Cardinal Health* court found that notice in that case was unreasonable because plaintiff waited four years after the product started malfunctioning and two years after it notified another entity (but not the defendant at issue) of its warranty claims, before giving notice by filing the lawsuit. That conduct deprived the defendant of the opportunity to preserve evidence or engage in settlement discussions with respect to the long-malfunctioning product. *Id*., at 137; *see also Fieldstone Co. v. Briggs Plumbing Products, Inc*., 54 Cal. App. 4th at 371 (notice unreasonable *not* because notice was provided with filing of lawsuit, but because notice was provided five years after plaintiff knew of defect); *but see Stearns v. Select Comfort Retail Corp*., 763 F. Supp. 2d 1128 (N.D. Cal. 2010) (assuming, without any analysis or citation, that "pre-suit" notice is required).

7

fraudulent." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiff alleges that defendant violated each prong of the UCL and defendant moves to dismiss all three.

### 1. Fraudulent Conduct

Defendant argues that Worley cannot state a claim under the UCL's fraudulent prong for the same reasons his fraudulent inducement claim fails, *i.e.*, because he has not pled with sufficient specificity allegations regarding the falsity of defendant's representations. For the reasons discussed above, the Court agrees and GRANTS the motion to dismiss the UCL fraud-based claim with leave to amend.

### 2. Unfair Conduct

Plaintiff's UCL unfair prong claim is based on the allegation that he overpaid for software whose utility was misrepresented and that defendant intentionally designed the software to over-report errors and threats to the system to encourage consumers to keep the software and purchase renewals. The Court finds, for purpose of the motion to dismiss under the 12(b)(6) standard, that plaintiff has adequately pled unfair conduct under the UCL. Contrary to defendant's argument, the mere fact that defendant offered a 90 day refund does not preclude plaintiff's unfair conduct allegations. *See, e.g., FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994) ("the existence of a money-back guarantee is insufficient reason as a matter of law to preclude a monetary remedy" under the Federal Trade Commission Act for misrepresenting a product's effectiveness). Similarly, by keeping the product past the 90 day refund period, Worley has not "implicitly conceded" that the software program performed to his satisfaction, especially in light of Worley's allegation that the software is designed to over-report errors and thereby "scare" users into continuing to use it.

### 3. Illegal Conduct

Plaintiff alleges that defendant's conduct, by violating California Commercial Code § 2313 and by engaging in "fraudulent marketing practices," violated the illegal prong of the UCL. *See* Complaint,

¶ 57. As the Court has found that plaintiff has not stated a claim for beach of warranty under Section § 2313, in light of lack of notice, plaintiff cannot rest his illegal conduct claim on Section 2313. Nor can plaintiff rely on his fraudulent inducement claim, until it is adequately alleged. *See supra*. However, plaintiff has alleged a systematic breach of contract, based on the allegation that defendant failed to honestly and accurately inform consumers about the true condition of their computers. *See, e.g.,* Complaint, ¶ 83. Plaintiff has therefore adequately pled illegal conduct under the UCL. *See, e.g.*, *Lyons v. Bank of Am., NA*, 2011 U.S. Dist. LEXIS 90499 (N.D. Cal. Aug. 15, 2011) ("an allegation of a systematic breach of certain types of contracts can constitute an unfair business practice").

### F. Motion to Strike

Finally, defendant contends that references to "scareware" should be stricken from the complaint as "scandalous" and "defamatory" under Federal Rule of Civil Procedure 12(f). Defendant argues that "scareware," as used by the FBI, connotes a free software program that falsely identifies problems in a computer in order to induce consumers to purchase programs to fix the alleged problems. MTD at 10-11. Defendant argues it is scandalous and defamatory to call its software "scareware, since Worley admits that his computer had problems and that he purchased System Suite 12 to fix them, and does not allege that he was induced by the operation of the software to purchase any *other* software,"

However, the complaint's use of "scareware" is largely consistent with the Federal Trade Commission's use of the term which describes programs that trick consumers into thinking their computers are infected with malicious software. *See* http://www.ftc.gov/opa/2012/10/winfixer.shtm. ; *see also* Reply at 13. Although the FTC's use of the term suggests that the aim of "scareware" is to scare consumers into purchasing software programs to "fix" the non-existent or exaggerated problems, Worley argues that being induced to keep using defendant's software (*i.e.*, not returning software for a refund) because of the software's false or overstated identification of risks is analogous. The Court agrees. The motion to strike is DENIED.

9

**II.    Motion to Stay Discovery**

Having largely denied the motion to dismiss or strike, there are no grounds on which to grant the motion to stay discovery. Defendant's motion to stay discovery is DENIED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendant's motion to dismiss and strike. Docket No. 37. If plaintiff wishes to amend his Complaint, consistent with this Order, he must do so within ten (10) days of the date of this Order. The Court DENIES defendant's motion to stay discovery. Docket No. 36.

**IT IS SO ORDERED.**

Dated: February 5, 2013

_____
SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE