1   JAY EDELSON (Admitted *Pro Hac Vice*)
  jedelson@edelson.com
2   RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
  rbalabanian@edelson.com
3   BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
  brichman@edelson.com
4   CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
  cgivens@edelson.com
5   EDELSON LLC
  350 North LaSalle Street, Suite 1300
6   Chicago, Illinois 60654
  Telephone: (312) 589-6370
7   Facsimile: (312) 589-6378

8   *Attorneys for Plaintiffs and the Putative Class*

9   N. KATHLEEN STRICKLAND (SBN 64816)
  LAEL D. ANDARA (SBN 215416)
10   DEVIN C. COURTEAU (SBN 197505)
  JUSTIN A. ZUCKER (SBN 284401)
11   ROPERS, MAJESKI, KOHN & BENTLEY
  1001 Marshall Street, Suite 500
12   Redwood City, CA 94063-2052
  Telephone:   (650) 364-8200
13   Facsimile:   (650) 780-1701

14   *Attorneys for Defendant*
  AVANQUEST NORTH AMERICA INC.
15

16                 **UNITED STATES DISTRICT COURT**

17               **NORTHERN DISTRICT OF CALIFORNIA**

18                   **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 19   BENSON WORLEY and JOHNNY BOYD, individually and on behalf of all others 20   similarly situated, | Case No. 3:12-cv-04391-WHO |
| 21             *Plaintiffs*, | **JOINT CASE MANAGEMENT STATEMENT** |
| 22   v. | |
| 23   AVANQUEST NORTH AMERICA, INC., a California corporation, | Judge: Honorable William H. Orrick |
| 24 | |
| 25             *Defendant*. | |

26

27

28

Pursuant to Fed. R. Civ. P. 26, Local Rule 16-9 and the Standing Order for all Judges of the Northern District of California, Plaintiffs Benson Worley ("Worley") and Johnny Boyd ("Boyd") (collectively, "Plaintiffs") and Defendant Avanquest North America Inc. ("Avanquest" or "Defendant") (collectively, the "Parties"), hereby jointly submit the following Case Management Statement.

## I.   INTRODUCTION:

### A.   Plaintiffs' Position:

At this point, Plaintiffs are troubled by the fact that Defendant seems committed to delaying the progression of this case and specifically, its obligations to respond to discovery that has been outstanding for nearly four months. New counsel appeared in this case over two months ago on July 19th. Almost immediately after appearing in the case, new counsel contacted Plaintiffs' counsel and requested a forty-five day extension of Defendant's deadline to respond to outstanding written discovery, to present an appropriate 30(b)(6) designee for deposition, and case management deadlines. Plaintiffs agreed to the requested extensions based on defense counsel's representations that they had not yet received or had enough time to review the case file from predecessor counsel, hadn't yet had enough time to confer with their client on the relevant issues, and were underwater on other matters they were handling. Since then, Avanquest's counsel has claimed that yet further extensions are needed to comply with discovery obligations and for the first, despite the fact that they have been counsel of record for more than two months, are claiming that further meet and confers with their client and Plaintiffs' counsel are necessary before Avanquest can sufficiently respond to the outstanding discovery.

Plaintiffs believe that Defendant's request for further meet and confers are disingenuous. That is, even though a Rule 26(f) conference took place with Avanquest's prior counsel, to move the case forward, Plaintiffs' counsel invited Avanquest to meet and confer on any Rule 26 topics that it believed required further discussion and most recently, have made themselves available to do so every day this week. Yet, Avanquest declined the invitation and claimed that October 10th was the first day that it could meet and confer on the issues that it believes require further discussion. From Plaintiffs' perspective, it seems clear that Avanquest's requests for further meet

1    and confers are for the purpose of delay.

2    Ultimately, Plaintiffs are frustrated by what they perceive as repeated, unjustified (and

3    intentional) delays. As borne out in correspondence between the Parties, including with

4    Avanquest's prior counsel, the Parties had a Rule 26 conference back in February 2013 and

5    continued those discussions as the case progressed. As a consequence, Plaintiffs' outstanding

6    discovery requests were properly issued and Defendant should be required to respond to them by

7    the October 15th deadline agreed to by the Parties and entered by the Court.

8    **B.      Defendant's Position:**

9    Defense counsel just recently entered this case, on July 19, 2013 and much of August and

10   early September were consumed with events surrounding the filing of a motion to change venue,

11   which only culminated with the court's ruling on September 9, 2013.  With the decision made that

12   this case will be in the Northern District, new counsel filed an answer to the FAC, on September

13   19, 2013, which had not previously been filed and we are ready to conduct Rule 26(f) discussions

14   with opposing counsel which we, as new counsel, have not conducted to date.  We understand that

15   prior to the substitution of counsel in July, that procedurally the parties met to conduct a Rule 26(f)

16   conference.  However, we believe that a substantive discussion as to the volume, scope and

17   accessibility of the extensive ESI surrounding the disputed software needs to occur prior to the first

18   Case Management Conference scheduled for October 1, 2013, consistent with the local rules

19   pertaining to ESI.  Plaintiff's current written discovery is in violation of FRCP 26 (d)(1), as they

20   are not allowed to conduct discovery until a substantive 26 (f) conference, which has not yet

21   occurred and certainly has not occurred with present counsel.

22   The Northern District Court of California requires the ESI guidelines be discussed and

23   memorialized to suffice as a proper 26 (f) conference.  In this case, the Docket does not reflect any

24   26(f) report being filed in this case, either by Plaintiffs' firm or DLA.  Hence, it has been our

25   impression from the lack of such report being filed as well as the lack of a Rule 16 Scheduling

Order on the Docket, that such a conference had not occurred. There is no Rule 26(f) report filed with the Court. The ESI Guidelines are not discussed in a Rule 26(f) report as neither Plaintiffs' firm nor prior counsel has ever filed that report.

We are prepared to have a substantive Rule 26(f) conference with Plaintiffs' counsel, **on October 10, 2013.** Prior to said dates, we will meet with our clients and discuss the ESI guidelines, among other items in order to have a meaningful conference on October 10, 2013. One of the key persons with whom we need to meet is out of the country on business now and will not return until October 7, 2013. We have scheduled meetings on the 8th and will be prepared to have a substantive Rule 26(f) conference, including a discussion of ESI, with Plaintiffs' counsel on the 10th. We will work with Plaintiffs' counsel to file a Rule 26(f) report thereafter.

## II.   JURISDICTION AND SERVICE

### A.   Plaintiffs' Position:

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

More than year after this case was filed, Avanquest raised for the very first time on the eve this statement was originally due to be filed—September 23rd—its belief that CAFA's threshold amount in controversy requirement has not been satisfied and thus, this Court lacks subject matter jurisdiction over the case. Setting aside that Avanquest has already had more than sufficient opportunity to raise such concerns—for example, in either of its two motions to dismiss and certainly before it answered Plaintiffs' complaint—it misunderstands with whom the burden lies in this regard. Indeed, where (as here) it appears from the face of the complaint that CAFA's requisite amount in controversy is satisfied, it is the opponent of CAFA jurisdiction (i.e., Avanquest, not Plaintiffs) that bears the burden to prove—by way of competent evidence—that CAFA's requisites to jurisdiction haven't been met. Avanquest cannot meet that burden and any attempt to do so

1   now—by way of yet another motion to dismiss or otherwise—would be futile and incredibly

2   untimely.

3       No issues exist with respect to personal jurisdiction or venue either, and Avanquest has

4   been served. Although Avanquest still contends that the Northern District of California is not a

5   proper venue for this action, it has already raised its arguments in this regard and the Court

6   rejected them. Thus, there is no need to continue to debate this issue.

7       **B.    Defendant's Position:**

8       All named parties to this action have been properly served.

9       Issues exist as to proper venue for this matter.  Defendant filed a Motion to Transfer Venue

10  on July 30, 2013.  (Dkt. No. 79.)  After briefing and without oral argument, the Court denied

11  Defendant's Motion to Transfer Venue.  (Dkt. No. 104.)  Defendant does not agree with venue, but

12  is moving forward with this action venued in the Northern District.

13      Defendant's disputes that the amount in controversy exceeds the minimum $5,000,000.00

14  statutory subject matter jurisdictional limit of this Court.  Specifically, Defendant's position is that

15  before proceeding further with this lawsuit, Plaintiffs should be required to present evidence to

16  demonstrate that the damages associated with the use of the two Products exceeds the statutory

17  jurisdictional minimum of this court pursuant to the Class Action Fairness Act ("CAFA"), 28

18  U.S.C. Section 1332.  Defendant questions whether the requisite amount in controversy

19  jurisdictional limit required under CAFA can be proved. At the relatively low price for the

20  purchase of these two Products from a retail box store, less than $40.00 per purchase (under $80.00

21  alleged for the purchase of two Products), it would take not only more than a hundred thousand

22  boxed units to have been purchased but Plaintiff must prove that the hundred thousand boxed units

23  did not perform as advertised on the package product in order to state a claim within the

24  jurisdictional threshold minimum of CAFA.  Defendant is not aware of any evidence that the scope

25  of product failure to perform as advertised on the retail product box for these two Products will

26  ever reach the CAFA jurisdictional minimum to warrant retention of this case in this Court.

27  Despite Plaintiffs' objections to a motion which has not been made, Defendant has a right at any

28  time in this litigation to raise the issue of the court's lack of subject matter jurisdiction.  Federal

1  courts are courts of limited jurisdiction, granted that jurisdiction by statute. Defendants intend to

2  make a motion to dismiss for lack of subject matter jurisdiction.

3  **III.    FACTS**

4      **A.    Plaintiffs' Position:**

5      Plaintiffs allege, individually and on behalf of a putative nationwide class of similarly

6  situated individuals, that Avanquest defrauds consumers into purchasing its Fix-It Utilities and

7  System Suite PC Tune-Up & Repair software (collectively, the "Software") Specifically, Plaintiffs

8  allege that Avanquest represents to consumers that its Software is capable of identifying, reporting,

9  and repairing a wide range of PC errors, privacy and security threats, and other computer

10  problems. Ultimately, regardless of the actual condition of the user's computer, however, the

11  software invariably detects and reports, in alarmist fashion, that numerous harmful errors and other

12  threats are present. Indeed, Avanquest designed the Software to misrepresent and exaggerate the

13  existence and severity of these detected errors, as well as the overall health of the computer. In this

14  way, users are led to believe that the Software is performing the beneficial tasks represented by

15  Avanquest (when, in fact, it is not) and they continue using the Software without seeking a refund

16  of the monies they paid to purchase it.

17      **B.    Defendant's Position:**

18      The two Products at issue in this litigation are Defendant's utility software Fix-It Utilities

19  Professional ("Fix-It Utilities") and SystemSuite PC Tune-Up & Repair ("SystemSuite")

20  (collectively, the "Products").  These Products consist of Software (which is contained on a CD

21  inside the boxed Product purchased by plaintiffs at a retail store- defined herein as "Software")

22  that, amongst other functionalities, scans a user's computer; detects errors, potential threats, and

23  issues that slow a computer's performance; fixes those errors and/or deletes those threats and

24  issues; and provides anti-virus protection.

25      Defendant denies Plaintiffs' representations that the Software is ineffective and has no

26  functionality at all.  Further, Defendant does not defraud its customers as the Software is capable

27  of performing the tasks advertised.  Plaintiffs' assertion that the Software's "diagnostics

28  procedures do not perform any credible evaluation of consumers' PCs" is incorrect.  (First

Amended Class Action Complaint ("FAC"), ¶ 6.)  The Software's diagnostic scan performs as marketed and advertised.  Upon running a diagnostic scan, the Software does put a user on notice of potential errors and threats to the user's PC.  Such diagnostic testing and notification is part of the Software design to provide the user with an analysis to allow the user to take proper procedures to protect the user's PC from said errors and threats. Defendant herby disputes Plaintiffs' allegations and will establish that the Products performed the functions as advertised on Plaintiff's computers.  Further, Defendant made no false or misleading representations regarding the status of a user's computer because, contrary to Plaintiffs' allegations, the products do scan for and remove actual errors that have the potential to degrade the performance of a user's computer.  It is undisputed that each individual product was purchased to "fix" problems already existing on Plaintiffs' individual used, not new, computers.  Thus, it is the results of the scan run on Plaintiffs' individual computers which should be the focus of the action, and not what the scans will do on a virtual or brand new computer.  Defendant will show that unlike other products on the market, Defendant's product does not perform a scan on the computer prior to purchase of the product as an inducement to purchase.  In fact, Defendant will show that at the time the Plaintiffs' computer was scanned by the Product, the Plaintiffs had already purchased, accepted the terms of the End User License Agreement and then installed the product- all before any scan was run on the Plaintiffs' respective computer.  The facts will also show that neither Plaintiff was "induced" to continue using the Product.  The facts will further show that if each Plaintiff was dissatisfied with the performance of the respective product, they could have returned the Product, and would have received a full refund of the purchase price.  Importantly, neither of the Plaintiffs chose to return the Product.  Finally, Defendant will prove that Plaintiffs have not suffered the injury alleged in the Complaint.

## IV.   LEGAL ISSUES

### A.   Plaintiffs' Position:

The legal issues in this case include, but are not limited to:

1.   Whether Defendant fraudulently induced Plaintiffs and the putative class to purchase the Software;

2.    Whether Defendant's alleged conduct constitutes violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

3.    Whether Defendant breached its contracts with Plaintiffs and the putative class;

4.    Whether Defendant breached the implied covenant of good faith and fair dealing with respect to Plaintiffs and the putative class;

5.    Whether the putative class is appropriate for certification under Fed. R. Civ. P. 23.

**B.    Defendant's Position:**

Defendant's position is that Plaintiff will be unable to state a claim for relief under CAFA because they will be unable to show that over a hundred thousand persons purchased these two Products from a retail store, which then failed to perform as advertised on such person's computers; (which computers that have been in use prior to such purchase); without such a showing, this court lacks subject matter jurisdiction to proceed any further with this lawsuit. This is the first legal issue which should be addressed by this court because on the face of the complaint, it is apparent to Defendant that Plaintiffs will not be able to meet this jurisdictional limit to be able to keep this case in federal court.

Additionally, Defendant's position is that Plaintiffs' fail to meet the requirements for class certification pursuant to FRCP 23(a) and 23(b) and therefore will be left with their individual claim for damages, which again fails to meet the jurisdictional limit of this Court**:**

1.    Whether Plaintiffs' FAC meets the CAFA jurisdictional requirements for subject matter jurisdiction to be able to remain in federal court, 28 U.S.C. Section 1332;

2.    Whether Plaintiffs' FAC fails to plead special matters such as fraud and contract with specificity as required by Fed. R. Civ. P. 9(b);

3.    Whether Plaintiffs can certify a putative nationwide class of purchasers under Fed. R. Civ. P. 23 (a), including by meeting the requirements of commonality, typicality, and predominance of class-wide issues as well as 23(b);

4.    Whether the alleged misrepresentations are actionable; and

5.    Whether Plaintiff can prove injury or damages when the Product performs as advertised.

**V.   MOTIONS**

On November 29, 2012, Defendant moved to dismiss Plaintiff Worley's original complaint, to strike certain allegations from the complaint, and to stay discovery pending the outcome of that pleadings challenge. After full briefing by the Parties, on February 5, 2013, the Honorable Susan Illston granted in part and denied in part Avanquest's motion to dismiss, denied the motion to strike, and denied the motion to stay.

On February 22, 2013, Plaintiffs Worley and Boyd filed their First Amended Class Action Complaint. Avanquest again moved to dismiss. On April 30, 2013, Judge Illston denied Avanquest's motion to dismiss the First Amended Complaint in its entirety.

On July 30, 2013, Defendant moved to transfer this action to the Central District of California, arguing, *inter alia*, that proceeding in that venue would be more convenient for the parties and witnesses. After Plaintiffs took a deposition limited to the issues raised in Defendant's motion and full briefing from the parties, on September 9, 2013, the Court denied Avanquest's motion to transfer.

**A.   Plaintiffs' Position:**

Plaintiffs anticipate filing the following motions: (i) a motion for class certification; (ii) a motion for summary judgment; and (iii) discovery related motions, if necessary.

**B.   Defendant's Position:**

Defendant anticipates filing the following additional motions in support of Defendant's position:

1.   Motion to dismiss for failure to meet the jurisdictional minimum under CAFA in order to maintain jurisdiction in federal court;

2.   Motion for a protective order to limit the extent and manner of discovery of Defendant's trade secret and proprietary information under Fed. R. Civ. P. 26(c);

3.   Motion to limit the nature and scope of the pending plaintiff discovery requests, if agreement can not be reached in a Rule 26(f) conference;

4.   Motion to limit the nature of the fraudulent inducement claim alleged in this case, to eliminate any claim of fraudulent inducement to the Products advertisements on the

1  outside packaging and not to "running any scan" since in this case the FAC alleges

2  the Products are purchased before any installation and running of the respective

3  Software;

4  5.  Motion to define and limit the alleged class to only purchasers of Products from

5  retail stores, as alleged in the complaint, not to online purchasers, and to those

6  purchasing for use on used and not new computers. We will propose that discovery

7  prior to the class certification hearing be limited in scope to what occurred as

8  alleged to these Plaintiffs – their purchases and their used machines – and exclude

9  online purchases, (which were not made),  and exclude  performance of the Product

10  on new computers because the Products  were installed and run on "used"

11  computers with pre-existing problems;

12  6.  Motion for summary judgment under Fed. R. Civ. P. 56(a); and

13  7.  Such other motions as are necessary to effect the discovery of Plaintiffs' relevant

14  documents and information, including discovery of the transactions at issue and

15  state and nature of Plaintiffs' computer systems at the time of installation and use of

16  the Products as well as CD containing the Software. We will want to inspect the

17  computers on which the Products were run as well as the Products each Plaintiff

18  purchased.

19  ## VI.   AMENDMENT OF PLEADINGS

20  **A.   Plaintiffs' Position:** At this time, Plaintiffs do not anticipate that any further

21  amendments of the pleadings—beyond their First Amended Complaint—will be necessary.

22  However, information obtained through discovery may necessitate amendments in the future.

23  Plaintiffs propose that amended pleadings (if any), be filed in accordance with the schedule of

24  discovery and general case deadlines ultimately set by the Court.

25  **B.   Defendant's Position:**

26  Plaintiffs have already amended their complaint on February 22, 2013, after this Court's

27  Order granting in part Defendant's motion to dismiss the original complaint.  Plaintiffs should not

28  / / /

1  be rewarded with further leave to amend their complaint because they have already had the

2  opportunity to amend.

3  **VII.    EVIDENCE PRESERVATION**

4          **A.      Plaintiffs' Position:**  Plaintiffs have conferred with their counsel about the need to

5  preserve evidence that may be relevant to their claims or Defendant's defenses, including the

6  preservation of electronically stored information. In particular and contrary to Defendant's

7  assertions, Plaintiff Worley has imaged the hard drive on which he installed the software at issue.

8  For his part, Plaintiff Boyd's computer crashed and became inoperable following his installation

9  and use of Defendant's software. Thus, Boyd has preserved the entire computer in that state.

10         On December 12, 2012, Plaintiffs' counsel served a notice of preservation on Avanquest,

11  which outlined, *inter alia*, the categories of documents, information and ESI Plaintiffs intend to

12  seek in discovery in this matter; the types, forms and locations of ESI Defendant is obligated to

13  preserve; and, requested that Defendant respond to Plaintiffs' positions and/or agree to confer

14  (along with its technology and e-discovery experts) on these issues. Nevertheless, neither

15  Defendant's current counsel nor its predecessor counsel ever responded to Plaintiffs' letter, nor

16  suggested—until now—that they believed they hadn't had sufficient opportunity to consider these

17  issues, discuss them with Defendant, and move forward with the litigation.

18         **B.      Defendant's Position:**

19         We are informed by prior counsel that a preservation notice was sent to the clients by Mr.

20  Carter Ott of DLA Piper on December 12, 2012.  On this past Monday, September 23, 2013

21  Defendant's undersigned counsel received the electronic correspondence file from prior counsel,

22  despite repeated requests for same. Plaintiff Worley and Boyd  are also under preservation

23  obligations, arising from when their purported claim first accrued, including without limitation the

24  forensic evidence located on their used PCs showing its configuration and the Software operations

25  for which each respective Plaintiffs' claims are based.  Defendant is concerned that Plaintiffs may

26  not have preserved evidence, because Plaintiffs have not indicated they have stopped using their

27  respective PC, which could be causing further damage to them and/or otherwise altering the

28  evidence.

**VIII. DISCLOSURES**

    **A.    Plaintiffs' Position:**

    The Parties have not yet made the initial disclosures required by Fed. R. Civ. P. 26(a)(1). Plaintiff proposes that such disclosures—and any others required by the Federal Rules—be made no later than October 2, 2013.

    **B.    Defendant's Position:**

Defendant proposes that such disclosures be made at a reasonable time following the Case Management Conference, scheduled for October 1, 2013. Since Initial Disclosures are due 14 days after the Rule 26(f) conference, because there is a reason the disclosures are due at this time because the substantive information discussed at the Rule 26(f) conference form the basis of the information in the Initial Disclosures, we propose that we submit the Disclosures to a mutually agreeable date after our Rule 26(f) conference on October 10, 2013.

**IX. DISCOVERY**

    **A.    Scope of Discovery**

        **1.    Plaintiffs' Position:** Plaintiffs anticipate taking discovery on the following non-exhaustive list of topics: (1) the total number of individuals and entities who purchased any and all versions of the Software; (2) the number and nature of complaints regarding the Software; (3) the number and amount of refunds requested and received by the members of the putative class related to their purchases of the Software; (4) Defendant's representations regarding the purpose, utility, and effectiveness of the Software; (5) the source code underlying the Software and its functionality; and (6) the metrics (and the bases of those metrics) used by the Software to assess and report the condition of the users' computers.

    Plaintiffs have already served their first sets of written discovery requests and agreed to an extension of Avanquest's deadline to respond to them until October 15th. Plaintiffs have further served a notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6) and the Parties have agreed that such a deposition will not proceed prior to November 10th. (Dkt. No. 78, p. 3.)

### 2.      Defendant's Position:

Defendant has been served with Plaintiffs' written discovery requests, and rather than simply objecting to the scope and other issues pertaining to the ESI, there is a need for the parties to follow the procedures outlined in the Northern District for compliance with E-discovery as referenced above. This has not yet occurred.  Defendant does propose to limit discovery to that needed for class certification at this time rather than to merits discovery.  Defendant proposes to limit discovery to those plaintiffs who purchased boxed retail products, and only this version of these two products, from Defendant for use on their used computers and not to include any online purchases of the Products nor to any Product used on new computers. Additionally, Defendant proposes to limit discovery prior to the class certification hearing to those persons who did not seek a refund and return the Product.

Defendant intends on taking discovery, including but without limitation by document requests, interrogatories, subpoenas, and depositions, concerning the following non-exhaustive list of topics: (1) issues relevant to class certification determination; (2) the composition of, and alleged harm to, the putative class; (3) the sales transactions at issue in the FAC; (4) the state and nature of Plaintiffs' PCs at the time of installation and use of the respective Software at issue; (5) the factual basis for Plaintiffs' claims; (6) any and all reports and documented analysis performed by Plaintiffs' undisclosed "expert" that performed analysis of and opined about the functionality of the Software as referenced in the FAC; and (7) the opinions of any experts disclosed by Plaintiffs.

### B.      Phased Discovery:

**1.      Plaintiffs' Position:**  Plaintiffs do not believe that bifurcating discovery between class certification and merits issues is the most efficient way to proceed in this matter. Plaintiffs' claims—on behalf of themselves and the putative class—stem from a basic premise: that Defendant designed the software products at issue to invariably report (without performing any credible analysis) that numerous supposed errors and threats exist on and are causing damage to users' computers, concealed that fact from Plaintiffs and the putative class members, and misrepresented to them the actual status of their computers. The information necessary to establish

1   the deceptive nature of Defendant's design of the software and representations regarding its

2   functionality—and therefore, the merits of the class's claims—will necessarily and significantly

3   overlap with the information necessary to establish that the requisites to class certification have

4   been satisfied in this case. By way of example, information related to (i) the design of the

5   underlying source code of the software, (ii) Defendant's representations regarding the functionality

6   of the software, and (iii) the number of putative class members who purchased the software and the

7   representations they viewed, will bear not only upon Defendant's ultimate liability, but also on

8   several of Rule 23's requisites to class certification, including numerosity, typicality, commonality

9   and predominance. Given the overlap between the class certification and merits issues in this case,

10  attempting to limit discovery to only those issues relevant to class certification is almost certain to

11  lead to unnecessary disputes between the parties as to what information is discoverable and when,

12  discovery motion practice, and more delays. As such, a phased discovery schedule is simply not

13  the most efficient way to proceed.

### 2.   Defendant's Position:

15          Defendant strongly believes that discovery should be bifurcated between class certification

16  and merits issues, as discussed above in the above discovery section. In most cases the court does

17  limit discovery to certification issues, such as the number of class members, the existence of

18  common questions, the typicality of claims, the representative's ability to represent the class. Here,

19  since each individual computer's problems is different, Defendant believes that individual issues

20  will predominate over class issues, such that plaintiff's claims are not typical of the others and thus

21  they are not an appropriate class representative. Jurisdictional discovery is permitted to determine

22  whether a case is subject to the Class Action Fairness Act. Discovery on the merits of the class

23  claims is usually deferred until it is certain that the case will be allowed to proceed as a class

24  action. *Krzesniak v. Cendant Corp.*, C05-5156MEJ, 2007 WL 756905 (N.D. Cal. March 8, 2007

25  ("Prior to certification, courts typically limit discovery to certification issues such as the number of

26  class members, existence of common questions, typicality of claims, and the representatives's

27  ability to represent the class"), citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98

28  S.Ct. 2380 (1978).

1    Limiting discovery is also consistent with this Court's local rules and with the proposed

2    Amendments to the federal rules set to take effect later this year which stress limiting discovery to

3    "reasonableness" and "proportionality" based on the issues in the specific case.  Defendant should

4    not be forced to spend thousands of dollars producing truckloads of irrelevant information to this

5    case. Discovery should be focused and limited to what is reasonable and proportional to the

6    demands required by this matter.  As such, Defendant believes that it is in the best interest of the

7    parties and the most efficient to bifurcate discovery between class certification and merits issues.

8    Defendant proposes that the Court phase discovery by ordering a first phase limited to class

9    certification, and then a second phase of general discovery in the event a class is certified.  Phasing

10   discovery in this matter will not delay these proceedings.  The phased discovery timeline can be

11   structured to fit within the same timeline as an un-phased discovery schedule.  Phasing discovery

12   is also recommended to help avoid tens of thousands of dollars in unnecessary discovery costs.

13   Phased discovery will allow this case to be resolved on class certification before the costly

14   production of discovery unrelated to class certification, including but not limited to internal design

15   documents, financial documents, and communications that do not reflect the actual operation and

16   functionality of the Software actually purchased by the Plaintiffs, which was from a local retailer

17   and not purchased online.

18   Phasing discovery will be in the best interests of all parties as it will prevent the costly

19   deposition of witnesses without knowledge of the issues relevant to class certification.  In this

20   regard, Defendant reiterates that bifurcation will allow for discovery to be conducted in a

21   meaningful and proportional manner reflective of Plaintiffs actual discovery needs.

22   **C.    Limits on Discovery:**

23       **1.    Plaintiffs' Position:** Plaintiffs do not believe that any modifications to the

24   limitations on discovery imposed by the Federal Rules of Civil Procedure are necessary at this

25   time.

26       **2.    Defendant's Position:**

27   (1) Pursuant to Fed. Rule 26(b)(2)(C)(iii), each party shall be permitted to take up to five

28   (5) fact depositions wherein a single deposition is limited to six (6) hours. Included within these

limits are fact depositions of the parties pursuant to Rule 30(b)(6) and of third parties, but not expert depositions.  The parties will meet and confer if any party wishes to take additional depositions.

(2) Expert depositions will be limited to a single six (6) hour deposition per expert.

(3) With respect to Rule 30(b)(6), any party may be served with separate deposition notices covering different topics at different times, but a party shall not be required to designate a corporate representative regarding the same topic more than once.

(4) Each party may serve up to 15 written interrogatories, including all discrete sub-parts. The parties will meet and confer if any party wishes to serve additional interrogatories.

(5) Each party may serve up to 25 requests for admission relating to substantive issues. The parties will meet and confer if any party wishes to serve additional requests for admission on substantive issues. There shall be no limit on requests for admission related to the authentication of documents.

(6) Costs will be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

(7) General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

    i.      Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

    ii.      Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.  Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave, upon showing a distinct need based on the size, complexity, and issues of this specific case.

/ / /

iii.     Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests.  The parties may jointly agree to modify this limit without the Court's leave, upon showing a distinct need based on the size, complexity, and issues of this specific case.  Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court, the requesting party shall bear all reasonable costs caused by such additional discovery.

**D.     Production of Electronically Stored Information**

The parties agree to use commercially reasonable efforts to produce information electronically. The parties further agree that email, spreadsheets, source code, executable files, RTL, HDL, netlists, chip or board layout files, videos, animations, audio files, and presentations that include video, animation, or audio shall be produced where practical in native format. To the extent that data produced in native format cannot be rendered or viewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the review of such documents, including issues as may arise with respect to obtaining access to any such software or operating manuals.

Electronically Stored Information (ESI) not produced in native format and amenable to being imaged will be produced as images on optical disks (i.e., CDs or DVDs) or external hard drives accompanied by load files. Each image will bear a unique production number and any applicable confidentiality language pursuant to the protective order ultimately entered by the Court in this case (the "Protective Order"). ESI produced in this manner will be accompanied by load files with searchable text (including electronically extracted text or, if electronically extracted text is unavailable, OCR text), and where practical and without materially enhancing the cost of production:

- **Unitization** (including the production number of the first and last page of each document),
- **Attachments** (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments),
- **Confidentiality** (including any designation pursuant to the Protective Order),

- **System metadata** (including author, file name, file path, file size, file type, date created, date modified, title, sender ("from"), primary recipient ("to"), courtesy copy ("cc"), blind courtesy copy ("bcc"), subject, message size, sent time/date, received time/date, last modification time, and read status).

Paper documents amenable to being imaged will be produced as images on optical disks (i.e., CDs or DVDs) or external hard drives accompanied by load files. Paper documents may be produced in black-and-white or color, but if a producing party intends to rely in any brief or hearing on an aspect of a document that requires review in color, the party shall produce that document in color. Each image will bear a unique production number and any applicable confidentiality language pursuant to the Protective Order used in this litigation.  Paper documents produced in this manner will be accompanied by load files with searchable text and, where practical and without materially enhancing the cost of production, source information (the identity of the custodian, or, if none, a generalized location). If a party desires additional information about a particular paper document produced in this form the parties will meet and confer regarding the appropriate means to supply the additional information.

If a party identifies responsive documents or information in a form that cannot reasonably be imaged and that does not fall within the categories to be produced in native format, that party shall inform the requesting party of the existence of such records. The parties shall then meet and confer regarding the appropriate means for producing or permitting inspection of such records.

If a party learns of responsive documents or information that are not reasonably accessible (such as magnetic tape archives), or if a party learns facts that cause the party to suspect that responsive documents or information are present in a location or form that is not reasonably accessible, that party shall inform the requesting party of the existence of such records or of the reasons for its suspicions that such records may exist. The parties shall then meet and confer regarding the appropriateness of producing or permitting inspection of such records, and the appropriateness of any cost sharing.

/ / /

/ / /

1   **E.     Form of Electronic Discovery and Claims of Privilege:**

2       **1.     Plaintiffs' Position:**

3       On December 12, 2012, Plaintiffs served on Defendant a notice of ESI preservation and

4   related issues that outlined (in detail) their positions on, *inter alia*: (1) the identification of relevant

5   and discoverable ESI; (2) the scope of discoverable ESI to be preserved and produced by the

6   Parties; (3) the formats for preservation and production of ESI; (4) the protection of confidential

7   and proprietary information; (5) the procedures for handling inadvertent production of privileged

8   information and other privilege waiver issues under Rule 502 of the Federal Rules of Evidence;

9   and (6) any other relevant ESI issues involved in the case that may arise. Plaintiffs further

10  requested that Defendant respond to those positions and/or agree to confer with Plaintiffs (along

11  with the parties' respective technology and e-discovery experts) on these issues. Thus, Defendant

12  has known for ten months now what Plaintiffs' views on the relevant ESI issues are. Nevertheless,

13  neither Defendant's current counsel nor its predecessor counsel ever responded to Plaintiffs' letter,

14  nor suggested—until now—that they believed they hadn't had sufficient opportunity to consider

15  these issues, discuss them with Defendant, and move forward with the litigation.

16      Further, Defendant seems to be demanding that the Parties file a separate report related to

17  the Northern District's ESI Checklist and that without such a separate report being filed, discovery

18  may not proceed. Plaintiffs not only dispute that such a filing is required, but believe it is

19  completely unnecessary. The topics identified in the Northern District's Checklist have been

20  discussed by the Parties as evidenced by their respective positions herein. To the extent Defendant

21  is requesting further meet and confers as contemplated by the Checklist that would, of course, be

22  appropriate. However, if Defendant is taking the position that it is not obligated to engage in

23  discovery until after the filing of some separate ESI report, Plaintiffs reject that.

24      Separately, the Parties discussed—albeit with Defendant's predecessor counsel—

25  Defendant's preparation of an appropriate proposed protective order for Plaintiffs' review and

26  comments, but Defendant has never circulated such a draft.

27  / / /

28  / / /

---

### 2.   Defendant's Position:

Now that new counsel has entered the case, we will need to meet and confer and conduct a substantive Rule 26(f) conference on this topic.  Defendant proposes that that discussion will include the following topics:: (1) the identification of relevant and discoverable electronically stored information ("ESI"); (2) the scope of discoverable ESI to be preserved and produced by the Parties; (3) the formats for preservation and production of ESI; (4) the protection of confidential and proprietary information; (5) the procedures for handling inadvertent production of privileged information and other privilege waiver issues under Rule 502 of the Federal Rules of Evidence; and (6) any other relevant ESI issues involved in the case that may arise. Subsequent to the substantive Rule 26 (f) conference, Defendant proposes that the parties draft a stipulation for the Court's approval, or if agreement is not reached, seek a conference with the Court to discuss the differences and with the goal of drafting a stipulation after said conference with the Court.

Defendant proposes the parties meet and confer under by no later than **October 15, 2013**, and prepare a report by no later than **October 18, 2013**, certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), as referenced above. The Plaintiff's pending discovery has not been tailored with an understanding of the information available, and such an exercise is required under FRCP 1 before substantive responses can meaningfully be prepared or gathered. This premature discovery is barred under Fed. R. Civ. P. 26 (d)(1).

If agreement cannot be reached on the nature and scope of discovery, as discussed above, Defendant proposes that the parties seek a conference with the Court to discuss same. Additionally, Defendant proposes that the parties discuss and attempt to agree upon and submit an appropriate Protective Order governing treatment of confidential information in this case. Defendant's present counsel is unaware of the representations made above on this issue, and have only this past Monday September 23, 2013 received the electronic correspondence file from prior counsel.

/ / /

/ / /

## X.    CLASS ACTIONS

### A.    Plaintiffs' Position:

Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) of a class (the "Class") of similarly situated individuals and entities, defined as follows:

> All individuals and entities in the United States that have purchased Fix-It Utilities Professional or System Suite PC Tune-Up & Repair.

The proposed Class satisfies each of the requisites to class certification under Rules 23(b)(2) and (b)(3). In particular, the Class consists of potentially thousands of individuals, making joinder of all members impracticable (numerosity); there are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, which predominate over any questions that may affect only individual Class members (commonality and predominance); Plaintiffs' claims are typical of the claims of all of the other members of the Class, inasmuch as they were similarly damaged as a result of Defendant's unlawful conduct (typicality); and Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel competent and experienced in complex class actions (adequacy of representation).

Similarly, class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. That is, the damages suffered by the individual members of the Class will likely be relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties, as well as the likelihood of the imposition of inconsistent obligations. Moreover, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding restitutionary relief with respect to the Class as a whole.

### B.    Defendant's Position:

Defendant believes that this lawsuit is not suitable for class certification. Defendant's oppose class certification, and request the court bifurcate this case and permit discovery on the

1   class certification issues before the certification hearing, and not permit merits discovery before

2   the certification hearing. Defendant proposes to limit discovery to the issues raised by these two

3   particular Plaintiffs, to those persons who purchased the Products from the same retail stores as did

4   Plaintiffs, specifically the specific store and retail location identified in the FAC, and excluding

5   any online purchases of the Products since neither plaintiff purchased the respective Product

6   online.  Defendant also proposes to limit discovery to those persons purchasing the these two

7   identified Products, and to no other products.  Finally, Defendant proposes to limit discovery to

8   those persons who purchased these two Products for use on pre-existing computers and not for use

9   on "new" unused computers.

10          Defendant proposes that necessary discovery be taken and any motion for early summary

11   judgment or other dispositive motion (including jurisdictional motions if appropriate) be heard

12   before class certification is addressed.  As explained under the "Legal Issues" above, Defendant

13   sees very substantive obstacles to any class certification in this case.  Because the class

14   certification question must focus on whether there is a class-wide damage from actual boxed

15   products not performing as advertised on the packaging - i.e., whether every purchaser of the

16   boxed Products suffered damage because of an alleged failure of the Product to perform as

17   advertised- the core issue is whether that damage and causation can be shown on a class-wide basis

18   without examining each purchaser individually.  Except for purchasers who have notified

19   Defendant about the Products failure to perform as advertised on the boxed packaging, Defendant

20   has no knowledge of which purchaser may claim the Products did not perform on their own

21   computer as advertised and whether they allegedly suffered damage.  For all the reasons that class

22   actions have been soundly rejected in mass tort personal injury claims, no class could be certified

23   here. After a limited phase of limited discovery regarding issues relevant to class certification, the

24   motion for class certification should be filed at an early practicable time.  Please refer to

25   Parties/Defendant's proposed schedule below, in section XVII.

26   / / /

27   / / /

28   / / /

**XI.   RELATED CASES**

   **A.     Plaintiffs' Position:**

   Plaintiffs are unaware of any related cases at this time and do not agree Avanquest's contention that the *Parker* matter is related. Avanquest points to *Parker* as a related case because that's the lone decision among the class actions that have been filed against Defendant's industry partners on these issues where the Central District of California found that the Plaintiff in that case had failed to plead facts sufficient to establish Article III standing. That argument has been rejected time and again by district courts considering these very same issues, including a sister court in the Central District of California in the months following the *Parker* opinion. *See Kulesa v. PC Cleaner, Inc.*, No. 8:12-cv-00725-JVS, Dkt. 49 (Oct. 12, 2012). Avanquest raised that argument in this case in its first motion to dismiss and Judge Illston summarily rejected it. (Dkt. 48.)

   **B.     Defendant's Position:**

   Defendant is unaware of any related cases filed in the Northern District at this time.  The Parties are aware of *Parker v. Iola Technologies, LLC* Case No. CV 12-00984, 2012 WL 4168837 (C.D. Cal. August 20, 2012) filed in the Central District, in which the Court dismissed for lack of Article III standing just one day before the present action was filed in the Northern District. (Plaintiffs' Opposition to Defendant's Motion to Stay Discovery, Dkt. No. 41, FN. 2.)  It is Defendant's understanding that the dismissal of that case has been appealed by Plaintiffs' counsel, the Edelson firm.  *Parker* has a similar product to Defendant's. Plaintiff filed a similar complaint against Iola.  The Central District Court dismissed the lawsuit against Iola. That case was a similar case to the present filed action.

**XII.   RELIEF SOUGHT**

   **A.     Plaintiffs' Position:**

   In their FAC, Plaintiffs respectfully request that the Court enter an Order (or Orders): (i) certifying this case as a class action, appointing Plaintiffs Worley and Boyd as Class Representatives, and appointing their counsel Class Counsel; (ii) declaring that Defendant's actions, as set out in the Complaint, constitute violations of California's Unfair Competition Law

(Cal. Bus. & Prof. Code §§ 17200, *et seq.*, as well as fraudulent inducement, breach of contract, and breach of the implied covenant of good faith and fair dealing; (iii) awarding damages, including actual, statutory, and punitive damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial; (iv) awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including, *inter alia*, prohibiting Defendant from engaging in the wrongful and unlawful acts described in the Complaint, requiring Defendant to disclose and admit the wrongful and unlawful acts described in the Complaint, and requiring Defendant to fully disclose the true nature of its software products now and in the future; (v) awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees; (vi) awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and (vii) awarding such other and further relief as the Court deems reasonable and just.

### B.    Defendant's Position:

Defendant disputes that any relief is available to either Plaintiff.  The Defendant does not believe that Plaintiffs will meet the jurisdictional minimum amount of damages, as stated earlier, to remain in federal court, as required by CAFA. It appears the amount of damage, if any, is limited to the purchase price of under $40.00 for each Product. Notwithstanding Defendant's belief that Plaintiffs cannot establish liability in this lawsuit generally, Plaintiffs cannot prove they have suffered damages as their PCs had actual problems and issues prior to purchasing, accepting the EULA, downloading and thereafter running the respective Software on their PCs.  Each plaintiff had the option to return the Products had they thought the respective product was not performing as represented, and they did not.    In the event damages were to be awarded, damages should be limited to a determinable value of their damaged computer before the Products were purchased and the Software run, and the value of their value of their computer after the Products were purchased and the Software run.  Further, any such damage award should be reduced or eliminated based on Plaintiffs' duty and failure to mitigate damages, and by any caps and limitations on damages as contained in the EULA.

/ / /

/ / /

**XIII.   SETTLEMENT AND ADR**

    **A.    Plaintiffs' Position:**

The Parties have had only preliminary discussions regarding the potential resolution of this action. Additionally, Judge Illston previously entered the Parties' stipulation selecting private mediation as an appropriate form of ADR in this matter, and ordered that the Parties apprise the Court if (and when) they intend to proceed with such a mediation. (*See* Dkts. 46, 49.)

    **B.    Defendant's Position:**

At this time, until Plaintiffs can prove that the threshold "amount in controversy" of CAFA can be met for this case to remain in federal court, any discussion of Settlement and ADR is premature. Additionally, until the necessary discovery is taken on class certification issues only and any motion for early summary judgment or other dispositive motion is heard, Defendant does not believe Settlement or ADR discussions would be fruitful. Defendant proposes revisiting this issue of ADR at a later stage of this case, perhaps after the motions discussed herein have been presented and discovery on class certification issues has occurred, or at a time after the class certification hearing.

**XIV.   CONSENT TO MAGISTRATE JUDGE**

Defendant previously declined to proceed before a Magistrate Judge for all purposes in this action. (Dkt. 8.)

**XV.   OTHER REFERENCES**

At this time, the Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**XVI.   NARROWING OF ISSUES**

    **A.    Plaintiffs' Position:**

Plaintiffs are not aware of any issues that can be narrowed by agreement or by motion, and do not presently request bifurcation of issues, claims, or defenses.

    **B.    Defendant's Position:**

Defendant believes the case can be narrowed. Defendant believes the plaintiffs should be forced to prove that this case meets the jurisdictional limits of CAFA in order to remain in federal

1  court. Defendant does not believe that plaintiffs will be able to meet the $5 million requirement for

2  the federal court to retain jurisdiction of this lawsuit. Defendant also believes that the class

3  certification issues should be bifurcated from the merits issues and that discovery should be

4  ordered limited to the class certification issues and the case bifurcated accordingly, reserving

5  merits discovery until after the court's ruling on class certification.

6  **XVII.  EXPEDITED SCHEDULE**

7         The Parties do not believe that the Expedited Trial Procedure as contemplated by General

8  Order No. 64 is appropriate here.

9  **XVIII. SCHEDULING**

| Event | Proposed Deadline | |
|---|---|---|
| *Deadline to File Motions to Join Parties or Amend Pleadings* | **Plaintiffs' Position:** January 10, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Plaintiffs to Serve Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) relating to class certification* | **Plaintiffs' Position:** March 28, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Defendant to Serve Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) of rebuttal expert witnesses and reports relating to class certification* | **Plaintiffs' Position:** April 28, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Defendant's Deadline to depose Plaintiff's experts and the parties' other witnesses related to Class Certification* | **Plaintiffs' Position:** April 28, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Plaintiffs' Deadline to Depose rebuttal experts related to class certification* | **Plaintiffs' Position:** May 28, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Plaintiffs to File Motion and Memorandum in Support of Class Certification* | **Plaintiffs' Position:** June 30, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |

| | | |
|---|---|---|
| *Defendant to File Opposition to Class Certification and All Supporting Materials* | **Plaintiffs' Position:** July 21, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Plaintiffs to File Reply in Support of Motion for Class Certification* | **Plaintiffs' Position:** August 4, 2014 | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Hearing on motion for class certification* | At the Court's convenience. | |
| *Fact Discovery Cut-Off* | **Plaintiffs' Position:** Sixty (60) days following the Court's ruling on Plaintiffs' Motion for Class Certification | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Plaintiffs to Serve Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) Related to Merits Issues* | **Plaintiffs' Position:** Thirty (30) days prior to Fact Discovery Cut-Off | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Defendant to Disclose Rebuttal Expert Witnesses Related to Merits Issues* | **Plaintiffs' Position:** Forty-five (45) days following Plaintiffs' expert disclosures related to merits issues | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Defendant to Depose Plaintiff's Experts Related to Merits Issues* | **Plaintiffs' Position:** Forty-five (45) days following Plaintiffs' expert disclosures related to merits issues | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Plaintiffs to Depose Defendant's Rebuttal Expert Witnesses Related to Merits Issues* | **Plaintiffs' Position:** Forty-five (45) days following Defendants' disclosures of rebuttal experts related to merits issues | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Expert Discovery Cut-Off* | **Plaintiffs' Position:** Forty-five (45) days following Defendants' disclosures of rebuttal experts related to merits issues | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *File Dispositive Pretrial Motions and Daubert motions* | **Plaintiffs' Position:** Forty-five (45) days following the close of expert discovery | **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |

| | |
|---|---|
| *File oppositions to dispositive pretrial motions and Daubert motions* | **Plaintiffs' Position:** Thirty (30) days following filing of any dispositive pretrial motions or Daubert motions **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *File reply briefs in support of dispositive pretrial motions and Daubert motions* | **Plaintiffs' Position:** Fourteen (14) days following filing of any opposition to dispositive pretrial motions or Daubert motions **Defendant's Position:** TBD after substantive and procedural Rule 26(f) conference |
| *Hearing on dispositive pretrial motions and Daubert motions* | At the Court's convenience |
| *Pretrial Conference* | TBD |
| *Motion in Limine Hearing Date* | TBD |
| *Trial to begin* | TBD |

## XIX.   TRIAL

### A.   Plaintiffs' Position:

Plaintiffs have requested a trial by jury of all matters that can be so tried. Plaintiff anticipates that a trial in this matter will require approximately five (5) Court days

### B.   Defendant's Position:

Defendant anticipates that a trial in this matter will require approximately ten (10) days.

## XX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

On August 21, 2012, Plaintiff Worley filed his certificate of interested entities or persons and identified his counsel as having an interest in this action. (Dkt. 3.)

Defendant's new counsel will ascertain if a "Certificate of Interested Entities or Persons" has been filed, and if not, will file such document before the Initial Case Management Conference.

## XXI.   OTHER MATTERS

### A.   Plaintiffs' Position:

At this time, Plaintiffs are unaware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this action.

/ / /

**B.      Defendant's Position:**

At this time, Defendant is unaware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this action other than the suggestions already presented herein.

Respectfully submitted,

**BENSON WORLEY** and **JOHNNY BOYD**, individually and on behalf of all others similarly situated,

Dated: September 26, 2013                    By:     /s/ Benjamin H. Richman
                                                            One of Plaintiffs' Attorneys

Sean P. Reis (SBN 184004)
sreis@edelson.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Chandler R. Givens (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

Dated: September 26, 2013                    ROPERS, MAJESKI, KOHN & BENTLEY


By:  /s/ N. Kathleen Strickland
        KATHLEEN STRICKLAND
        DEVIN C. COURTEAU
        JUSTIN A. ZUCKER
        Attorneys for Defendant
        AVANQUEST NORTH AMERICA INC.