# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| BENSON WORLEY, and JOHNNY BOYD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AVANQUEST NORTH AMERICA INC., a California corporation,<br><br>Defendant.<br>_____/ | No. C 12-04391 WHO (LB)<br><br>**ORDER REGARDING THE PARTIES' NOVEMBER 14, 2013 JOINT STATEMENT REGARDING DISCOVERY DISPUTES**<br><br>[Re: ECF No. 116] |

**INTRODUCTION**

In this putative class action challenging whether Avanquest defrauds consumers into purchasing its software products, the parties have discovery disputes about the preservation period, the production period, inspection of Plaintiff's computers, and discovery of experts. *See* 11/14/2013 Letter, ECF No. 116. The court held a hearing on December 12, 2013 and addresses each dispute in turn below.

**STATEMENT**

Plaintiffs allege, individually and on behalf of a putative nationwide class of similarly situated individuals, that Avanquest defrauds consumers into purchasing its Fix-It Utilities and System Suite PC Tune-Up & Repair software (collectively, the "Software"). *See generally* First Amended Complaint ("FAC"), ECF No. 52. Specifically, Plaintiffs allege that Avanquest represents

to consumers that its Software is capable of identifying, reporting, and repairing a wide range of PC errors, privacy and security threats, and other computer problems. *See id.*, ¶¶ 5, 26-32. Instead, Plaintiffs allege, the Software detects and reports that numerous harmful errors and other threats are present, regardless of the actual condition of the user's computer. *See id.*, ¶¶ 6, 33-37. Plaintiffs allege that Avanquest designed the Software to misrepresent and exaggerate the existence and severity of these detected errors, as well as the overall health of the computer. *See id.*, ¶¶ 6, 38-42. In this way, users are led to believe that the Software is performing the beneficial tasks represented by Avanquest (when, in fact, it is not) and they continue using the Software without seeking a refund of the monies they paid to purchase it. *See id.*, ¶ 7.

Avanquest denies Plaintiffs' representations that the Software is ineffective and has no functionality at all, and also denies Plaintiffs' allegation that it defrauds its customers, as the Software is capable of performing the tasks advertised. *See generally* Answer, ECF No. 105.

On November 14, 2013, the parties filed a joint statement regarding several discover disputes. 11/14/2013 Letter, ECF No. 116. The district court thereafter referred all discovery disputes, including those described in the parties' joint statement, to the undersigned for resolution. Order of Reference, ECF No. 117; Notice of Referral, ECF No. 118.

## ANALYSIS

### I. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the

parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## II. PRESERVATION PERIOD

Plaintiffs say they want Avanquest to preserve "all relevant and discoverable information from the time the original versions of the software were developed to the present." 11/14/2013 Letter, ECF No. 116 at 2. Avanquest has offered to preserve "Electronically Stored Information (ESI) from August 2008 to present, the entire period covered by the statute of limitations." *Id.* They note that Plaintiffs' request would add ten years to the limitations period. *Id.*

Avanquest's best argument is that Plaintiffs' First Amended Complaint puts at issue only Version 12 of its Software, and that defines the scope of their preservation obligation. Plaintiffs respond that their First Amended Complaint alleges that all versions of Avanquest's software do not work but they cite only the First Amended Complaint generally and do not cite any specific paragraphs. The court's review of the First Amended Complaint shows that there are two Named Plaintiffs. One alleges that he purchased Avanquest's System Suite PC Tune-Up & Repair 12, *see* FAC, ECF No. 52, ¶¶ 46-47, and the other alleges that he purchased Fix-It Utilities Professional 12, *see id.*, ¶¶ 54-55. While the First Amended Complaint does seem to be challenging Version 12 of the Software, this is not dispositive with respect to Avanquest's preservation obligations.

Plaintiffs also say that one of the Named Plaintiffs also purchased Versions 8 and 9 of the Software, too, but Plaintiffs did not know this until a few weeks ago, so at least Versions 8, 9, and 12 are at issue. Also, they assert that the different versions represent non-material changes to the Software's functionalities (for example, resolving glitches and bugs), and the code base of the original Software essentially is included in later versions. Avanquest said at the hearing that it will preserve and produce all the Software (including the source code), and the court orders that preservation and production.

But that does not end the inquiry because—as Plaintiffs argue—relevant information may pre-date the limitations period, such as communications regarding the design and purpose of static features of the Software. Avanquest responds that adding ten years to the preservation period is not proportional to the litigation, particularly given that the First Amended Complaint focuses only on

ORDER (C 12-04391 WHO (LB))

3

Version 12. Thus, it argues that preserving this much information is unduly burdensome.

Relevant information from before the limitations period ought to be preserved and produced. If there are communications, for example, about the Software, that could be relevant to the fraud and contract claims that form basis of Plaintiffs' case, those communications should be preserved and produced. The problem is that the parties did not (even though they ought to be able to) identify custodians who are likely to have relevant information. And it is unclear how far back Avanquest even has information, given that it acquired the Software in 2005. Knowing these details would allow Avanquest's technical expert to specify the burdens associated with preserving relevant information (particularly of electronically-stored information). The parties' discovery letter was not detailed in this regard, so the court cannot order specific information to be preserved. Instead, the court orders the following. The court assumes that Avanquest has made its Rule 26 disclosures and identified categories of responsive documents and custodians who are likely to have information relevant to Plaintiffs' claims and Avanquest's defenses. The court also assumes that Plaintiffs have requested, at least informally, certain categories of discovery. Avanquest must identify custodians likely to have relevant information during the time period requested by Plaintiffs, consult a person with expertise (such as an IT employee) and specify any undue burden associated with preservation, and produce non-burdensome, relevant information. If it identifies specifically issues related to preserving information or to production or relevance, the parties must comply with the court's discovery procedures and submit a joint discovery letter that provides details about the problems and puts their dispute in context.

### III. PRODUCTION PERIOD

Plaintiffs propose that Avanquest "search and produce all relevant and discoverable information from the time the original versions of the software were developed to the present." 11/14/2013 Letter, ECF No. 116 at 4. Avanquest offers to produce "responsive documents from August 10, 2010 to present, which is 1 year before the release of Version 12 of the Products and approximately 1.5 years prior to Plaintiffs' purchase of the Products." *Id.* at 3.

Avanquest agreed to produce the Software (including the source code). For now, the court orders Avanquest to produce documents from August 2008 to present (the entire period covered by

1 the statute of limitations) that are responsive to Plaintiffs' discovery requests. Discovery will start
2 there. As the court explained at the hearing, because the preservation period will be longer,
3 discovery can be iterative. The mechanisms for addressing relevance and burden issues are
4 described in the previous section.

## IV. INSPECTION OF PLAINTIFFS' COMPUTERS

Avanquest wants "mirror-image copies of Plaintiffs' and their expert's hard drives, all of which are relied upon in the [First Amended Complaint], to determine if the performance of the software alleged in the [First Amended Complaint] was impacted by variables on those computers." 11/14/2013 Letter, ECF No. 116 at 4. It says it needs to "test the software in the same operational environment alleged by Plaintiffs in order to identify any variables that caused the alleged reporting issues." *Id.* Citing a few non-binding cases, Plaintiffs propose the following procedure: "Plaintiffs would provide their hard drives to a forensic expert (of [Avanquest's] choosing) who will make images of the hard drives and maintain that data. Then, [Avanquest] may make formal discovery requests for specific data it believes may be contained on the hard drives and that is otherwise relevant and discoverable—including the information it requires to 'recreate the computing environments' present on Plaintiffs' computers at the time they ran the software. The expert will search the hard drives for the requested information and allow Plaintiffs to review the results of the search to allow for any valid objections Plaintiffs may have to producing any irrelevant, privileged or otherwise protected materials. Plaintiffs would then provide [Avanquest] a description of any information withheld and the basis for their objection to producing such information—much like a traditional privilege-log—and the balance of the data would be produced." *Id.* at 5.

Plaintiffs object to "unfettered access" to their hard drives because they contain, for example, "family photos, personal financial information, and private communications, including privileged communications with their counsel." Avanquest says this is not a problem because of the protective order. Plus, Avanquest argues, Plaintiffs put their computers at issue by filing a lawsuit about how software runs on their computers, so they should not complain when Avanquest wants to look at their computers.

Plaintiffs' proposal is not workable. Avanquest needs to see how the Software runs on

ORDER (C 12-04391 WHO (LB))

5

Plaintiffs' computers. Private information such as photographs and financial information can be protected with a protective order. Information that may be protected by any applicable privileges is different, though. Apparently Plaintiffs left their computers with counsel, and there may not have been an opportunity for privileged information to be sent from counsel to Plaintiffs (or vice-versa), so there may not be any privileged information at all. Still, the court will give Plaintiffs an opportunity to review the computers for privileged information.

The process will be this: Mirror images will be made of Plaintiffs' hard drives. Counsel must confer with Plaintiffs first to determine whether the hard drives contain any privileged information. Plaintiffs will consult with persons with expertise to identify the reasonable time period to conduct a privilege review and will inform opposing counsel. They will conduct the privilege review within that reasonable time.

As for Plaintiffs' expert's hard drive, that issue is discussed in the next section.

## V. DISCOVERY OF THE EXPERT IDENTIFIED IN PLAINTIFFS' COMPLAINT

Finally, Avanquest wants to depose the "computer forensics expert" identified in Paragraphs 38-41 of Plaintiffs' First Amended Complaint "to determine the methodology used for testing the software and the factual support for the allegations made in the [First Amended Complaint] regarding its functionality." Plaintiffs alleged as follows:

> 38. On the surface, it appears as if the software is actually detecting, reporting, and repairing errors that threaten the operations of a user's PC. In reality, however, Avanquest intentionally designed its Scareware to vastly overstate both the amount and severity of errors that the software purportedly fixes in an effort to convince consumers that it functions as advertised—i.e., that it actually detects and removes credible threats and PC problems.
>
> 39. Through their attorneys, Plaintiffs have engaged a computer forensics expert to examine Avanquest's Scareware. The results of this investigation confirm that the software always reports that a user's PC is in poor condition—regardless of the condition or type of computer the software is installed on. For instance, the Scareware's results shown in Figure 6 above were produced after conducting a diagnostic scan on a brand new computer. Ostensibly these representations scare the user into believing that the PC is damaged or at risk, and that continued use of the Scareware is necessary to "fix" these problems. The facts show otherwise. Plaintiffs' expert has determined that, by any stretch of the imagination, many of the errors detected are not credible threats to a PC's functionality.
>
> 40. In relevant part, the expert's investigation uncovered that Avanquest programmed its Scareware to (i) always identify problems on a user's computer (even when none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous items as harmful threats, and (iv) arbitrarily

  report that the user's "Optimization," "Security," and "Maintenance" statuses are low without using any credible metrics to assess these issues.

  41. The expert's research also shows that the Scareware was deliberately designed to mischaracterize the severity of errors to shock consumers into believing that their computers are damaged. For instance, the expert confirmed that the software detected a number of innocuous and benign files that cannot cause damage to a computer and reported that they were negatively impacting the computer's performance.

FAC, ECF No. 52, ¶¶ 38-41 (footnote omitted). Plaintiffs refuse to produce the expert.

  Avanquest argues that Plaintiffs have put their experts' investigation into play by making the above-quoted factual allegations in their First Amended Complaint (and by relying on those allegations to defeat its motion to dismiss) and thus it has the right to discover information related to those factual allegations. The court agrees. Avanquest cites opinions that involve instances where courts have ruled that discovery into an expert's statements is allowed when a party submits that expert's declaration in support of that party's summary judgment motion. *See Positive Tech., Inc. v. Sony Elec., Inc.*, No. 11-cv-2226 SI, 2013 WL 1402337, at *2-3 (N.D. Cal. Apr. 5, 2013) (Westmore, J.) ("Because Plaintiff filed [its expert's] declaration during summary judgment proceedings, and the declaration is sworn testimony similar to testimony at trial, Plaintiff now claim that [the expert] is merely a consulting expert with respect to the subjects raised in his declaration."); *SEC v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422, at *1-3 (N.D. Cal. Mar. 30, 2007) (Breyer, J.) (requiring production of materials experts relied upon in relation to those experts' declaration in support of a summary judgment motion); *see also Sims v. Met. Life. Ins. Co.*, No. C-05-02980 TEH (EDL), 2006 WL 3826717, at *3 ("The parties have opened the door to expert discovery by introducing the testimony of their experts at the summary judgment stage of the proceedings."); *id.* at *2 ("Submitting sworn testimony is incompatible with retaining the . . . status of a mere consulting expert immune from discovery."); *U.S. v. Hooker Chem. & Plastics Corp.*, 112 F.R.D. 333, 339-41 (W.D.N.Y. 1987) (allowing deposition of expert whose declaration defendant submitted in support of a motion for summary judgment). The reasoning behind those opinions—that if a party uses a consulting expert's statements, findings, or opinions in a filing, that party has put the expert's statements, findings, or opinions into the judicial arena and the opposing side may take discovery about those statements, findings, or opinions—applies equally in this context, where

Plaintiffs very clearly rely upon their expert's investigation to support the claims in their First Amended Complaint.

Plaintiffs argument that its expert is just a "consulting expert," and, at least for right now, is not a "testifying expert," so they do not have to produce him for deposition, is not persuasive. *See* 11/14/2013 Letter, ECF No. 116 at 6 (citing *U.S. Inspection Serv., Inc. v. NL Eng'n Solutions, LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010) (Ryu, J.) (citing Fed. R. Civ. P. 26(b)(4)(B))). They rely upon Rule 26(b)(4)(B), which provides:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b) [which pertains to examiner's reports of physical and mental examinations]; or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

First, Plaintiffs cite no authority holding, or even suggesting, that the protections afforded by Rule 26(b)(4)(B) apply to an expert who has supplied statements, findings, or opinions explicitly relied upon by a party in a pleading or motion, rather than to the conventional instance who expert who merely provides behind-the-scenes assistance to a party with respect to litigation. *See* 11/14/2013 Letter, ECF No. 116 at 6. Second, the few relevant judicial opinions that exist (including the opinion cited by Plaintiffs) acknowledge that Rule 26(b)(4)(B) is rooted in fairness and that it would be unfair to allow a party to use expert testimony as both a sword and a shield. *Cf. U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 624-25 (N.D. Cal. 2010) (Ryu, J.) (not allowing discovery related to a consulting expert's work in part because "there is no indication in the record that [an intervenor] has attempted to [its expert's] work as both a 'sword and a shield' by making use of some documents setting forth [its expert's] analysis yet withholding the rest to shelter unfavorable evidence"); *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 32-33 (D. Mass. 2006) (finding that Defendants did not waive any protections under Rule 24(b)(4)(B) of its expert's underlying documents by disclosing its expert's report "because there is no evidence that the Defendants sought to make use of the report in a judicial proceeding," its expert "is not testifying,"

ORDER (C 12-04391 WHO (LB))

8

and there was "no showing that Defendants put the report at issue"; "There is no sword here.").

Still, this does not mean that Avanquest may depose Plaintiffs' expert without limitation. Indeed, courts faced with similar situations have allowed a party to discovery only information related to the expert's statements, findings, or opinions that were put at issue; discovery is not allowed into information or material not put in issue or regrading the contents of any privileged communications. *See Positive Tech.*, 2013 WL 1402337, at *5 (allowing Defendants to depose Plaintiff's expert about "the subject matter of his declaration," but not allowing Defendants to depose him "regrading the contents of any privileged communications with counsel for Plaintiff"); *Sims*, 2006 WL 3826717, at *3 ("The opposing parties may depose each others' experts to question them about the statements in their declarations."); *Hollinger v. Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. at 521-22 (declining to allow discovery into the undisclosed portions of a non-testifying expert's report and to all other documents involving the same subject matter, even where portions of expert's findings had already been disclosed); *Ludwig v. Pilkington N.A., Inc.*, No. 03 C 1086, 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003) (finding that even if doctrine of waiver applied to Rule 26(b)(4)(B), any waiver is limited to material disclosed and does not apply to undisclosed material). Accordingly, Avanquest may at an appropriate time depose Plaintiffs' expert about allegations Plaintiffs make in Paragraphs 38-41 of their First Amended Complaint.

For now, though, the court orders the following. Fact disclosures must be made now in response to the pending interrogatories. Opinion disclosures may be made at the time of the expert disclosures. At that point, and in the context of discovery of the testifying expert report, the court will consider whether a deposition is necessary.

## CONCLUSION

This disposes of ECF No. 116.

**IT IS SO ORDERED.**

Dated: December 13, 2013

LAUREL BEELER
United States Magistrate Judge