Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Chandler R. Givens (Admitted *Pro Hac Vice*)
cgivens@edelson.com
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Putative Class*

N. KATHLEEN STRICKLAND (SBN 64816)
LAEL D. ANDARA (SBN 215416)
DEVIN C. COURTEAU (SBN 197505)
JUSTIN A. ZUCKER (SBN 284401)
ROPERS, MAJESKI, KOHN & BENTLEY
150 Spear Street, Suite 850
San Francisco, CA 94105
Telephone:   (415) 543-4800
Facsimile:    (415) 972-6301

*Attorneys for Defendant*
AVANQUEST NORTH AMERICA INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BENSON WORLEY and JOHNNY BOYD, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>AVANQUEST NORTH AMERICA, INC., a California corporation,<br><br>*Defendant*. | Case No. 3:12-cv-04391-WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Honorable William H. Orrick<br>Date:   May 13, 2014<br>Time:   2:00 p.m.<br>Ctrm.:  2 (17th Floor)<br><br>Action Filed:  August 21, 2012 |

Pursuant to Fed. R. Civ. P. 26, Local Rule 16-9 and the Standing Order for all Judges of

the Northern District of California, Plaintiffs Benson Worley ("Worley") and Johnny Boyd

("Boyd") (collectively, "Plaintiffs") and Defendant Avanquest North America Inc. ("Avanquest" or "Defendant") (collectively, the "Parties"), hereby jointly submit the following Case Management Statement. Plaintiffs' First Amended Complaint ("FAC") makes claims against Avanquest regarding two of its products. The two Products at issue in this litigation are Avanquest's utility software Fix-It Utilities Professional Version 12 ("Fix-It Utilities") and SystemSuite PC Tune-Up & Repair Version 12 ("SystemSuite") (collectively, the "Software").

## I. INTRODUCTION

Since the Parties were last before the Court for case management, significant progress has been made in the litigation. The Parties have proceeded with written discovery, including the production and review of thousands of pages of documents and other responsive information. The Parties have also worked cooperatively to resolve various discovery disputes as they have arisen and when they could not resolve such disputes, promptly presented them to the Court. (See, e.g., Dkts. 116, 123.) Additional discovery issues remain and the Parties will be finalizing a Joint Discovery Dispute Letter to file with Judge Beeler this week, having narrowed the remaining issues.

Additionally, the Parties agreed to exchange additional discovery related to Plaintiffs' computers in conjunction with their agreement to proceed with a private mediation on June 3, 2014, with the Honorable Dickran M. Tevrizian (ret.) of JAMS. Notwithstanding, the Parties have continued their formal discovery efforts in parallel, so as not to unnecessarily delay these proceedings.

## II. JURISDICTION AND SERVICE

### A. Plaintiffs' Position:

All named-parties to this action have been served.

Further, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

More than year after the case was filed, on September 23, 2013, Avanquest raised for the

first time its belief that CAFA's threshold amount in controversy requirement has not been satisfied and thus, this Court lacks subject matter jurisdiction over the case. Setting aside that Avanquest has already had more than sufficient opportunity to raise such concerns—for example, in either of its two motions to dismiss and certainly before it answered Plaintiffs' complaint—it misunderstands with whom the burden lies in this regard. Indeed, where (as here) it appears from the face of the complaint that CAFA's requisite amount in controversy is satisfied, it is the opponent of CAFA jurisdiction (i.e., Avanquest, not Plaintiffs) that bears the burden to prove—by way of competent evidence—that CAFA's requisites to jurisdiction have not been met. Avanquest has not attempted to meet that burden—by way of another motion to dismiss or otherwise—and based upon the sales figures it sets forth in Section II.B below, it cannot. Indeed, according to Avanquest's own records, at least 320,000 units of the software products at issue have been sold, amounting to more than $12.8 million in revenue at issue (i.e., at an average sales price of $40.00 per unit).

No issues exist with respect to personal jurisdiction or venue either, and Avanquest has been served.

### B. Defendant's Position:

All named parties to this action have been properly served.

Avanquest disputes that the amount in controversy exceeds the five million dollar ($5,000,000) minimum statutory subject matter jurisdictional limit of this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1332. Avanquest questions whether the requisite amount in controversy jurisdictional limit, required under CAFA, can be proved. Specifically, Avanquest contends that before proceeding with this lawsuit, Plaintiffs are required to present evidence to demonstrate that the damages associated with the purchase and use of the two products exceeds the statutory jurisdictional minimum. At the relatively low price for the Software, less than $40.00 per boxed unit (under $80.00 alleged for the purchase of two Software products), Plaintiff must prove that more than a hundred thousand boxed units have been purchased ***and*** the hundred thousand boxed units did not perform as advertised on the packaged product. Avanquest's tracking of Software related issues evidences that in less than 1% of sales

of both Software products was a refund issued and few if any have reported anything approaching the types of experiences alleged by Plaintiffs as to their specific computers, since both Worley and Boyd's computers had pre-existing unique individual problems before they ever purchased Avanquest's software.

Preliminary review of the sales figures indicates that total retail sales of the boxed Software are only approximately three hundred and twenty thousand (320,000) units. Preliminary review of the number of refunds provided issued indicates that five hundred and eighty-five (585) refunds were issued, which leads to the inference that a relatively minimal amount of people felt the Software did not function as advertised or could not otherwise operate the Software. Accordingly, it is highly unlikely that Plaintiffs will be able to establish that there are over a hundred thousand potential class members in order to meet the CAFA jurisdictional limit of five million dollars ($5,000,000).

### III. FACTS

#### A. Plaintiffs' Position:

Plaintiffs allege, individually and on behalf of a putative nationwide class of similarly situated individuals, that Avanquest defrauds consumers into purchasing its Fix-It Utilities and System Suite PC Tune-Up & Repair software (collectively, the "Software"). Specifically, Plaintiffs allege that Avanquest represents to consumers that its Software is capable of identifying, reporting, and repairing a wide range of PC errors, privacy and security threats, and other computer problems. Ultimately, regardless of the actual condition of the user's computer, however, the software invariably detects and reports, in alarmist fashion, that numerous harmful errors and other threats are present. Indeed, Avanquest designed the Software to misrepresent and exaggerate the existence and severity of these detected errors, as well as the overall health of the computer. In this way, users are led to believe that the Software is performing the beneficial tasks represented by Avanquest (when, in fact, it is not) and they continue using the Software without seeking a refund of the monies they paid to purchase it.

#### B. Defendant's Position:

The Software (which is contained on a CD Rom inside the Software's boxed packaging),

amongst other functionalities, scans a user's computer; detects errors, potential threats, and issues that slow a computer's performance; fixes those errors and/or deletes those threats and issues; and provides anti-virus protection. Within the Software's boxed packaging, there is a CD Rom, User's Guide, containing an End User's License Agreement ("EULA"), and a product registration card. The CD Rom also contains a duplicate digital copy of the User's Guide and EULA. The Software performs as advertised.

Avanquest denies Plaintiffs' representations that the Software is ineffective and has no functionality. Plaintiffs' assertion that the Software's "diagnostics procedures do not perform any credible evaluation of consumers' PCs" is incorrect. (FAC, ¶ 6.) The Software's diagnostic scan performs as marketed and advertised.

After the Software CD Rom is inserted in a computer and prior to installing and running the Software, the user is presented with the EULA that they must click accept in order to proceed with installation and running the Software. Upon running a diagnostic scan, the Software puts the user on notice of potential errors and threats to the user's PC. Such diagnostic testing and notification is part of the Software's design to provide the user with an analysis to allow the user to take proper procedures to protect the user's PC from said errors and threats. Avanquest will establish that the Software performs as advertised. Avanquest made no false or misleading representations regarding the status of a user's computer because, contrary to Plaintiffs' allegations, the Software does scan for and remove actual errors that have the potential to degrade the performance of a user's computer.

It is undisputed that each individual product was purchased to "fix" problems already existing on Plaintiffs' individual used, not new, computers. On April 17, 2014, Avanquest examined, at Edelson's office in Chicago, Illinois, both Plaintiffs' computers as well as the hard drives that were inside each computer. Preliminary observation of the hard drives that were inside each computer in Chicago indicates that neither Worley nor Boyd's hard drive had the accused Software installed on it. Furthermore, both Worley and Boyd's computer had unique significant problems on the hardware of each computer which could explain the problems alleged in the FAC with their computers. Avanquest's consultant made forensic mirror images of the

hard drives of each computer while present at the inspection held on April 17, 2014, in Chicago. That consultant is currently comparing these hard drive images to the hard drive images Plaintiffs' counsel's consultant, the Sylint Group delivered to Avanquest's counsel on January 31, 2014, as forensic copies of Plaintiffs' respective computer hard drives. Avanquest's consultant has already observed that the hard disc images he obtained in Chicago in April differ significantly from the hard disc image provided in January by the Sylint Group, and that neither of the hard drives in Boyd and Worley's computers in Chicago is the make and model of Plaintiffs' hard drives identified in their verified interrogatory responses of December 7, 2014. (Worley and Boyd Interrogatory Response No. 8.) Additionally, Avanquest's consultant has found that other verified responses in Worley's interrogatory response do not match the physical details of the computer in Chicago. As to Boyd, Avanquest's consultant has found that the verified interrogatory responses of Boyd do not match the details of the computer in Chicago.

Avanquest's Software does not "scare" a user into purchasing the Software. The Software cannot be installed on the computer until a consumer has already purchased it. Accordingly, the evidence will also show that neither Plaintiff was "fraudulently induced" to purchase and continue using the Software. The facts will further show that if each Plaintiff was dissatisfied with the performance of the respective Software product, they could have returned the Software and receive a full refund of the purchase price. Importantly, neither of the Plaintiffs chose to return the Software. Finally, Avanquest will prove that Plaintiffs have not suffered the injury alleged in the Complaint as the Software performs as advertised.

IV. **LEGAL ISSUES**

A. **Plaintiffs' Position:**

The legal issues in this case include, but are not limited to:

1. Whether Defendant fraudulently induced Plaintiffs and the putative class to purchase the Software;
2. Whether Defendant's alleged conduct constitutes violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;
3. Whether Defendant breached its contracts with Plaintiffs and the putative class;

RC1/7444987.7/JZ4 - 6 -
JOINT CASE MANAGEMENT STATEMENT CASE NO. 3:12-CV-04391-WHO

4.  Whether Defendant breached the implied covenant of good faith and fair dealing with respect to Plaintiffs and the putative class; and

        5.  Whether the putative class is appropriate for certification under Fed. R. Civ. P. 23.

    **B.     Defendant's Position:**

Defendant's position is that Plaintiffs will be unable to state a claim for relief under CAFA for failure to establish that over a hundred thousand persons purchased these two Software products from a retail store, which then failed to perform as advertised. Without such a showing, this Court lacks subject matter jurisdiction to proceed any further with this lawsuit. This legal issue should be addressed by this Court under Fed. R. Civ. P. 1, because on the face of the complaint, it is apparent to Avanquest that Plaintiffs will not be able to meet this jurisdictional limit to be able to keep this case in federal court.

Additionally, Defendant's position is that Plaintiffs' fail to meet the requirements for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b) and therefore will be left with their individual claims for damages, which again fails to meet the jurisdictional limit of this Court:

1.  Whether Plaintiffs' FAC meets the CAFA jurisdictional requirements for subject matter jurisdiction to be able to remain in federal court, 28 U.S.C. Section 1332;

2.  Whether Plaintiffs' FAC fails to plead special matters such as fraud and contract with specificity as required by Fed. R. Civ. P. 9(b);

3.  Whether Plaintiffs can certify a putative nationwide class of purchasers under Fed. R. Civ. P. 23(b)(3), including their ability to satisfy the Rule 23(a) requirements of numerosity, commonality, and typicality, as well as Rule 23(b)(3) predominance of common issues;

4.  Whether the alleged misrepresentations are actionable; and

5.  Whether Plaintiffs can prove injury or damages when there is no proof of purchase (no standing/no injury/no damages) or evidence of an agreement (for contract based claims), the Software was not installed on the Plaintiffs' computers (no standing/no injury/no damages), and/or the Software performs as advertised.

///

## V. MOTIONS

### A. Plaintiffs' Position:

Plaintiffs anticipate filing the following motions: (i) a motion for class certification; (ii) a motion for summary judgment; and (iii) discovery related motions, if necessary.

### B. Defendant's Position:

Avanquest anticipates filing the following additional motions in support of Defendant's position:

1. Motion for Summary Judgment under Fed. R. Civ. P. 56(a), including, among other legal theories, for failure to establish the requisite jurisdictional minimum under CAFA in order to maintain jurisdiction in federal court based on the extensive discovery produced, failure to prove proof of purchase (no standing/injury or damages), or agreement (no contract based claims) as to these plaintiffs; or alternatively motion to strike class allegations;

2. Motion to deny class certification based on failure to meet Fed. R. Civ. P. Rule 23(a) and Rule 23(b) requirements; or alternatively motion to strike class allegations;

3. Motion to limit the nature of the fraudulent inducement claim alleged in this case, to eliminate any claim of fraudulent inducement to the Products advertisements on the outside packaging and not to "running any scan" since in this case the FAC alleges the Products are purchased before any installation and running of the respective Software;

4. Motion to define and limit the alleged class to only purchasers of the Software from retail stores, as alleged in the complaint, not to online purchasers, and to those purchasing for use on used and not new computers; and

5. Such other motions as are necessary to affect the discovery of Plaintiffs' relevant documents and information, including discovery of the transactions at issue and state and nature of Plaintiffs' computer systems at the time of installation and use of the Products as well as CD Rom containing the Software, including reserving

RC1/7444987.7/JZ4
- 8 -
JOINT CASE MANAGEMENT STATEMENT       CASE NO. 3:12-CV-04391-WHO

our right to bring possible motions related to discovery matters.

## VI. AMENDMENT OF PLEADINGS

### A. Plaintiffs' Position:

At this time, Plaintiffs do not anticipate that any further amendments of the pleadings—beyond their First Amended Complaint—will be necessary. However, information obtained through discovery may necessitate amendments in the future. Plaintiffs propose that amended pleadings (if any), be filed in accordance with the schedule of discovery and general case deadlines ultimately set by the Court.

### B. Defendant's Position:

Plaintiffs have already amended their complaint on February 22, 2013, after this Court's Order granting in part Defendant's motion to dismiss the original complaint. Plaintiffs should not be rewarded with further leave to amend their FAC because they have already had the opportunity to amend.

## VII. EVIDENCE PRESERVATION

### A. Plaintiffs' Position:

Plaintiffs have conferred with their counsel about the need to preserve evidence that may be relevant to their claims or Defendant's defenses, including the preservation of electronically stored information. In particular, Plaintiffs have imaged the hard drives of the computers on which the Software at issue was installed.

Plaintiffs' counsel served a notice of preservation on Avanquest, which outlined, *inter alia*, the categories of documents, information and ESI Plaintiffs intend to seek in discovery in this matter; the types, forms and locations of ESI Defendant is obligated to preserve; and, requested that Defendant respond to Plaintiffs' positions and/or agree to confer (along with its technology and e-discovery experts) on these issues.

### B. Defendant's Position:

It has been determined that Benjamin Richman of Edelson PC for Plaintiffs sent a preservation notice to Avanquest on September 4, 2012. An additional preservation notice was sent to the Avanquest by Mr. Carter Ott of DLA Piper on December 12, 2012. In recognition of

the ongoing duty to preserve, a subsequent Preservation Acknowledgment was sent to Avanquest on October 25, 2013, by Avanquest's current counsel.

Plaintiffs Worley and Boyd are also under preservation obligations, arising from the moment this litigation was reasonably foreseeable, including without limitation the forensic evidence located on their used computers showing its configuration and the Software operations for which each respective Plaintiffs' claims are based. Defendant is concerned that Plaintiffs may not have preserved evidence.

Avanquest has inspected the physical computers of Worley and Boyd, as well as the hard drives contained in those computers. Avanquest will be comparing the hard drives inside the computers in Chicago with the hard drives produced to Avanquest's counsel by the Sylint Group, at the direction of Edelson. Until that comparison is complete, it is not known whether Avanquest will be bringing additional motions based on the results of such comparison; however, we reserve the right to do so.

## VIII. DISCLOSURES

The Parties have made their respective initial disclosures required by Fed. R. Civ. P. 26(a)(1).

## IX. DISCOVERY

### A. Scope of Discovery

#### 1. Plaintiffs' Position:

Plaintiffs have served written discovery requests regarding and anticipate taking additional discovery on the following non-exhaustive list of topics: (1) the total number of individuals and entities who purchased any and all versions of the Software; (2) the number and nature of complaints regarding the Software; (3) the number and amount of refunds requested and received by the members of the putative class related to their purchases of the Software; (4) Defendant's representations regarding the purpose, utility, and effectiveness of the Software; (5) the source code underlying the Software and its functionality; and (6) the metrics (and the bases of those metrics) used by the Software to assess and report the condition of the users' computers.

Although they are proceeding with written discovery at this time, the Parties have agreed

to postpone taking any party-depositions pending the completion of their June 3rd mediation.

### 2. Defendant's Position:

Defendant has responded to Plaintiffs' written discovery requests. Due to the extremely large volume of data that had to be reviewed and in line with Magistrate Judge Laurel Beeler's Order regarding the Parties discovery disputes, Avanquest's document production has been iterative.

Defendant has served written discovery and will continue to seek discovery, including document requests, interrogatories, subpoenas, and depositions, concerning the following non-exhaustive list of topics: (1) issues relevant to class certification determination; (2) the composition of, and alleged harm to, the putative class; (3) the sales transactions at issue in the FAC; (4) the state and nature of Plaintiffs' PCs at the time of installation and use of the respective Software at issue; (5) the factual basis for Plaintiffs' claims; (6) any and all reports and documented analysis performed by Plaintiffs' undisclosed "expert" that performed analysis of and opined about the functionality of the Software as referenced in paragraphs 38-42 in the FAC; and (7) the opinions of any experts disclosed by Plaintiffs.

### B. Limits on Discovery:

The Parties have proceeded with discovery based upon the presumptive limits imposed by the Federal Rules of Civil Procedure and do not believe that any modifications to those limits are necessary at this time.

## X. CLASS ACTIONS

### A. Plaintiffs' Position:

Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) of a class (the "Class") of similarly situated individuals and entities, defined as follows:

> All individuals and entities in the United States that have purchased Fix-It Utilities Professional or System Suite PC Tune-Up & Repair.

The proposed Class satisfies each of the requisites to class certification under Rules 23(b)(2) and (b)(3). In particular, the Class consists of potentially thousands of individuals, making joinder of all members impracticable (numerosity); there are many questions of law and

1 fact common to the claims of Plaintiffs and the other members of the Class, which predominate
2 over any questions that may affect only individual Class members (commonality and
3 predominance); Plaintiffs' claims are typical of the claims of all of the other members of the
4 Class, inasmuch as they were similarly damaged as a result of Defendant's unlawful conduct
5 (typicality); and Plaintiffs will fairly and adequately represent and protect the interests of the
6 members of the Class, and have retained counsel competent and experienced in complex class
7 actions (adequacy of representation).

Similarly, class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. That is, the damages suffered by the individual members of the Class will likely be relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties, as well as the likelihood of the imposition of inconsistent obligations. Moreover, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding restitutionary relief with respect to the Class as a whole.

**B.    Defendant's Position:**

Avanquest believes that this lawsuit is not suitable for class certification. Avanquest believes that Plaintiffs cannot establish the Fed. R. Civ. P. 23(a) and (b) requirements for class certification, and that class certification should be denied and summary judgment granted for the reasons set forth in the motions which Avanquest will file. Avanquest opposes any class certification.

Additionally, Avanquest proposes to limit discovery to the issues raised by these two particular Plaintiffs, to those persons who purchased the Software from the same retail store, Wal-Mart, as did Plaintiffs, specifically the specific store and retail location identified in their Interrogatory responses, and excluding any online purchases of the Software since neither Plaintiff purchased the respective Software online. Defendant also proposes to limit discovery to those persons purchasing these two identified Software products, and to no other products.

1   Finally, Defendant proposes to limit discovery to those persons who purchased the Software for
2   use on pre-existing computers and not for use on "new" unused computers.
3   Defendant proposes that necessary discovery be taken and any motion for early summary
4   judgment or other dispositive motion (including jurisdictional motions if appropriate) be heard.
5   As explained under the "Legal Issues," Section IV. above, Defendant sees very substantive
6   obstacles to any class certification in this case, specifically as to adequacy, typicality,
7   commonality, predominance, and numerosity. As to just the predominance prong, based on a
8   review of the individual computers of these two Plaintiffs, Avanquest believes that problems with
9   their computers were so unique and individual, that individual issues predominate in this lawsuit,
10  which will result in a denial of class certification. Also, because the class certification question
11  must focus on whether there is a class-wide damage from actual retail boxed Software not
12  performing as advertised on the packaging - i.e., whether every purchaser of the boxed Software
13  suffered damage because of an alleged failure of the Software to perform as advertised - the core
14  issue is whether that damage and causation can be shown on a class-wide basis without
15  examining each purchaser individually. Except for those purchasers who sought a refund of the
16  products, a total for both products which amounts to less than 1%, Avanquest has no knowledge
17  of which purchaser may claim the Software did not perform as advertised and whether they
18  allegedly suffered damage. We do not know the individual reasons each person sought a refund.
19  For all the reasons that class actions have been soundly rejected in mass tort personal injury
20  claims, no class could be certified here. After some discovery has occurred, a motion for class
21  certification or decertification should be filed at an early practicable time.

## XI. RELATED CASES:

The Parties' respective positions have not changed since the filing of the last Joint Case Management Statement.

## XII. RELIEF SOUGHT:

The Parties' respective positions have not changed since the filing of the last Joint Case Management Statement.

///

RC1/7444987.7/JZ4                                    - 13 -
JOINT CASE MANAGEMENT STATEMENT                                            CASE NO. 3:12-CV-04391-WHO

**XIII. SETTLEMENT AND ADR**

Pursuant to the Parties Stipulation Selecting Private Mediation (dkt. 49), the Parties hereby notify the Court that they are scheduled to proceed with a private mediation before The Honorable Dickran M. Tevrizian (ret.) of JAMS on June 3, 2014.

**XIV. CONSENT TO MAGISTRATE JUDGE:**

The Parties' respective positions have not changed since the filing of the last Joint Case Management Statement.

**XV. OTHER REFERENCES:**

The Parties' respective positions have not changed since the filing of the last Joint Case Management Statement.

**XVI. NARROWING OF ISSUES**

    **A.    Plaintiffs' Position:**

Plaintiffs are not aware of any issues that can be narrowed by agreement or by motion—including with respect to the Court's subject matter jurisdiction (see Section II.A, above)—and do not presently request bifurcation of issues, claims, or defenses.

    **B.    Defendant's Position:**

Defendant believes the case can be narrowed. Defendant believes the Plaintiffs have the burden to establish that this case meets the jurisdictional limits of CAFA in order to remain in federal court. Defendant does not believe that Plaintiffs will be able to meet the five million dollar ($5,000,000) requirement for the federal court to retain jurisdiction of this lawsuit. Further, Defendant is uncertain that Plaintiffs will be able to establish the elements of numerosity, commonality, typicality, adequacy and predominance as required under Rule 23 and will be unable to certify this matter as a class action.

**XVII. EXPEDITED SCHEDULE:**

The Parties' respective positions have not changed since the filing of the last Joint Case Management Statement.

**XVIII. SCHEDULING**

On March 19, 2014 and per the Parties' request, the Court set a revised schedule of

RC1/7444987.7/JZ4 - 14 -
JOINT CASE MANAGEMENT STATEMENT     CASE NO. 3:12-CV-04391-WHO

discovery and general case deadlines. (*See* Dkt. 134.) In light of their upcoming mediation and to allow them to focus their efforts and resources on exploring the potential resolution of this matter, the Parties respectfully request that the Court continue the current case schedule by approximately sixty (60) days, as proposed below.

| EVENT | CURRENT DEADLINE | PROPOSED DEADLINE |
|---|---|---|
| *Deadline to File Motions to Join Parties or Amend Pleadings* | January 10, 2014 | n/a |
| *Plaintiffs to Serve Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) relating to class certification* | May 27, 2014 | July 28, 2014 |
| *Defendant to Serve Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) of rebuttal expert witnesses and reports relating to class certification* | June 27, 2014 | August 29, 2014 |
| *Defendant's Deadline to depose Plaintiff's experts and the parties' other witnesses related to Class Certification* | June 27, 2014 | August 29, 2014 |
| *Plaintiffs' Deadline to Depose Defendant's rebuttal experts related to class certification* | July 28, 2014 | September 29, 2014 |
| *Plaintiffs to File Motion and Memorandum in Support of Class Certification* | August 29, 2014 | October 30, 2014 |
| *Defendant to File Opposition to Class Certification and All Supporting Materials* | September 19, 2014 | November 20, 2014 |
| *Plaintiffs to File Reply in Support of Motion for Class Certification* | October 3, 2014 | December 4, 2014 |
| *Hearing on motion for class certification* | October 20, 2014, at 2:00 p.m. | December 15, 2014, at 2:00 p.m. |
| *Fact Discovery Cut-Off* | November 21, 2014 | January 23, 2015 |
| *Plaintiffs to Serve Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) Related to Merits Issues* | January 23, 2015 | March 23, 2015 |
| *Defendant to Disclose Rebuttal Expert Witnesses Related to Merits Issues* | March 9, 2015 | May 8, 2015 |
| *Expert Discovery Cut-Off* | April 23, 2015 | June 23, 2015 |

RC1/7444987.7/JZ4 - 15 -

| EVENT | CURRENT DEADLINE | PROPOSED DEADLINE |
|---|---|---|
| *File Dispositive Pretrial Motions and Daubert motions* | May 18, 2015 | July 17, 2015 |
| *File oppositions to dispositive pretrial motions and Daubert motions* | June 17, 2015 | August 14, 2015 |
| *File reply briefs in support of dispositive pretrial motions and Daubert motions* | July 1, 2015 | August 28, 2015 |
| *Hearing on dispositive pretrial motions and Daubert motions* | July 15, 2015 | September 14, 2015 |
| *Pretrial Conference* | August 17, 2015 | October 19, 2015 |
| *Motion in Limine Hearing Date* | TBD | TBD |
| *Trial to begin* | August 31, 2015 at 8:30 a.m. | To be moved to a date permitting three months between the last date to hear a motion for summary judgment and trial. |

## XIX. TRIAL

Plaintiffs have requested a trial by jury of all matters that can be so tried. The Parties anticipate that a trial in this matter will require approximately ten Court days.

## XX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The Parties' respective positions have not changed since the filing of the last Joint Case Management Statement.

## XXI. OTHER MATTERS

At this time, the Parties are unaware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this action other than the suggestions already presented herein.

/ / /

/ / /

/ / /

/ / /

/ / /

| | |
|---|---|
| | Respectfully submitted,<br><br>**BENSON WORLEY** and **JOHNNY BOYD**, individually and on behalf of all others similarly situated, |
| Dated: May 6, 2014 | By: /s/ Benjamin H. Richman<br>    One of Plaintiffs' Attorneys<br><br>Jay Edelson (Admitted *Pro Hac Vice*)<br>jedelson@edelson.com<br>Rafey S. Balabanian (Admitted *Pro Hac Vice*)<br>rbalabanian@edelson.com<br>Benjamin H. Richman (Admitted *Pro Hac Vice*)<br>brichman@edelson.com<br>Chandler R. Givens (Admitted *Pro Hac Vice*)<br>cgivens@edelson.com<br>Edelson PC<br>350 North LaSalle Street, Suite 1300<br>Chicago, Illinois 60654<br>Tel: 312.589.6370<br>Fax: 312.589.6378<br><br>Mark Eisen (SBN – 289009)<br>meisen@edelson.com<br>Edelson PC<br>555 West Fifth Street, 31st Floor<br>Los Angeles, California 90013<br>Tel: 213.533.4100 |
| Dated: May 6, 2014 | ROPERS, MAJESKI, KOHN & BENTLEY<br><br><br>By: /s/ N. Kathleen Strickland<br>    KATHLEEN STRICKLAND<br>    DEVIN C. COURTEAU<br>    JUSTIN A. ZUCKER<br>    Attorneys for Defendant<br>    AVANQUEST NORTH AMERICA INC. |

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, N. Kathleen Strickland, am the ECF user whose identification and password are being used to file the foregoing Joint Case Management Statement. I hereby attest that the above-referenced signatory to this Joint Case Management Statement has concurred in this filing.

Dated: May 6, 2014                              By:  /s/ N. Kathleen Strickland
                                                                    N. KATHLEEN STRICKLAND