UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| BENSON WORLEY, and JOHNNY BOYD, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br> AVANQUEST NORTH AMERICA INC., a California corporation, <br><br> Defendant. | No. C 12-04391 WHO (LB) <br><br> **ORDER REGARDING THE PARTIES' MAY 13, 2014 JOINT DISCOVERY DISPUTE LETTER** <br><br> [Re: ECF No. 136] |

## INTRODUCTION

In this putative class action, Benson Worley and Johnny Boyd (collectively, "Plaintiffs") allege that Defendant Avanquest North America, Inc. ("Avanquest") defrauds consumers into purchasing its software products. Currently before the court is the parties dispute about whether Plaintiffs' responses to several of Avanquest's interrogatories and requests for admission are sufficient. *See* 5/13/2014 Letter, ECF No. 136.[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and rules as follows.

## STATEMENT

Plaintiffs allege, individually and on behalf of a putative nationwide class of similarly

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

situated individuals, that Avanquest defrauds consumers into purchasing its Fix-It Utilities and System Suite PC Tune-Up & Repair software (collectively, the "Software"). *See generally* First Amended Complaint ("FAC"), ECF No. 52. Specifically, Plaintiffs allege that Avanquest represents to consumers that its Software is capable of identifying, reporting, and repairing a wide range of PC errors, privacy and security threats, and other computer problems. *See id.*, ¶¶ 5, 26-32. Instead, Plaintiffs allege, the Software detects and reports that numerous harmful errors and other threats are present, regardless of the actual condition of the user's computer. *See id.*, ¶¶ 6, 33-37. Plaintiffs allege that Avanquest designed the Software to misrepresent and exaggerate the existence and severity of these detected errors, as well as the overall health of the computer. *See id.*, ¶¶ 6, 38-42. In this way, users are led to believe that the Software is performing the beneficial tasks represented by Avanquest (when, in fact, it is not) and they continue using the Software without seeking a refund of the monies they paid to purchase it. *See id.*, ¶ 7.

Avanquest denies Plaintiffs' representations that the Software is ineffective and has no functionality at all, and also denies Plaintiffs' allegation that it defrauds its customers, as the Software is capable of performing the tasks advertised. *See generally* Answer, ECF No. 105.

The district court referred all discovery disputes to the undersigned for resolution. Order of Reference, ECF No. 117; Notice of Referral, ECF No. 118. On May 13, 2014, the parties filed a joint letter describing their dispute over whether Plaintiffs sufficiently responded to the following discovery requests made by Avanquest: (1) Interrogatory Nos. 11-15 to Mr. Worley, regarding the "computer forensics expert" Plaintiffs mention in their First Amended Complaint; (2) Interrogatory Nos. 5, 6, 11, and 12 to Mr. Boyd and Requests for Admission Nos. 32 and 55 to Mr. Boyd, regarding the condition of Mr. Boyd's computer; (3) Interrogatory Nos. 2 and 10 to Mr. Boyd, regarding Mr. Boyd's proof of purchase of the Software; and (4) Interrogatory No. 8 to Mr. Boyd and Request for Admission Nos. 37, 38, and 40-50 to Mr. Boyd, regarding the end-user license agreement ("EULA") that accompanied the Software. 5/13/2014 Letter, ECF No. 136; *see also* 5/15/2014 Supplement, ECF No. 139 (containing the text of Avanquest's discovery requests and Plaintiffs' responses to them).

# ANALYSIS

## I. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## II. PLAINTIFFS' "COMPUTER FORENSICS EXPERT"

In Paragraphs 38-41 of their First Amended Complaint, Plaintiffs allege that they retained a "computer forensics expert" who tested the Software and concluded that the Software misrepresented the condition of the Software users' computers and the severity of the malware threats on those computers. *See* FAC, ECF No. 52, ¶¶ 38-41. In November and December 2013, the parties disputed whether Avanquest could depose this computer forensics experts. *See* 11/14/2014 Letter, ECF No. 116. The court ruled that Plaintiffs put this expert's investigation into play by making these allegations (and by relying on those allegations to defeat its motion to dismiss) and thus Avanquest has the right to discover information related to those factual allegations. *See* 12/13/2013 Order, ECF No. 123 at 7. The court also found unpersuasive Plaintiffs' argument that its expert is just a "consulting expert," and, at least for right now, is not a "testifying expert," so they do not have to produce him for deposition. *Id.* at 8. Thus, the court decided that Avanquest may at an appropriate time depose Plaintiffs' expert about allegations in Paragraphs 38-41 of the First Amended Complaint. *Id.* at 9. Specifically, the court ruled that "[f]act disclosures must be made

now in response to the pending interrogatories," "[o]pinion disclosures may be made at the time of the expert disclosures," and "[a]t that point, and in the context of discovery of the testifying expert report, the court will consider whether a deposition is necessary." *Id.*

The parties now dispute whether Mr. Worley has sufficiently responded to five of Avanquest's interrogatories that seek information about Plaintiffs' computer forensics expert and the allegations in Paragraphs 38-41 of the First Amended Complaint. Avanquest asks Mr. Worley to identify the expert (Interrogatory No. 11 to Mr. Worley), describe the hardware and software configuration of the computer the expert used to test the Software (Interrogatory No. 12 to Mr. Worley)[2], identify the steps the expert took to acquire the Software (Interrogatory No. 13 to Mr. Worley), and describe the steps the expert took, and the investigation, methodology and protocol the expert used, when testing it (Interrogatory Nos. 14 and 15 to Mr. Worley). Mr. Worley did not identify the expert, but he did describe the hardware and software configuration of the computer, stated that the expert purchased the Software from Avanquest's website, and provided a four-paragraph description of the steps the expert took when testing the Software.

Avanquest says that Mr. Worley's responses are insufficient. First, it argues that the expert's identity is a fact disclosure that, per the court's prior order, must be made now. Plaintiffs say that the court "did not order that Plaintiffs identify their consulting expert by name," but this is a disingenuous interpretation of the court's prior order. In short, the court made clear at both the hearing and in its order that Avanquest is entitled to depose the expert, but for case management reasons required Avanquest to try and find out about the allegations through written discovery before deposing the expert, as it may turn out that the deposition is unnecessary. It would not make sense for Avanquest to be allowed (eventually) to depose the expert but not find out the expert's identity. Mr. Worley must further respond to Interrogatory No. 11 and identify the expert.

Second, Avanquest complains that Mr. Worley did not say when the Software was purchased or where it was purchased from. Plaintiffs point out that Mr. Worley did say where the Software was

---

[2] The court notes that Avanquest does not argue in the parties' letter that Mr. Worley's response to Interrogatory No. 12 is insufficient. Even if it had, the court finds Mr. Worley's response sufficient.

ORDER (C 12-04391 WHO (LB))

4

purchased from (Avanquest's website) and say that now that they know Avanquest wants to know when it was purchased (Interrogatory No. 13 does not ask for a date), they will do so. With this, the court finds Mr. Worley's response to Interrogatory No. 13 to be sufficient.

Third, Avanquest says that Mr. Worley's four-paragraph description of the steps the taken when testing the Software is not sufficient because it does not, for instance, tell it whether the expert added tools onto the computer, whether the testing platform was tested, how it was set up and used, what steps were taken to research the problems identified, etc. It is true that Mr. Worley's response does not go into this amount of detail, but the court does not believe that Avanquest's interrogatories called for this level of detail. The court's view is that Avanquest's questions are follow-up questions that are more properly asked in a deposition (if one is even needed). In any event, it is the testifying expert who really will matter. All the court has been trying to do is get out the factual basis for the First Amended Complaint's allegations. Thus, the court finds Mr. Worley's responses to Interrogatory Nos. 14 and 15 to be sufficient.

### III. THE CONDITION OF MR. BOYD'S COMPUTER

In Interrogatory Nos. 5, 6, 11, and 12 to Mr. Boyd, Avanquest asks Mr. Boyd to identify any "Anti-Virus programs" (upper-case, so presumably defined by Avanquest) that he purchased and installed on his computer before he purchased and installed Avanquest's Software, and to describe the problems he was having with his computer and the steps he took to remedy them (including identifying anyone from whom he sought assistance), both before and after he installed Avanquest's Software on his computer. Mr. Boyd responded by saying that he did not previously purchase any "Anti-Virus programs," but that he previously had purchased and installed versions 8 and 9 of Avanquest's SystemSuite software, and had "restored" his computer, before purchasing and installing Avanquest's Fix-It Utilities Professional 12 software. As for the problems, he says that "his computer's overall and Internet speeds had decreased significantly, his computer would often freeze when opening programs or browsing the Internet, and [] error messages would be displayed on his screen." He does not remember "the exact method used to restore his computer" and does not recall discussing his computer problems with anyone.

In Request for Admission Nos. 32 and 55, Avanquest asks Mr. Boyd to admit that the Software

"did not harm" his computer and that anti-virus software (lower-case, so presumably not defined by Avanquest) was already installed on his computer when he installed Avanquest's Software on it. Mr. Boyd responded by saying that he could not admit or deny that the Software harmed his computer and that prior to his purchase and installation of Avanquest's Fix-It Utilities Professional 12 software, he had installed other software that was marketed as "anti-virus" software.

Avanquest first argues that Mr. Boyd's responses about whether there was anti-virus software on his program are contradictory because on one hand he says that he did not purchase any "Anti-Virus programs," but on the other hand he says that he had installed other (unnamed) software that was marketed as "anti-virus" software. It also is confused about when he had installed versions 8 and 9 of Avanquest's SystemSuite software (i.e., whether he installed these programs before he installed Avanquest's Fix-It Utilities Professional 12 software). Avanquest also says that Mr. Boyd said that he "restored" his computer but never explained what he did to do so.

The court finds Mr. Boyd's responses, at best, unclear. He says in the parties' letter that he is confused about what Avanquest means by the term "Anti-Virus program" and suggests that this is to blame for any subsequent confusion, but this is an easy problem, not a hard one, to fix. Avanquest's discovery requests are reasonable ones, and Mr. Boyd should respond, to the best of his knowledge, with a coherent and clear description of the programs that he installed on his computer (or were installed by anyone else), the time they were installed, and the steps he took to "restore" his computer. To the extent that he cannot remember, fine, but he must say that. While this also may be the subject of deposition questions, he must clearly answer the requests to the best of his ability now. Accordingly, the court finds Mr. Boyd's responses to Interrogatory Nos. 5, 6, 11, and 12 and Request for Admission No. 55 to be insufficient. He must further respond to them as directed.

Avanquest also says that Mr. Boyd should have to respond further to Request for Admission No. 32. It points out that while Mr. Boyd states that he cannot answer it because the term "harm" is undefined, Mr. Boyd used the undefined term "harm" (or its derivative) no less than 22 times in his complaint. This seems like Avanquest asking him to make a legal determination. On the other hand, he ought to be able to describe the harm to his computer. The parties can revisit this issue after Mr. Boyd amends his responses to the other Interrogatories mentioned above.

## IV. PROOF OF MR. BOYD'S PURCHASE

Avanquest's Interrogatory Nos. 2 and 10 to Mr. Boyd ask him to describe the circumstances surrounding his purchase of the Software (including any Avanquest representations he relied on, when and where he purchased it, who was with him, and any other products he considered or purchased at the same time) and to describe how he first came into contact with his attorneys about the Software. Mr. Boyd responded by saying that he remembers purchasing the Software around March 2012 at Wal-Mart in LaGrange, Georgia, recalling the representations he relied upon, and stating that he also considered two other products (which he identified). He also says that he first contacted his attorneys about the Software on March 11, 2012.

Avanquest complains that Mr. Boyd has not produced a receipt to prove when and where he purchased the Software and has not explained why he does not have one. It also expressed skepticism about his responses because he "allegedly has not retained any evidence of purchase, and did not keep the product or packaging," "[d]espite talking to counsel within a few weeks of the purchase." Mr. Boyd says that he responded to Avanquest's interrogatories and that he was under no obligation "to retain each and every piece of information associated with [his] purchase[] of the [S]oftware at a time when [he was] not yet aware that Avanquest had defrauded [him]."

The court agrees with Mr. Boyd. Avanquest's interrogatories do not say anything about a receipt, and even if it did, if he does not have one, he does have one. If it has questions about why he did not keep one, or why he did not keep the packaging of a product he alleges did not work, it can ask him during his deposition.

## V. THE SOFTWARE'S EULA

In sum, Avanquest's Interrogatory No. 8 and Request for Admission Nos. 37, 38, and 40-50 to Mr. Boyd ask him to describe the hardware configuration of his computer before he installed the Software on it, to admit that he saw, read, and accepted the term of the Software's EULA when installing it, and to admit that the Software's EULA contained several specific terms (e.g., that it provided for a 90-day money-back guarantee, that it contained a limitation of liability, that it provided for the application of the laws of California, etc.). Mr. Boyd provided the hardware configuration of his computer, and it appears he did his best to respond to the requests related to the

EULA. For instance, for many of the requests, he says that the currently-available User's Guide or Fix-It Utilities Professional 12 contains the specific terms Avanquest lists, but he cannot admit that the EULA that may have accompanied the Software he installed contained those terms. This is because he no longer has the Software packaging, the CD-ROM, or the User Guide that apparently accompanied it. In short, he simply cannot remember if there was a EULA or what it said exactly. In the letter, he says that he is willing to discuss an agreement with Avanquest about which version of the EULA would apply here, but Avanquest never responded to him about this proposal.

Avanquest says that Mr. Boyd has the CD-ROM and simply has refused to put it into a computer to view the EULA and respond to its requests.

The court defers its ruling on this dispute for now. The court's view is that all of this could easily be cleared up during Mr. Boyd's deposition, which surely Avanquest will take. The parties may revisit this issue through a new joint discovery dispute letter after Mr. Boyd has been deposed.

## CONCLUSION

This disposes of ECF No. 136.

**IT IS SO ORDERED.**

Dated: June 16, 2014

LAUREL BEELER
United States Magistrate Judge

ORDER (C 12-04391 WHO (LB))