1  N. KATHLEEN STRICKLAND (SBN 64816)
   DEVIN C. COURTEAU (SBN 197505)
2  JUSTIN A. ZUCKER (SBN 284401)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  150 Spear Street, Suite 850
   San Francisco, CA 94105
4  Telephone:    (415) 543-4800
   Facsimile:    (415) 972-6301
5  Email:        kstrickland@rmkb.com
                 dcourteau@rmkb.com
6                jzucker@rmkb.com

7  Attorneys for Defendant
   AVANQUEST NORTH AMERICA INC.

8
                   UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12
   BENSON WORLEY and JOHNNY              CASE NO.  3:12-CV-04391-WHO
13 BOYD, individually and on behalf of all
   other similarly situated,             **NOTICE OF MOTION AND MOTION TO**
14                                        **DISMISS FOR LACK OF SUBJECT**
                  Plaintiffs,             **MATTER JURISDICTION / STANDING**
15                                        **OR ALTERNATIVELY FOR AN OSC RE:**
   v.                                     **DISMISSAL**
16
   AVANQUEST NORTH AMERICA INC.,          Date:      October 8, 2014
17 a California corporation,              Time:      2:00 p.m.
                                          Judge:     Hon. William H. Orrick
18                Defendant.              Courtroom: 2 (17th Floor)

19                                        Action Filed:  August 21, 2012

20

21         TO PLAINTIFFS AND ITS ATTORNEYS OF RECORD:

22         PLEASE TAKE NOTICE that on October 8, 2014, at 2:00 p.m., or as soon thereafter as

23 the matter may be heard in Courtroom 2, Seventeenth Floor, of the above-entitled Court, located

24 at 450 Golden Gate Avenue, San Francisco, California, defendant, Avanquest North America Inc.

25 ("Avanquest") shall and hereby does move the Court for an order, pursuant to Fed. R. Civ. Proc.

26 12(b)(1) and 12(h)(3) dismissing this action.

27         This motion is based on this notice of motion and supporting Memorandum of Points and

28 Authorities, the Declaration of Dr. Jagannathan in Support of Defendant Avanquest North

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   America Inc.'s Motion for Protective Order and Motion to Dismiss and exhibits attached thereto,

2   the Declaration of N. Kathleen Strickland in Support of Defendant Avanquest North America

3   Inc.'s Motion for Protective Order and Motion to Dismiss and exhibits attached thereto, the

4   Request for Judicial Notice in Support of the Motion to Dismiss for Lack of Subject Matter

5   Jurisdiction / Standing or Alternatively for an OSC re: Dismissal; and Motion for Protective

6   Order Staying Discovery Pending a Ruling on Avanquest's Motion to Dismiss, the [Proposed]

7   Order Granting Motion to Dismiss for Lack of Subject Matter Jurisdiction / Standing or

8   Alternatively for an OSC re: Dismissal, and such other written or oral argument as may be

9   presented at or before the time this motion is ruled upon by the Court.

10  Dated: August 29, 2014                          ROPERS, MAJESKI, KOHN & BENTLEY

11

12                                          By:   /s/ N. Kathleen Strickland
                                                 N. KATHLEEN STRICKLAND
13                                               DEVIN C. COURTEAU
                                                 JUSTIN A. ZUCKER
14                                               Attorneys for Defendant
                                                 AVANQUEST NORTH AMERICA INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

RC1/7605095.1/DCC
3:12-CV-04391-WHO                              - 2 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   N. KATHLEEN STRICKLAND (SBN 64816)
    DEVIN C. COURTEAU (SBN 197505)
2   JUSTIN A. ZUCKER (SBN 284401)
    ROPERS, MAJESKI, KOHN & BENTLEY
3   150 Spear Street, Suite 850
    San Francisco, CA  94105-5173
4   Telephone:    (415) 543-4800
    Facsimile:    (415) 972-6301
5   Email:        kstrickland@rmkb.com
                  dcourteau@rmkb.com
6                 jzucker@rmkb.com

7   Attorneys for Defendant
    AVANQUEST NORTH AMERICA INC.

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12
    BENSON WORLEY and JOHNNY              CASE NO.  3:12-CV-04391-WHO
13  BOYD, individually and on behalf of all
    other similarly situated,             **MEMORANDUM OF POINTS AND
14                                         AUTHORITIES IN SUPPORT OF
                    Plaintiffs,            AVANQUEST'S MOTION TO DISMISS
15                                         FOR LACK OF SUBJECT MATTER
    v.                                     JURISDICTION / STANDING OR
16                                         ALTERNATIVELY FOR AN OSC RE:
    AVANQUEST NORTH AMERICA INC.,          DISMISSAL**
17  a California corporation,
                                           Date:       October 8, 2014
18                  Defendant.             Time:       9:30 a.m.
                                           Judge:      Hon. William H. Orrick
19                                         Courtroom: 2 (17th Floor)

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................1

II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND .......................................2

    A.    Initial Complaint: ..................................................................................2

    B.    First Amended Complaint ......................................................................3

    C.    Discovery Disputes:  November 14, 2013 Joint Statement .....................4

    D.    Discovery Conducted .............................................................................4

    E.    Current Status: ......................................................................................5

III.  DISCUSSION .....................................................................................................8

    A.    A Court Lacks Subject Matter Jurisdiction if the Plaintiff Lacks Standing ...........8

    B.    A Court May Consider Matters Outside of the Pleadings when Subject Matter Jurisdiction is at Issue .................................................................9

    C.    Boyd Lacks Standing to Assert a Claim Based on Avanquest's Fix-It .................10

        1.    Boyd Has Not Suffered an Injury in Fact .................................10

        2.    There Can be No Causal Connection between Any Alleged Injury to Boyd and Avanquest's Conduct .................................11

        3.    No Decision in this Action Can Redress Any Alleged Injury to Boyd .......................................................................11

    D.    Plaintiff Has No Standing to Act as a Class Representative ...................11

IV.   CONCLUSION ..................................................................................................12

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

<div align="center">

**TABLE OF AUTHORITIES**

</div>

2

3

Page(s)

4

**CASES**

5

*Allen v. United States,*
   871 F. Supp. 2d 982 (N.D. Cal. 2012) .................................................................................9

6

7

*AMEC Env't & Infrastructure, Inc. v. Spectrum Servs. Grp., Inc.,*
   13-CV-04059-WHO, 2013 WL 6405811 (N.D. Cal. Dec. 6, 2013)........................................9

8

9

*Avila v. Willits Envtl. Remediation Trust,*
   633 F.3d 828 (9th Cir. 2011) (approving the procedure used in *Lore v. Lone Pine
   Corp.*, No. L 33606-85, 1986 N.J. Super. LEXIS 1626 (N.J. Super. Ct. Law Div. Nov.
   18, 1986)).........................................................................................................................2, 3

10

11

*Baker v. Carr,*
   369 U.S. 186 (1962).........................................................................................................1, 8

12

13

*Cottle v. Superior Court,*
   3 Cal.App.4th 1367 (1992) ....................................................................................................2

14

15

*General Telephone Co. of Southwest v. Falcon,*
   457 U.S. 147 (1982) ...............................................................................................................1

16

*In Re Aqua Dots Products Liability Litigation,*
   654 F.3d 748 (7th Cir. 2011) ..............................................................................................12

17

18

*In re Flash Memory Antitrust Litig.,*
   No. C 07–0086, 2010 WL 2465329 (N.D. Cal. June 10, 2010) ..............................................2

19

20

*In re Weaver,*
   632 F.2d 461 (5th Cir. 1980) .................................................................................................8

21

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)..............................................................................................................11

22

23

*Matte v. Sunshine Mobile Homes, Inc.,*
   270 F.Supp.2d 805 (W.D. La. 2003) ....................................................................................10

24

25

*McGrath v. Home Depot USA, Inc.,*
   298 F.R.D. 601 (S.D. CA 2014) ......................................................................................10, 11

26

*Mortensen v. First Fed. Savings & Loan Ass'n,*
   549 F.2d 884 (3d Cir.1977) ...................................................................................................9

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- ii -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## TABLE OF AUTHORITIES

*Prado–Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ........ 12

*Roe v. City of New Orleans*,
766 F. Supp. 1443 (E.D. La. 1991) ........ 8

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ........ 11

*United States v. Hays*,
515 U.S. 737 (1995) ........ 8

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 8, 12

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981) ........ 9

*Wood v. City of San Diego*,
678 F.3d 1075 (9th Cir. 2012) ........ 2

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 12 ........ 2, 8, 9

Fed. R. Civ. Proc. 23 ........ 1

Rule 9 ........ 3

Rule 12(b)(1) ........ 2, 9

Rule 12(h)(3) ........ 2

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

# I.    **INTRODUCTION**

Avanquest North America Inc. ("Avanquest") is filing this Motion (and a Motion for Protective Order Staying Discovery) because plaintiff Johnny Boyd ("Boyd" or "Plaintiff") lacks standing to pursue this action, which in turn deprives the Court of subject matter jurisdiction over this action.

Avanquest has confirmed that the only software at issue herein, Fix-It Utilities Professional 12 ("Fix-It"), *is not installed* on the hard drive of the computer on which Boyd claims to have installed it.  More specifically, inspections by Avanquest's expert have confirmed that Fix-It is not installed on any of the two physical hard drives and one forensic hard drive image he produced in discovery – each of which was claimed to be the hard drive on which Fix-It was installed.  Accordingly, Boyd is not only prohibited from acting as a class representative for purchasers of Fix-It (because he is neither a typical nor adequate class representative for Fed. R. Civ. Proc. 23(a)(3) & (4) purposes), but he also lacks standing to sue for alleged claims relating to Avanquest's Fix-It software, which deprives this Court of subject matter jurisdiction.  Because the other named plaintiff in this action, Benson Worley ("Worley"), dismissed his claims with prejudice on August 25, 2014, and both plaintiffs agreed to the dismissal of all claims relating to System Suite PC Tune-Up & Repair ("System Suite"), the sole remaining claim at issue in this action is Boyd's patently defective claim relating to Fix-It.  Accordingly, no legitimate purpose is served by engaging in the expensive deposition and discovery process, or continued prosecution of this baseless action generally, when Boyd cannot produce evidence that he ever installed or ran Fix-It on his computer.

Quite simply, Boyd cannot allege "a personal stake in the outcome of the controversy" so as to warrant federal court jurisdiction (*Baker v. Carr*, 369 U.S. 186, 204 (1962)) because there is no evidence Fix-It is installed or that Boyd ran Fix-It on his computer(s), and he cannot be a class representative because "a class representative *must be part of the class* and 'possess the same interest and suffer the same injury' as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (*emphasis added*) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403-404 (1977) (reversing certification of a class of the

1    defendant trucking company's drivers because the plaintiffs were not qualified for driver

2    positions and "they could have suffered no injury as a result of the allegedly discriminatory

3    practices, and they were, therefore, simply not eligible to represent a class of persons who did

4    allegedly suffer injury")); *see also, In re Flash Memory Antitrust Litig.*, No. C 07–0086 SBA,

5    2010 WL 2465329, *6 (N.D. Cal. June 10, 2010) (finding that plaintiff who did not purchase any

6    of the flash memory products at issue in his antitrust class action lacked standing to sue or to act

7    as a class representative).

8         Because Boyd lacks standing to assert a claim regarding a software that is not present on

9    his computer, this case should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(h)(3)

10   for lack of subject matter jurisdiction.  A motion pursuant to Fed. R. Civ. Proc. 12(b)(1) and

11   12(h)(3) may be brought any time after the plaintiff's lack of standing is discovered, and is not

12   restricted to the pleadings. *See, Wood v. City of San Diego*, 678 F3d 1075, 1082 (9th Cir. 2012)

13   (holding that the deadline for bringing a Rule 12(b)(1) motion "is prolonged by Rule 12(h)(3),"

14   which permits the court to dismiss for lack of subject matter jurisdiction "at any time").

15        In the event the Court is not inclined to issue an immediate dismissal of Boyd's claims

16   (and the entire complaint), Avanquest requests the Court issue an order, akin to the orders issued

17   in *Cottle v. Superior Court*, 3 Cal.App.4th 1367, 1376 (1992) and *Avila v. Willits Envtl.*

18   *Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011) (approving the procedure used in *Lore v.*

19   *Lone Pine Corp.*, No. L 33606-85, 1986 N.J. Super. LEXIS 1626 (N.J. Super. Ct. Law Div. Nov.

20   18, 1986)), requiring Boyd to make, within 10 days, a prima facie showing to this Court that Fix-

21   It is on his computer or suffer dismissal.

22   **II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

23        **A.    Initial Complaint:**

24        The initial complaint in this action was filed on August 21, 2012.  (Dkt. No. 1.)  It named

25   only Plaintiff Benson Worley, and put at issue two Avanquest software products – System Suite

26   and Fix-It.  (*Id.*)  Worley sought to represent a putative class of "All individuals and entities in the

27   United States and its territories that have purchased Fix-It Utilities Professional or System Suite

28   PC Tune-up & Repair."  (*Id.* at ¶ 39.)

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    On November 29, 2012, Avanquest filed a motion to dismiss. (Dkt. No. 37.) On

2  February 5, 2013, Judge Illston issued an order granting in part and denying in part that motion to

3  dismiss and denying a motion to stay discovery. (Dkt. No. 48.) The Court found, amongst other

4  things, that Worley failed to meet the heightened pleading requirements of Rule 9(b), and

5  therefore dismissed the fraudulent inducement claim with leave to amend. (*Id.*) Worley's breach

6  of warranty claim was dismissed without leave to amend. (*Id.*) Significantly, Footnote 1 of

7  Judge Illston's Order notes that "[t]he Complaint repeatedly refers to another of defendant's

8  products, 'Fix-It Utilities,' but the Complaint does not identify how that product is related to

9  System Suite or whether plaintiff Worley purchased the 'Fix-It' software." (Dkt. No. 48, fn. 1.)

10  Footnote 2 also notes that the Complaint contains allegations regarding the packaging for Fix-It

11  which Worley did not allege he purchased. (*Id.*, fn. 2) In a stipulation and order filed on

12  February 15, 2013, it appears that plaintiff Worley's counsel determined it was necessary to name

13  Boyd as an additional plaintiff regarding Avanquest's Fix-It software. It was therefore stipulated

14  that Boyd would be added as an additional plaintiff in the soon to be filed First Amended

15  Complaint. (Dkt. No. 51.)

16    **B.    First Amended Complaint**

17    Shortly thereafter, on February 22, 2013, the First Amended Complaint ("FAC") was filed

18  naming both Worley and Boyd as plaintiffs. In the FAC, Boyd alleged that he installed and ran

19  Fix-It on his computer. (Dkt. No. 52 ("FAC"), ¶¶ 53-57.) Plaintiffs' class definition remained

20  the same as previously quoted herein. On March 3, 2013, Avanquest filed a second motion to

21  dismiss. (Dkt. No. 53.) On April 30, 2013, Judge Illston issued an Order denying that motion to

22  dismiss. (Dkt. No. 66.) In ruling on the motion to dismiss the fraudulent inducement claim, the

23  court made significant observations that are relevant to the instant motion. The Court stated that:

24    • Plaintiffs also describe how the software did not perform the functions they

25      expected it would on their own computers.

26    • The exact manner in which defendant's software actually functions is subject to

27      discovery and decision on a full record, as is the actual state of plaintiffs' own

28      computers prior to and after defendant's software was used.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

These observations are relevant because it is impossible for Plaintiff to have described how Fix-it
performed on his computer if it was not installed or run. And further, the discovery anticipated
by the Court has clearly revealed that Plaintiff's computer does not show evidence of installation
or use of Fix-It – the only Avanquest software product upon which the remaining claims in the
action are based. (Dkt. No. 66.)

### C.   Discovery Disputes:  November 14, 2013 Joint Statement

On November 14, 2013, the parties filed a Joint Statement Regarding Discovery Disputes
(Dkt. No. 116), which pursuant to order of Judge Orrick was referred to Magistrate Judge Laura
Beeler to decide all discovery related matters. (Dkt. No. 118)  On December 12, 2013, Judge
Beeler heard the parties' arguments, and issued her ruling the following day. (Dkt. No. 123).
The Joint Statement Regarding Discovery Disputes discussed four issues: preservation period,
production period, inspection of plaintiffs' computers, and discovery of plaintiffs' computer
forensics expert identified in the plaintiffs' First Amended Complaint, paragraphs 38-42.

As to the inspection of plaintiffs' computers, the Court's ruling stated that "[t]he process
will be this: Mirror images will be made of Plaintiffs' hard drives.  Counsel must confer with
Plaintiffs to first determine whether the hard drives contain any privileged information.  Plaintiffs
will consult with persons with expertise to identify the reasonable time period to conduct a
privilege review and will inform opposing counsel.  They will conduct the privilege review within
that reasonable time." (*Id.* at 6:7-11)

### D.   Discovery Conducted

After the Court ruled on the Joint Statement Regarding Discovery Disputes, the parties
proceeded to engage in discovery.  Avanquest produced three rounds of iterative discovery to
plaintiffs totaling over 50,625 data files, incurring expenses with ESI vendor Avansic of over
$56,679.82.  Avanquest had sent written discovery to Plaintiff's counsel, and received answers in
response thereto. (Declaration of N. Kathleen Strickland in Support of Defendant's Motion for
Protective Order and Motion to Dismiss ("Strickland Decl."), ¶ 16.)  On May 13, 2014, the
parties filed a Joint Statement Regarding Discovery Disputes (No.2) regarding plaintiffs'
computer forensics expert, Interrogatory Nos. 11, 13, 14-15 to Worley, and the condition of

1    Plaintiff Boyd's computer, Interrogatory 5, 6, 11-12, RFA 32, 55, amongst other issues. (Dkt.

2    No. 136.) On May 14, 2014, the Court ordered the parties to submit additional information,

3    which they did on May 15, 2014. (Dkt. Nos. 137, 139.)

4          On June 16, 2014, this Court issued its order regarding the May 13, 2014, Joint Statement

5    Regarding Discovery Disputes. (Dkt. No. 140.) As to the computer forensics expert, the Court

6    ruled it had previously ruled that Plaintiffs put the expert's investigation at issue by relying on the

7    expert to defeat a motion to dismiss, and therefore Avanquest had the right to discover

8    information related to that investigation. The Court also ruled that "Avanquest may, at an

9    appropriate time, depose Plaintiffs' expert about allegations in Paragraphs 38-41 of the First

10   Amended Complaint." (*Id.* at 3:26-28.)

11         The Court also ordered Worley to respond to Interrogatory Nos. 11 and 13, and found

12   Boyd's responses to Interrogatory Nos. 5, 6, 11, and 12 and Request for Admission No. 55 to be,

13   at best, unclear:

14              Avanquest's discovery requests are reasonable ones, and Mr. Boyd
                should respond, to the best of his knowledge, with a coherent and
15              clear description of the programs that he installed on his computer,
                the time they were installed, and the steps he took to 'restore' his
16              computer. To the extent he cannot remember, fine, but he must say
                that . . . . Accordingly, the Court finds Mr. Boyd's responses to
17              Interrogatory Nos. 5, 6, 11 and 12 and Request for Admission No.
                55 to be insufficient. He must further respond to them as directed.
18              (Dkt. No. 140, at 6:15-22.)

19         As to Request for Admission No. 32 to Boyd, the Court stated the parties can revisit the

20   issue after Boyd provides responses to the interrogatories referenced above. (*Id.*)

21   **E.    Current Status:**

22         As of August 25, 2014, Worley and all claims relating to System Suite have been

23   dismissed from this action. (Dkt. No. 143.) Thus, by stipulation of all parties, the only claims

24   remaining in this action are Boyd's personal and putative class action claims relating to Fix-It.

25         As explained more fully below, between April 17, 2014 and August 21, 2014,

26   Avanquest's expert inspected two phsyical hard drives and one forensic hard drive image

27   produced by Plaintiff's counsel alleged to be from Boyd's computer and claimed to be either the

28   actual computer hard drive on which Boyd allegedly installed and ran Fix-It or copies thereof.

---

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   (Strickland Decl., ¶¶ 7; 13; 15.)  The three inspections of Boyd's various hard drives revealed no

2   evidence that Fix-It was installed or run on any of the three hard drives.  (Declaration of Dr.

3   Srinivasan Jagannathan in Support of Defendant's Motion for Protective Order and Motion to

4   Dismiss ("Jagannathan Decl."), ¶¶ 8; 15.)  Certainly, Boyd's computer is the best evidence of

5   whether he ever installed and ran the product, as he alleges in the FAC.  (FAC, ¶¶ 55-56.)  And

6   yet, analysis of the three hard drive images shows clearly that Boyd's computer does not include

7   Fix-It.  (Jagannathan Decl., ¶¶ 8; 15.)

8          Avanquest has expended a massive amount of time, money, and resources in defending

9   this action, and that is before depositions have even been conducted.  Avanquest will be forced to

10  expend even more time, money, and resources defending this case through discovery and

11  opposing class certification.  Such additional discovery (and the related efforts and costs) are

12  completely unnecessary; it is obvious that Fix-It is not present on Boyd's hard drive.  And that is

13  why Avanquest is compelled to bring this Motion to Dismiss and concomitant Motion for

14  Protective Order.

15         Specifically, the first hard drive received from Boyd (the "Sylint Hard Drive") was sent to

16  Avanquest's counsel by Plaintiff's expert and/or consultant the Sylint Group on January 31, 2014,

17  and was received on February 4, 2014.  (Strickland Decl., ¶ 2.)  On April 18, 2014, Avanquest's

18  counsel provided to Avanquest's expert the Sylint Hard Drive.  (Strickland Decl., ¶ 8.)  The

19  Sylint Hard Drive was subsequently inspected by Avanquest's expert who confirms, in his

20  declaration in support of this motion, that Fix-It is not present on that hard drive.  (Jagannathan

21  Decl., ¶¶ 8; 15.)

22         Further, because an inspection of Boyd's computer was required in order to determine

23  whether it had any hardware issues relevant to this litigation, Avanquest's counsel and expert

24  traveled to Chicago and on April 17, 2014, and inspected what was represented to be Boyd's

25  computer.  (Strickland Dec., ¶ 6.)  That inspection was pre-arranged for weeks in advance.

26  (Strickland Decl., ¶ 5.)  During the inspection, Avanquest's expert made a forensic copy of the

27  hard drive in Boyd's computer in Chicago ("Chicago Hard Drive"), and discovered upon

28  / / /

1    inspection that this hard drive also does not contain the Fix-It software.[1]  (Jagannathan Decl., ¶¶

2    10-11.)

3            Finally, on May 13, 2014, Plaintiff's counsel informed Avanquest's counsel that the

4    computers represented as Worley's and Boyd's computers and which were inspected in Chicago

5    were not in fact the plaintiffs' actual computers at issue – the ones on which they allegedly

6    installed and ran the respective software.  (Strickland Decl., ¶ 9.)  Plaintiff's counsel stated that

7    they had produced for inspection the "wrong" computer for Boyd (that Boyd had delivered to

8    them the "wrong" computer), that they had not verified that the computer sent by Boyd was the

9    one on which he allegedly installed and ran Fix-It, and that they were now in possession of the

10   "right" one.  (*Id.*)  Boyd's counsel stated that they would ship Boyd's "right" computer to

11   Avanquest's counsel for inspection in San Francisco.  (*Id.* at ¶ 10.)  Plaintiffs' counsel further

12   stated that the hard drive image on the computer would match up to the Sylint Hard Drive.  (*Id.*)

13   On August 21, 2014, Avanquest's expert performed an inspection of Boyd's computer shipped to

14   Avanquest's counsel in San Francisco, and discovered that the hard drive in that computer – just

15   like the two hard drives previously inspected by Avanquest's expert – did not contain Fix-It.

16   (Jagannathan Decl., ¶ 14.)

17           Meanwhile, Plaintiff's counsel offered to stipulate to dismissal of Worley's case as well as

18   all claims relating to System Suite (including any class claims), in exchange for a waiver of costs.

19   (Strickland Decl., ¶ 17.)  That dismissal was executed and filed on August 25, 2014.  (Dkt. No.

20   143.)

21           The only logical conclusion to be drawn from three inspections of Boyd's hard drives is

22   that he did not install or run Fix-It on his computer.  Accordingly, he lacks standing to assert a

23

24   [1] Avanquest's expert also inspected a computer purportedly belonging to Worley, but because
     Worley's claims have been dismissed we will not address in depth in this motion the many issues
25   with that inspection – such as the fact that the computer presented for inspection did not have
     System Suite on it, Plaintiff's counsel claimed the computer presented for inspection in Chicago
26   was not, in fact the computer on which Worley allegedly installed System Suite, and that Worley
     had lost that computer.  Avanquest expended time, money, and resources to defend against
27   Worley's claims, which added to the very high cost of this litigation, only to have those claims
     recently dismissed. (Strickland Decl., ¶¶ 6; 16-17.)
28

     3:12-CV-04391-WHO                                                          MPA ISO AVANQUEST'S
     RC1/7604177.7/KNS                          - 7 -                            MOTION TO DISMISS

claim based on Fix-It either on behalf of himself or any putative class. Therefore, Avanquest moves this Court to dismiss Boyd's complaint pursuant to Rule 12 (b)(1) and 12(h)(3) for lack of subject matter jurisdiction in that a plaintiff without standing has no "case or controversy" to prosecute. In the alternative and at a minimum, consistent with due process and fairness, the Court should compel Boyd to either produce to the Court within 10 days credible evidence that Fix-It is on his computer or suffer dismissal.

## III. DISCUSSION

### A. A Court Lacks Subject Matter Jurisdiction if the Plaintiff Lacks Standing

It is well settled law that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case. This is because in the absence of standing, there is no "case or controversy" between the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article III of the constitution. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Because standing is an element of the constitutional requirement of a "case or controversy," objections to standing are never waived. *See, In re Weaver*, 632 F.2d 461, 463 n.6 (5th Cir. 1980); *Roe v. City of New Orleans*, 766 F. Supp. 1443, 1450 (E.D. La. 1991) (defendants could challenge plaintiffs' standing irrespective of their admission of class-action allegations in first-amended complaint; standing concerned federal subject matter jurisdiction and objections to subject matter jurisdiction are not subject to waiver).

As stated above, the key question with regard to standing is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant federal court jurisdiction. *Baker, supra*, 369 U.S. at 204. Standing is composed of three elements: (1) the plaintiff must have suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *United States v. Hays*, 515 U.S. 737, 743 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

/ / /

/ / /

**B.    A Court May Consider Matters Outside of the Pleadings when Subject Matter Jurisdiction is at Issue**

A court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) *the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.*" *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (emphasis added).

Notably, when a Rule 12(b)(1) motion "mounts a factual attack on jurisdiction, 'no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.'" *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). "'In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.' [citation omitted]." *AMEC Env't & Infrastructure, Inc. v. Spectrum Servs. Grp., Inc.*, 13-CV-04059-WHO, 2013 WL 6405811 (N.D. Cal. Dec. 6, 2013).  "This 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." *Mortensen, supra*, 549 F.2d at 891-892.

In another case from the District Court for the Northern District of California, Judge Alsup also held that dismissal under Rule 12(b)(1) "is appropriate when a court lacks subject-matter jurisdiction" and that because "[j]urisdiction is a threshold issue . . . a court is free to examine evidence beyond the allegations in the complaint, as well as weigh the extrinsic evidence." *Allen v. United States*, 871 F. Supp. 2d 982, 987 (N.D. Cal. 2012).  Judge Alsup agreed that "[t]he party invoking the jurisdiction at issue has the burden of proof." (*Id.*)

Based on the above authorities, it is clear that the Court has the ability to consider, and should consider, extrinsic evidence – such as the results of the examination of Boyd's two computer hard drives and one forensic hard drive image– in ruling on this Motion to Dismiss.

///

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

C.     <u>Boyd Lacks Standing to Assert a Claim Based on Avanquest's Fix-It</u>

      1.     **Boyd Has Not Suffered an Injury in Fact**

Boyd does not have standing because he has suffered no injury in fact. In short, Boyd's computer hard drive shows there is no evidence that Boyd installed or ran the Fix-It software on his computer, and therefore he cannot possibly have a claim for alleged deficiencies relating to the manner in which the software operates. Significantly, in *Matte v. Sunshine Mobile Homes, Inc.*, 270 F.Supp.2d 805 (W.D. La. 2003), affidavits and briefing showed that none of the named plaintiffs purchased the product, therein the home manufactured by defendants. "Fleetwood's records show that none of the named plaintiffs own a home manufactured by Fleetwood. Accordingly, the named plaintiffs do not have standing to assert any claim, either individual or representative, against Fleetwood." *Matte, supra*, 270 F.Supp.2d at 814-15. The *Matte* Court dismissed virtually all of the plaintiffs' putative class action claims without prejudice because plaintiffs failed to establish standing, and thus the Court lacked subject matter jurisdiction. (*Id.* at 810, 813.)

In *McGrath v. Home Depot USA, Inc.*, 298 F.R.D. 601, 610 (S.D. CA 2014), the District Court noted the "[s]tanding doctrine . . . requires that a plaintiff assert his own legal rights and interests *rather than the rights of* [sic] *interest of third parties*, [citation omitted], [and] that federal courts refrain from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances'". . . . (*Id.* at 610 (emphasis added) (citing *Warth, supra*, 422 U.S. 490)). In *McGrath*, the Court held that the plaintiff lacked Article III standing because his claims of injury were speculative in that he asserted he could be injured at some future time, and granted the defendants' motion to dismiss.

Similarly here, Boyd's claims of injury allegedly caused by Fix-It cannot establish standing because the undeniable evidence produced by Boyd himself shows Fix-It is not installed on his computer. In essence, Boyd is akin to both the plaintiffs in *Matte*, who never purchased the products at issue, and the plaintiff in *McGrath*, who claimed the possibility of injury in the future and purported to represent the interests of those who allegedly had been injured. Because Boyd has suffered no injury in fact, he lacks standing to assert a claim based on Fix-It, and

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   certainly lacks standing to represent a class of persons who have allegedly suffered injury from

2   Fix-It. The "[s]tanding doctrine . . . requires that a plaintiff assert his own legal rights and

3   interests rather than the rights of [*sic*] interest of third parties." *McGrath, supra*, 298 F.R.D. at

4   610. Accordingly, this action should be dismissed.

5          **2.      There Can be No Causal Connection between Any Alleged Injury to
                      Boyd and Avanquest's Conduct**
6

7          For purposes of standing, in order to show a causal connection between a claimed injury

8   and the defendant's conduct, the injury must be "traceable" to the defendant's acts or omissions.

9   *Lujan, supra*, 504 US at 559–60. Here, Boyd's inability to show that he has suffered an injury in

10  fact is fatal to any showing he might make on this element of standing. It is axiomatic that there

11  can be no causal connection between Avanquest's alleged conduct and a non-existent injury, and

12  certainly no way to trace a non-existent injury to a defendant's alleged conduct.

13         **3.      No Decision in this Action Can Redress Any Alleged Injury to Boyd**

14         Any reading of the FAC clearly reveals Boyd's (or more accurately his counsel's) alleged

15  dissatisfaction with Avanquest's Fix-It. However, no favorable outcome in this action could ever

16  redress Boyd's non-existent injury. This is because the relief must redress the "injury in fact"

17  *suffered by the plaintiff. See, Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107

18  (1998). It is not enough that a favorable judgment will benefit the public at large or punish a

19  wrongdoer or simply make plaintiff happy, because psychic satisfaction is not enough for Article

20  III standing. "[A]lthough a [plaintiff] may derive great comfort and joy from the fact. . . that [an

21  alleged] wrongdoer gets his just deserts, or that . . . laws are faithfully enforced, that psychic

22  satisfaction is not an acceptable Article III remedy because it does not redress a cognizable

23  Article III injury." (*Id.*) Accordingly, there is no possible way Boyd can satisfy this third

24  element of standing, and his claims must be dismissed.

25         **D.     Plaintiff Has No Standing to Act as a Class Representative.**

26         As numerous other courts have stated that, prior to certification of a class and before

27  "undertaking any formal typicality or commonality review, the district court must determine that

28  at least one named class representative has Article III standing to raise each class [claim and]

3:12-CV-04391-WHO
RC1/7604177.7/KNS
- 11 -
MPA ISO AVANQUEST'S
MOTION TO DISMISS

1  subclaim." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); see *also*,

2  *In Re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 750 (7th Cir. 2011) (stating that

3  "[b]efore addressing the question of certification, we must consider [defendant's] argument that

4  there is no case or controversy because plaintiffs lack standing to sue"). This is because

5  "[w]ithout individual standing to raise a legal claim, a named representative [in a class action]

6  does not have the requisite typicality to raise the claim on behalf of a class." (*Id.*) In performing

7  this analysis of a putative class representative's standing, "'each claim must be analyzed

8  separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff

9  has suffered the injury that gives rise to that claim.'" (*Id.* (quoting *Griffin v. Dugger,* 823 F.2d

10  1476, 1483 (11th Cir. 1987)).

11      In the instant action, Boyd does not have standing to raise a claim regarding Fix-It on his

12  own behalf because he has not suffered an injury in fact, which in turn deprives the Court of

13  subject matter jurisdiction because there is no case or controversy between himself and

14  Avanquest.  A necessary consequence of this fact is that, under *Prado–Steiman*, Boyd also "does

15  not have the requisite typicality to raise the claim on behalf of a class." (*Id.* at 1279.)  His claims,

16  and those of the putative class he seeks to represent, should therefore be dismissed.

17  **IV.   CONCLUSION**

18      For the foregoing reasons, Avanquest respectfully submits that Boyd's action should be

19  dismissed for his failure to satisfy the standing requirements of Article III, which deprives this

20  Court of subject matter jurisdiction because there is no "case or controversy" between the parties.

21  *Warth, supra*, 422 U.S. at 498–499.  In the alternative and at a minimum, should the Court not be

22  inclined to dismiss this action outright, Avanquest requests the Court issue an order requiring

23  Boyd to make, within 10 days, a prima facie showing that Fix-It is on his computer or suffer

24  dismissal.

25  / / /

26  / / /

27  / / /

28  / / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    Dated:  August 29, 2014                      ROPERS, MAJESKI, KOHN & BENTLEY

2

3                                           By: /s/ N. Kathleen Strickland

4                                               KATHLEEN N. STRICKLAND
                                                DEVIN C. COURTEAU
5                                               JUSTIN A. ZUCKER
                                                Attorneys for Defendant
6                                               AVANQUEST NORTH AMERICA INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

3:12-CV-04391-WHO
RC1/7604177.7/KNS                              - 13 -          MPA ISO AVANQUEST'S
                                                               MOTION TO DISMISS