N. KATHLEEN STRICKLAND (SBN 64816)
DEVIN C. COURTEAU (SBN 197505)
JUSTIN A. ZUCKER (SBN 284401)
ROPERS, MAJESKI, KOHN & BENTLEY
150 Spear Street, Suite 850
San Francisco, CA 94105
Telephone:   (415) 543-4800
Facsimile:   (415) 972-6301
Email:       kstrickland@rmkb.com
             dcourteau@rmkb.com
             jzucker@rmkb.com

Attorneys for Defendant
AVANQUEST NORTH AMERICA INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BENSON WORLEY and JOHNNY BOYD, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVANQUEST NORTH AMERICA INC., a California corporation,<br><br>Defendant. | CASE NO.   3:12-CV-04391-WHO<br><br>**DECLARATION OF N. KATHLEEN STRICKLAND IN SUPPORT OF DEFENDANT AVANQUEST NORTH AMERICA INC.'S MOTION FOR PROTECTIVE ORDER AND MOTION TO DISMISS**<br><br>Motion to Dismiss:<br>Date:        October 8, 2014<br>Time:        2:00 p.m.<br>Judge:       Hon. William H. Orrick<br>Courtroom:   2 (17th Floor)<br><br>Motion for Protective Order:<br>Date:        October 16, 2014<br>Time:        9:30 a.m.<br>Judge:       Hon. Laurel Beeler<br>Courtroom:   C (15th Floor)<br><br>Action Filed: August 21, 2012 |

I, N. Kathleen Strickland, hereby declare as follows:

1.  I am an attorney at law licensed to practice before the federal and state courts within the State of California, and am a Partner of the law firm of Ropers, Majeski, Kohn & Bentley ("Ropers"). I am lead counsel for Avanquest North America Inc. ("Avanquest") on

1 whose behalf I make this declaration. If called as a witness, I would competently testify to the
2 following facts, all of which are within my own personal knowledge, except for those matters
3 stated on information and belief, and as to those matters I believe them to be true.

4     2. I personally drafted a Joint Discovery Dispute letter with Plaintiffs' counsel and
5 attended the hearing pertaining to said discovery dispute during which I argued the importance to
6 Avanquest's defense of inspecting Plaintiffs' computers. Judge Beeler ordered Plaintiffs' counsel
7 to produce to Avanquest a forensic mirror image copy of Plaintiffs' hard drives from their
8 respective computers. Plaintiffs' counsel did so, through their consultant, the Sylint Group. The
9 hard drives were sent to me on January 31, 2014, and arrived in my office on February 4, 2014,
10 ("Sylint Hard Drives"), along with an Evidence Log identifying the Chain of Custody for the
11 respective hard drives. A true and correct copy of the letter enclosing the Sylint Hard Drives,
12 corresponding Evidence Logs tracing their history, and FedEx shipping tracking receipt are
13 attached hereto as **Exhibit "1"** to this declaration and incorporated herein by reference.

14     3. On or about February 14, 2014, I retained Dr. Srinivasan Jagannathan as my
15 consultant/expert to assist me in analyzing the Plaintiffs' computers and forensic computer
16 evidence in this case.

17     4. On October 23, 2013, my office served notices of inspection of Worley and
18 Boyd's computer to which Plaintiffs' objected. Later on March 17, 2014, I served Plaintiffs'
19 counsel with a meet and confer letter requesting, among other things, the inspection of Plaintiffs'
20 computers at issue. Thereafter, on March 26, 2014, my office served re-notices of inspection of
21 Worley and Boyd's computer at issue. A true and exact copy of the notices of inspection of
22 Plaintiffs' computers, March 17, 2014, meet and confer letter, and the re-notices of inspection
23 Plaintiffs' computers are attached hereto as **Exhibit "2".**

24     5. I worked with Plaintiffs' counsel starting in March 2014 to arrange for our
25 inspection of Boyd's and Worley's computers. That inspection was planned in advance and was
26 to occur at Plaintiffs' counsels' offices in Chicago, Illinois.

27     6. On April 16, 2014, I traveled with Dr. Srinivasan Jagannathan and Dr. Adam
28 Sorini, also from Exponent and who works with Dr. Jagannathan, from San Francisco to

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  Plaintiffs' counsels' office in Chicago, Illinois to inspect what had been represented to be
2  Plaintiffs' respective computers on which the software at issue was allegedly installed
3  ("Inspection").  During the Inspection, Dr. Jagannathan made mirror image copies of the hard
4  drives found within the computers presented for inspection ("Chicago Hard Drives"), and
5  inspected the hardware of both computers.  Boyd's computer had his name on his computer;
6  additionally, pieces of paper were placed in front of each computer, one labeled Boyd and the
7  other labeled Worley.  The inspection lasted all day, until a little after 5:00 p.m.  I was present the
8  entire day, and personally observed the inspection and took my own photographs.  We returned to
9  San Francisco that evening.

10        7.     At no time did I personally observe Avanquest's Fix-It Utilities Professional 12
11  software ("Fix-It") present on Boyd's computer/hard drive.  In fact, I observed the absence of
12  Fix-It on his computer.

13        8.     The following day, upon my return to my office, on April 18, 2014, I transferred to
14  Dr. Jagannathan the forensic hard drive images from Sylint ("Sylint Hard Drives"), which had
15  arrived on February 4, 2014, and which I had personally kept secure and in my custody until that
16  day. He signed the Chain of Custody log for those hard drives, a copy of which is attached hereto
17  as Exh. 1.

18        9.     Nearly a month after the Inspection, on or about May 13, 2014, I spoke with
19  Plaintiffs' counsel Mr. Balabanian and Mr. Richman.  Mr. Justin Zucker from my office was also
20  present.  Mr. Balabanian advised that the computers represented as Worley and Boyd's computers
21  which were inspected at their offices in Chicago were not in fact the Plaintiffs' actual computers
22  at issue on which they installed the respective software.  He stated that they were mistaken about
23  the computers sent for the inspection.  He stated that Boyd had sent them the wrong computer,
24  that it had never been operational, that their office did not check it, and that now they have the
25  correct computer in their possession.  He offered to send it to me.  He continued that Boyd sent
26  them his computer a week after the April 17, 2014 inspection, which they received it on or about
27  April 24, 2014.

28        10.    In that conversation, Mr. Balabanian further stated that the hard drive image on the

3:12-CV-04391-WHO
RC1/7577263.5/JZ4
- 3 -
STRICKLAND DECLARATION ISO MOTION TO
DISMISS AND MOTION FOR PROTECTIVE ORDER

1  computer would match up to the Sylint Hard Drives. In discussing the Sylint Hard Drive for
2  Boyd, he stated that Sylint imaged the hard drive and sent the hard drive back to Boyd. He
3  further stated that, "you have that actual hard drive, have a copy of the imaged hard drive." Mr.
4  Balabanian stated that he would ship Boyd's computer to me at my office in San Francisco for
5  inspection. A small discussion occurred about both clients having multiple computers.

6      11. On August 20, 2014, I received at my office in San Francisco a computer sent to
7  me from Plaintiffs' counsel, which had previously been represented to me to be Boyd's computer.
8  Dr. Jagannathan, in my presence along with Dr. Sorini, inspected Boyd's computer. The
9  inspection lasted a day, and on August 21, 2014, after the inspection was completed, the computer
10  was federal expressed back to Plaintiffs' counsel in Chicago, arriving at 1:03 p.m. on August 22,
11  2014.

12      12. During the inspection, the same procedure was used as in the Chicago inspection.
13  The box was opened, the computer was taken out, a physical inspection of the computer first
14  occurred, followed by opening up the computer, another physical inspection of same, photographs
15  were taken of each step, and the hard drive was removed. The hard drive was then forensically
16  copied, and an inspection of the copy of the hard drive was thereafter made.

17      13. Again, in looking at the forensic image copy of the hard drive on August 21, 2014,
18  there was no Fix-It on Mr. Boyd's hard drive/computer. It did not appear under Program files,
19  Doc and Setting files, or any place on the hard drive/computer. It was just not there.

20      14. During the inspection, Dr. Jagannathan mentioned that the hard drive removed
21  from Boyd's computer initially appeared to be a duplicate of the Sylint Hard Drive for Boyd,
22  which he had already inspected. That forensically, the bits on both drives were identical. Dr.
23  Jagannathan was able to independently confirm what Mr. Balabanian had previously told me on
24  the telephone that the hard drive in Boyd's computer which I would receive would match the
25  Boyd Sylint Hard Drive image.

26      15. Because Fix-It is not on Boyd's hard drive/computer, I feel compelled to bring this
27  motion for a protective order to stay all discovery until the Court rules upon Avanquest's motion
28  to dismiss this action for lack of subject matter jurisdiction because Boyd lacks standing. We

have met and conferred with Plaintiffs' counsel regarding the filing of both motions. We advised them of the substance of both motions as well as of the results of our inspection of Boyd's computer, that Fix-It is not on Boyd's computer.

16. In terms of discovery, over 31 gigabytes of information, totaling 50,625 data files at a cost of $56,679.82, has been turned over to Plaintiff's counsel at great expense to Avanquest. Plaintiff's counsel has requested deposition dates in September, 2014 for Tom Herring, Kevin Bromber, and Avanquest's Rule 30(b)(6) witness (I informed Plaintiff's counsel that Kevin Bromber would be our Rule (30)(b)(6) witness.) We were in the process of checking dates when Boyd's computer arrived for our inspection. Now that it has been forensically determined that Fix-It is just not on Boyd's hard drive, proceeding with any depositions is futile because Boyd lacks standing to pursue this case any longer and the Court lacks subject matter jurisdiction.

17. I received on August 18, 2014 a letter from Plaintiff's counsel in which he offered to dismiss Plaintiff Benson Worley in exchange for a mutual waiver of fees and costs. This dismissal was for Mr. Worley's claims as well as dismissal of the class of claims related to the System Suite line of products. Earlier, in a letter from Plaintiff's counsel dated August 12, 2014, it was mentioned that Mr. Worley did not intend to pursue this matter, and Plaintiff's counsel would be requesting a stipulated dismissal for his claims.

18. Subsequent thereto, a stipulation for voluntary dismissal of claims related to System Suite Software pursuant to FRCP 41 was filed by Benson Worley and Johnny Boyd on August 25, 2014, Docket No. 143. We have prepared a motion for protective order to stay all discovery until the Court rules on our jointly filed Motion to Dismiss. All depositions which we had requested prior to the August 21, 2014, inspection of Boyd's computer we will put on hold until the Court determines these two motions. We are making these motions as soon as possible after the August 21, 2014, inspection. We request the court to put on hold all depositions which Plaintiff had requested, until after the Court decides these two pending motions. We do not see a reason to continue in endless discovery if at the end of that discovery, it will not change the dispositive fact that Fix-It is not on Boyd's computer/hard drive.

19. Avanquest has spent over two years and significant sums of money defending this

1  lawsuit. The initial lead plaintiff, Benson Worley, who was to represent a class of System Suite
2  purchasers, was dismissed with prejudice last week, and the System Suite claims are also now
3  dismissed. We have produced over 31 gigabytes of data files to Plaintiff's counsel incurring
4  substantial vendor and attorneys' fees in so doing. There is one Plaintiff left in the case, Boyd,
5  representing one product, Fix-It. If the product is not on his hard drive/computer, and multiple
6  inspections confirm that fact, the case should be dismissed.

7      I declare under penalty of perjury under the laws of the State of California that the
8  forgoing is true and correct.

9      Executed on August 29, 2014, at San Francisco, California.

By:  /s/ N. Kathleen Strickland
N. Kathleen Strickland