Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Chandler R. Givens (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

*Attorneys for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHNNY BOYD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>AVANQUEST NORTH AMERICA INC., a California corporation,<br><br>*Defendant.* | Case No. 3:12-cv-04391-SI<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;**<br>2. **Fraudulent Inducement;**<br>3. **Breach of Contract; and**<br>4. **Breach of the Implied Covenant of Good Faith and Fair Dealing.**<br><br>Judge: Honorable William H. Orrick<br>Action Filed: August 21, 2012 |

Plaintiff Johnny Boyd ("Boyd" or "Plaintiff") brings this Second Amended Class Action Complaint ("Complaint") against Defendant Avanquest North America Inc. ("Avanquest" or "Defendant") for its practice of defrauding consumers through the deceptive design and sale of its software products. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.       Avanquest is a multi-national developer of software products that it claims will increase the speed, performance, and stability of a consumer's personal computer ("PC"), protect against privacy risks, remove harmful errors, and improve Internet speeds. Unfortunately for consumers, however, Avanquest's methods of inducing consumers to purchase and continue to use its software, as well as the products' programmatic design, are highly deceptive.

2.       Through a common deceptive scheme, Avanquest uniformly defrauds consumers into purchasing and continuing to use the product at issue in this lawsuit—SystemSuite PC Tune-Up & Repair ("System Suite") (together with Fix-It Utilities Professional ("Fix-It Utilities"), the "Scareware").

3.       The Scareware is available for purchase online through Avanquest's websites, third-party resellers, and in packaged form at brick-and-mortar stores such as Best Buy and Office Depot. Through the marketing materials contained on its websites, as well as the software's packaging itself, Avanquest represents that the Scareware will detect and repair a wide range of PC errors, privacy threats, viruses, and other computer problems. Avanquest also promises that the Scareware will increase system startup speeds, optimize a user's PC performance, and remove security risks.

4.       In reality, Avanquest's descriptions of the Scareware's utility serve as the initial phase of a fraudulent scheme to induce consumers into purchasing its products, and then to convince them into paying ongoing subscription fees to continue using the software.

5.       Although its software is technologically complex, the paradigm used by Avanquest

to defraud consumers is simple. First, Avanquest describes its Scareware as software that will restore a PC's functionality by removing harmful errors and privacy threats and increasing Internet speeds. Induced by these representations, the consumer then purchases the Scareware. After installing and running the Scareware, the consumer is encouraged to conduct a "diagnostic scan" to assess the condition of his or her PC.

6.     The Scareware then invariably reports, in ominous fashion, that harmful problems are lowering the PC's condition. Thereafter, the user is offered the ability to "fix" the PC by removing the errors reported by the Scareware. However, as explained more fully herein, the Scareware's diagnostics procedures do not perform any credible evaluation of consumers' PCs. Instead, Avanquest intentionally designed the Scareware to invariably report that a user's PC needs repair and is afflicted with harmful errors, privacy risks, and other problems—regardless of the computer's actual condition. The average consumer logically assumes that errors detected through this "diagnostic scan" correspond to the harmful problems identified by Avanquest's marketing materials.

7.     The process described above is repeated each time a user runs the Scareware. Also of significance is that the Scareware is offered on a yearly subscription basis. As such, the average consumer (unaware of its deceptive nature) is convinced that the Scareware is detecting, reporting, and repairing actual errors harming their PC's performance. Thus, because the Scareware was designed to invariably "detect" harmful errors, the consumer is fraudulently induced into continuing to renew his or her subscription (or not to seek a refund).

8.     Avanquest holds itself out as a reputable leader in the "utility software" industry—i.e., software that enhances and/or repairs a PC's functionality. Because average consumers lack the requisite technical expertise to understand the underlying operations of Avanquest's software, they trust the company to convey truthful information about its products, and for its products to honestly and accurately identify and remove harmful errors from their PCs. Avanquest betrayed that trust, and as a result, thousands of consumers have been, and continue to be, tricked into paying for its

1  unlawful Scareware.

2  **PARTIES**

3       9.     Plaintiff Johnny Boyd is a natural person and citizen of the State of Georgia.

4       10.    Defendant Avanquest North America Inc. is a corporation incorporated in and

5  existing under the laws of the State of California, with its headquarters and principal place of

6  business located at 7031 Koll Center Parkway, Suite 150, Pleasanton, California 94566. Avanquest

7  conducts business throughout the State of California and the United States.

8  **JURISDICTION AND VENUE**

9       11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

10  because (a) at least one Class member is a citizen of a different state than Defendant, (b) the amount

11  in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions

12  under that subsection apply to this action.

13       12.    This Court has personal jurisdiction over Avanquest because it conducts business in

14  California and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or

15  emanated from California.

16       13.    More specifically, Avanquest's relevant operations, including its headquarters and

17  primary sales and marketing operations are located in California. Vital employees, such as

18  Avanquest's Director of Online Marketing, Vice President of Strategic Sales and Marketing,

19  Director of Business Development, and Vice President of eCommerce and Direct Marketing are all

20  located in California. Thus, Avanquest's decisions regarding the programmatic design of the

21  software, as well as the representations made about the Scareware's utility, emanated from

22  California.

23       14.    Venue is proper in this District because the improper conduct alleged in this

24  Complaint occurred in, was directed to, and/or emanated from this District.

25

26

27

28

**INTRADISTRICT ASSIGNMENT**

15.     Pursuant to Civil Local Rule 3-2(d), this case has been assigned to the San Francisco Division.

**FACTUAL BACKGROUND**

**I.     A Brief Overview of Avanquest.**

16.     Founded in 1984 as French company BVRP Software, Avanquest[1] has today become a global leader in the PC utility software industry. Avanquest boasts that it is one of the "ten leading consumer software developers" in the world,[2] and asserts that its mission is to design software to "provide a more secure and enjoyable experience to people looking for easy and affordable software solutions in everyday life."[3]

17.     According to Avanquest, Fix-It Utilities and System Suite are its "#1 selling disk utility" and "Anti-virus/Anti-spyware" products. Avanquest claims that these software products offer a "complete package" that "make it easy to diagnose and fix your computer."

**II.     SystemSuite PC Tune-Up & Repair and Fix-It Utilities Professional are Substantially the Same Product.**

18.     While different in name, each Scareware product is substantially similar in functionality and design; so much so that Avanquest's marketing describes both Fix-it Utilities and System Suite as providing the same features and even created a single instruction manual for the two. *See* Figures 1-2 on the following page (showing screenshots of an Avanquest advertisement marketing the two products as having the same functionality, and the 'User Guide' included with purchase of the products).

---

[1]     In 1996, Defendant formed BVRP USA, which was later renamed Avanquest North America Inc.

[2]     Corporate Profile, http://www.avanquest.com/USA/corporate/company/history.html (last visited February 22, 2013).

[3]     Mission and Values, http://www.avanquest.com/USA/corporate/company/mission_and_values.html (last visited February 22, 2013).



(Figure 1.)

(Figure 2.)

19.     Additionally, a side-by-side comparison of the user interfaces from Fix-It Utilities and SystemSuite confirms that—aside from product name—the two appear virtually identical. *See* Figure 3 (showing screenshots of Fix-It Utilities' and SystemSuite's initial graphical user interfaces).



(Figure 3.)

**III.    Avanquest Tricks Consumers into Purchasing its Scareware Through a Common Deceptive Scheme.**

20.     A consumer searching the World Wide Web for software to repair a damaged computer, protect against privacy threats, or generally increase the speed or performance of a PC will likely encounter advertisements for Avanquest's Scareware. Clicking on the advertisement re-directs the individual to Avanquest's website, which contains representations about the Scareware's utility.

21.     For example, a consumer viewing Avanquest's website is presented with the following descriptions about the Scareware's functional capabilities:

- "Fix, Speed Up & Maintain Your PC";
- "One-Step PC Tool Wizards Make It Easy To Diagnose & Fix Your Computer";
- "40+ PC Tune Up Tools Scan, Identify & Fix PC Problems"; and
- "One-Click uncovers problems, helps you fix them & returns your PC to peak performance."

22.     These same representations are also found on the Scareware's physical packaging. In particular, the above assertions are strategically located on both sides of the products' boxes, such that consumers contemplating purchase can first read about their purported functionalities.

23.     Through these marketing materials, Avanquest also presents the consumer with representations designed to frighten them into believing that their computer is at serious risk. For instance, Avanquest warns that:

- "The PC errors, crashes and freezes you're experiencing are generally caused by faulty settings, broken registry settings and hard drive problems, which unfortunately, come with regular PC use"; and
- "Every day you work, play or browse on your computer, useless junk builds up clutter on your hard drive. Unfortunately, clutter causes damaging disk and system problems and ultimately can create dangerous privacy problems."

24.     Regardless of where the consumer encounters these statements, Avanquest

1    encourages the consumer to download or purchase the products to protect their computers.

2         **A.      Avanquest uniformly misrepresents the utility of its Scareware.**

3         25.    On its websites, as well as on the Scareware products' packaging (as indicated

4    above), Avanquest displays specific affirmations about the Scareware's functionality. Avanquest

5    generally asserts that its Scareware will improve the efficiency and performance of PCs, increase

6    system stability, repair errors, stop PC crashes and freezes, and serve as a comprehensive tool to fix

7    computer problems.

8         26.    More specifically, Avanquest represents through its website (www.avanquest.com)

9    that the System Suite and Fix-It Utilities products are designed to:

10           •     "Clean, fix and optimize the Windows Registry";

11           •     "Stop PC Crashes and Freezes";

12           •     "Repair System Errors";

13           •     "Optimize Internet speed and memory";

14           •     "[Provide] Total Virus and Spyware Protection"; and

15           •     "[Provide] Complete PC Maintenance."

16        27.    On its website, Avanquest further asserts that "with Fix-It Utilities and System

17    Suite's award-winning integrated technology[,] you'll get complete Virus Protection" that will

18    "[r]emove existing viruses, malware and spyware from your PC, plus prevent future infections

19    without sacrificing speed and performance." Avanquest also states that "Fix-it Utilities runs

20    hundreds of comprehensive diagnostic tests for you and will have your PC running like new all over

21    again."

22        28.    Likewise, on its System Suite PC Tune-Up & Repair 12 retail product packaging,

23    Avanquest asserts that the product will:

24           •     "Fix Windows Problems";

25           •     "Speed Up PC Start Time";

26           •     "[Provide] Malware, Virus, and Spyware Protection";

27

28

1          •          "[Provide] PC Diagnostics and Maintenance";

2          •          "Eliminate PC Crashes and Freezes"; and

3          •          "Clean and Repair Windows Registry."

4          29.     The same goes for Fix-It Utilities Professional 12's packaging, which claims that the

5    product:

6          •          "Keeps your PC running like new";

7          •          "Intelligently identifies system slowdowns";

8          •          "Fixes problems and speeds up Windows";

9          •          "[Provides] Real time virus and spyware protection"; and

10         •          "Stops PC Crashes and Freezes."

11         30.     But these representations do not accurately reflect the Scareware's true capabilities.

12   The truth is that, irrespective of its "anti-virus" feature,[4] System Suite and Fix-It Utilities primarily

13   perform only two main functions: they are registry cleaners and they remove superfluous

14   "temporary" files from a user's hard drive. These operations do not come close to squaring with

15   Avanquest's representations about the functionality of the Scareware. For instance, as discussed

16   more fully below, neither of these functions will remove damaging PC errors, appreciably improve

17   a computer's boot time, nor prevent the common causes of system freezes.

18         31.     Because of the impression created by Avanquest's affirmations of fact about the

19   Scareware's utility, consumers rightfully believe that Avanquest's software will detect the errors

20   and problems identified above. To validate this belief, Avanquest designed the Scareware to appear

21   as though it's performing actual analyses of consumers' PCs. This facade, however, is simply the

22   next phase of Avanquest's scheme.

23

24

25

26   [4]     Avanquest claims that its Scareware also provides "total virus protection," but Plaintiff has
     his doubts about the anti-virus feature as well. In certain instances Plaintiff's expert was able to
27   demonstrate that although the Scareware *detected* a harmful virus, it did not actually remove it.
     Despite this, the Scareware reported the virus had been deleted.

28

1

**B.**   **Avanquest falsely informs consumers that their computers need repair, without conducting any credible evaluation of the computer's condition.**

2

32.   Upon purchasing, installing, and running the Scareware for the first time, a display

3

screen is presented to the user indicating that the computer "is not optimized." *See* Figure 4

4

(showing screenshots of Fix-It Utilities' and System Suite's initial graphical user interfaces).

5



6

7

8

9

10

11

12

(Figure 4.)

13

33.   Clicking on the "Problems" section located on the Scareware's navigation bar

14

triggers a display warning the user that "[x] amount of problems are affecting your PC's health and

15

security" accompanied by an itemized list of problems that it claims are afflicting the computer, all

16

of which (upon further inspection) refer only to the users' failure to have run the Scareware on their

17

computer in the past, but not to any diagnoses of errors or problems actually existing on the

18

computer. *See* Figure 5 (showing screenshots of Fix-It Utilities' and System Suite's error reporting

19

interfaces *before* performing a diagnostic scan).

20



21

22

23

24

25

26

27

(Figure 5.)

28

34.     After warning the user that their computer is not optimized and is afflicted by serious problems, the Scareware advises the user to conduct a diagnostic scan by pressing "Analyze Now" or "One-Click Fix All."

35.     Upon completion of the diagnostic "scan," the Scareware renders an ominous graphical depiction of an alert sign showing that a number of serious "problems" exist on the computer and require fixing. *See* Figure 6 (showing screenshots of Fix-It Utilities' and System Suite's error reporting interfaces). In addition to this warning, the Scareware displays a visual representation of three cylinders, labeled "Optimization," "Security," and "Maintenance," with color spectrums ranging from red to green, along with corresponding percentages supposedly representing the results of an analysis of the computer's condition. *See id*.



(Figure 6.)

36.     While these visual and textual representations appear alarming to the user, the truth is that Avanquest designed the Scareware to report these conditions without *any* real evaluation of the computer's condition. In this way, the user believes that the Scareware is actually detecting and reporting harmful errors, presumably associated with the errors that Avanquest represented the software would remedy.

**IV.     Plaintiff's Expert Uncovers that Avanquest Designed its Scareware to Invariably Report Benign Errors as Harmful.**

37.     On the surface, it appears as if the software is actually detecting, reporting, and repairing errors that threaten the operations of a user's PC. In reality, however, Avanquest intentionally designed its Scareware to vastly overstate both the amount and severity of errors that the software purportedly fixes in an effort to convince consumers that it functions as advertised—

i.e., that it actually detects and removes credible threats and PC problems.

38. Through their attorneys, Plaintiff has engaged a computer forensics expert to examine Avanquest's Scareware.[5] The results of this investigation confirm that the software always reports that a user's PC is in poor condition—regardless of the condition or type of computer the software is installed on. For instance, the Scareware's results shown in Figure 6 above were produced after conducting a diagnostic scan on a *brand new computer.* Ostensibly these representations scare the user into believing that the PC is damaged or at risk, and that continued use of the Scareware is necessary to "fix" these problems. The facts show otherwise. Plaintiff's expert has determined that, by any stretch of the imagination, many of the errors detected *are not credible threats* to a PC's functionality.

39. In relevant part, the expert's investigation uncovered that Avanquest programmed its Scareware to (i) always identify problems on a user's computer (even when none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous items as harmful threats, and (iv) arbitrarily report that the user's "Optimization," "Security," and "Maintenance" statuses are low without using any credible metrics to assess these issues.

40. The expert's research also shows that the Scareware was deliberately designed to mischaracterize the severity of errors to shock consumers into believing that their computers are damaged. For instance, the expert confirmed that the software detected a number of innocuous and benign files that *cannot* cause damage to a computer and reported that they were negatively impacting the computer's performance.

41. Through the deceptive scheme described herein, Avanquest has profited, and continues to profit, by defrauding consumers into believing that their PCs are severely damaged and/or at risk, and that the purchase and continued use of its Scareware is necessary to "fix" these problems. But, because the software does not actually provide the benefits advertised, Avanquest

---

[5] All forensic testing described herein was performed on both the System Suite and Fix-It Utilities software. Because the functionality of the two products and the results of such tests were nearly identical, they are discussed collectively unless otherwise indicated.

1  does not deliver on its promises to its users.

2  **V.     Avanquest is Not Alone in its Fraudulent Conduct.**

3          42.     Unfortunately for consumers, Avanquest is not alone in its use of the sorts of

4  fraudulent programmatic design and marketing practices at issue in this case. Rather, the utility

5  software industry has been fraught with these tactics for over a decade. It is only recently, however,

6  that software developers—like Avanquest and its competitors—have been called to account for

7  their profiting off of consumers who are unable to identify the fraudulent technological design and

8  methodologies underlying this type of supposedly performance-enhancing software.

9          43.     Indeed, numerous lawsuits have been filed against well-known competitors of

10  Avanquest (e.g., Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel

11  here—alleging similar claims related to the fraudulent design and marketing of so-called utility

12  software products. Several of those cases have resulted in classwide settlements and industry-

13  changing modifications to the software products at issue—making their detection, reporting and

14  repairing mechanisms far more transparent and more accurate when it comes to informing

15  consumers of the threats posed by existing errors on their computers—and still others are being

16  actively litigated. Rather than make the necessary changes to its software so that it *actually* detects,

17  reports and repairs harmful errors and problems on users' PCs, Avanquest continues to profit

18  through its fraudulent conduct.

19  **VI.    Plaintiff Boyd's Experience.**

20          44.     In or around January 2012, Plaintiff Johnny Boyd began to experience problems with

21  his computer. Specifically, his computer's overall and Internet speeds drastically decreased, he

22  began to receive numerous error messages on his computer screen, and the computer would often

23  freeze.

24          45.     Accordingly, Boyd visited a local office supply store to search for software that

25  would remedy his computer problems. At the store, Boyd encountered Avanquest's System Suite

26  PC Tune-Up & Repair 12 software, and viewed Avanquest's representations about the software's

27

28

utility located on its packaging materials, such as those described above, including its assertion that the product will "Identif[y] & fix[] Windows slowdowns" and "Stop[] PC Crashes and Freezes."

46.     Relying upon the packaging's representations, Boyd purchased Avanquest's System Suite PC Tune-Up & Repair 12 for $39.99. Boyd purchased System Suite 12 under the belief—created by Avanquest's misrepresentations—that the software would accurately scan his computer for issues and prevent his computer from continuing to malfunction as it had been.

47.     Upon running System Suite 12 for the first time, the software reported that the "Security," "Maintenance," and "Optimization" statuses of his computer were poor and displayed graphical representations reflecting the same. Because Avanquest designed its software to *always* report these statuses, Boyd was misled into believing that his computer was riddled with errors that were causing it to malfunction—as no actual assessment of the computer occurred.

48.     Contrary to Avanquest's representations, the System Suite 12 software purchased by Boyd did not perform any of the beneficial functions as described on its packaging. In fact, far from repairing his computer, immediately after running the software and attempting to fix the so-called errors that it detected, Boyd's computer froze—forcing him to perform a hard-reset. When Boyd attempted to restart the computer he was presented with a system notification informing him that his computer was afflicted with a variety of system errors—all of which prohibited him from turning on his computer. Since then, Boyd's computer has remained inoperative. Boyd reasonably relied upon Avanquest's representations about System Suite 12, in that he believed the software would actually perform the operations described above and restore his computer's functionality. But for these representations, Boyd would not have purchased the software.

## CLASS ALLEGATIONS

49.     **Class Definition**: Plaintiff Boyd brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

All individuals and entities in the United States that have purchased System Suite PC Tune-Up & Repair.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

50.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, Avanquest has sold its software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through Avanquest's records.

51.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Avanquest's uniform wrongful conduct during transactions with Plaintiff and the Class.

52.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Avanquest has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

53.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members:

>    a)     whether Defendant intentionally designed the System Suite software to invariably report that harmful errors and threats exist on a user's computer, regardless of the computer's actual condition;

b)   whether Defendant intentionally misrepresented the functionality of the System Suite software;

c)   whether Defendant's conduct described herein constitutes violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

d)   whether Defendant's conduct described herein constitutes fraudulent inducement;

e)   whether Defendant's conduct described herein constitutes a breach of contract; and

f)   whether Defendant's conduct described herein constitutes a breach of the implied covenant of good faith and fair dealing.

54.   **Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Avanquest's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Avanquest's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

55.   **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Avanquest has acted or refused to act on grounds generally applicable to the

Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Avanquest's policies challenged herein apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Avanquest's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Avanquest has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.

56.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

## FIRST CAUSE OF ACTION
### Violations of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff and the Class)

57.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58.    California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

59.    The UCL prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.

60.    The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

61.    Likewise, the price of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a product is materially misleading.

62.    As described herein, Avanquest engaged in fraudulent and unfair business practices

as defined by the UCL by, *inter alia*: (i) misrepresenting System Suite's utility, including through assertions such as those depicted in Figure 1 and as described above; (ii) misrepresenting the results of the diagnostic scans (i.e., the overall condition of users' computers) through in-software representations; (iii) using the misrepresentations to induce consumers into continuing to use System Suite; and (iv) selling software that lacks the advertised utility, similarly produced false error reports, and was otherwise incapable of functioning as Avanquest represented it would.

63.     Specifically, Avanquest affirmatively represented to Plaintiff that System Suite would honestly and accurately scan his PC for harmful problems, increase his PC's speed and stability, increase the speed of his Internet connection, and protect his PC from harmful programs. Further, through the System Suite software itself, Avanquest affirmatively represented that Plaintiff's PC system status was low and that harmful errors existed on his PC.

64.     The above affirmative representations, as well as the results of the "diagnostic scan" provided by the software were, in fact, false. System Suite did not perform an actual evaluation of Plaintiff's computer or any problems existing on it and did not function as Avanquest described.

65.     Avanquest violated the UCL's "fraudulent" prong by intentionally designing System Suite to report fake errors and misrepresent the system status of consumers' computers, with the intent to defraud consumers into purchasing and continuing to use the System Suite software. A reasonable consumer was likely to rely, as Plaintiff and the Class did, on Avanquest's misrepresentations regarding the benefits offered by System Suite. Moreover, Avanquest's misrepresentations were likely to deceive reasonable consumers, and, in fact, did deceive Plaintiff and the Class into purchasing and continuing to use the System Suite software that lacked the advertised utility.

66.     Avanquest has also violated the UCL's "unfair" prong by causing substantial injury to consumers through the conduct alleged above. The injuries caused by Avanquest's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and could not reasonably have been known by consumers. Given the information asymmetry between

1  Avanquest and consumers regarding System Suite's functionality, Plaintiff and the Class could not

2  reasonably have known of the falsity of Avanquest's representations or avoided the harm they

3  caused.

4         67.    Avanquest's fraudulent and unfair conduct occurred during the marketing and sale of

5  computer software products, and therefore occurred in the course of Avanquest's business practices.

6         68.    This conduct occurred out of and emanated from Defendant's Avanquest's offices

7  and headquarters located in California.

8         69.    Avanquest's fraudulent and unfair conduct directly and proximately caused Plaintiff

9  and the Class actual monetary damages in the form of the price paid (or a portion thereof) for the

10  System Suite software.

11         70.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring

12  Avanquest to cease the unfair and fraudulent practices described herein; (2) awarding Plaintiff and

13  the Class all appropriate damages; and (3) awarding reasonable costs and attorneys' fees pursuant to

14  Cal. Code Civ. Proc. § 1021.5.

15  **SECOND CAUSE OF ACTION**
**Fraudulent Inducement**
16  **(On Behalf of Plaintiff and the Class)**

17         71.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

18  herein.

19         72.    As depicted with particularity in the Figures above, and as described throughout all

20  Counts of this Complaint, Avanquest has used, and continues to use, marketing tactics it knows or

21  reasonably should know are false and misleading.

22         73.    To induce Plaintiff into purchasing and continuing to use the System Suite software,

23  Avanquest affirmatively represented to Plaintiff that the System Suite software provided a certain

24  level of utility. Specifically, Avanquest represented that the System Suite software would honestly

25  and accurately scan his PC for harmful problems, increase his PC's speed and stability, increase the

26  speed of his Internet connection, protect his computers from harmful programs, and perform

27

28

---

beneficial tasks such as those depicted in Figure 1 and as described above. Further, through the System Suite software itself, Avanquest affirmatively represented that the system status of Plaintiff's PC was low and that numerous errors existed on his PC.

74.    Avanquest's affirmative representations were in fact false. In particular Avanquest's System Suite software does not increase a computer's performance and stability in the manner Avanquest described, nor does it protect the user's security as represented. Likewise, Avanquest's representations through the software itself were false; as the System Suite software was not conducting credible diagnostics of a computer's condition, it could not actually render meaningful reports regarding the PC's status.

75.    The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase and/or continue to use a product. Any deception or fraud related to the utility of a product is materially misleading.

76.    As System Suite's developer, Avanquest knew that its representations about the System Suite software's utility were false. Avanquest intentionally designed its public representations to mislead consumers about the System Suite software's utility, and programmed the System Suite software to falsely report PC errors and deceive users about their computers' system health.

77.    Avanquest made its misrepresentations specifically so as to induce Plaintiff and the Class to rely upon them by purchasing and continuing to use the software. Plaintiff and the Class did in fact rely upon these misrepresentations and purchased and continued to use System Suite to their detriment.

78.    As a consumer lacking the requisite technical expertise to independently gauge System Suite's underlying functionality, and taking Avanquest's statements at face value, Plaintiff justifiably relied upon Avanquest's misrepresentations and would not have purchased System Suite but for the misrepresentations that the software would perform the beneficial tasks advertised.

79.    By using false and fraudulent marketing tactics to misrepresent System Suite's actual

utility and inducing Plaintiff and the Class to purchase and continue to use the software based on those misrepresentations, Avanquest has engaged in fraudulent practices designed to mislead and deceive consumers.

80.    As a result of relying on Avanquest's misrepresentations, Plaintiff has been damaged in the amount of the System Suite software's purchase price, or at least a portion thereof.

81.    Plaintiff therefore prays for relief in the amount of the purchase price (or a portion thereof) of Avanquest's System Suite software. Plaintiff further alleges that Avanquest's conduct and misrepresentations were made with malice and in conscious disregard of Plaintiff's rights, thereby entitling him to punitive damages against Avanquest in an amount sufficient to deter such conduct in the future.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

82.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

83.    Plaintiff and the Class members entered into agreements with Avanquest whereby Avanquest agreed to sell, and Plaintiff and the Class agreed to purchase, software that would detect and remove legitimate computer errors from Plaintiff's and the Class's computers, and perform the beneficial tasks depicted in Figure 1 and described above.

84.    Based on the foregoing representations, Plaintiff and the Class paid, and Avanquest accepted, the System Suite software's purchase price, and therefore performed their obligations under the contracts.

85.    As such, Avanquest voluntarily assumed a contractual obligation to honestly diagnose problems on Plaintiff's and the Class's PCs and to honestly indicate whether problems exist. This obligation is a material term of the agreement. Avanquest did not honor this obligation.

86.    Avanquest also assumed an obligation to provide Plaintiff and the Class a product that would remove errors from their PCs. Avanquest did not honor this obligation.

87.     Avanquest breached its contracts with Plaintiff and the Class by failing to honestly and accurately inform them about the true condition of their computers, and further by providing software that failed to offer the benefits promised.

88.     The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Class economic injury and other damages, because they purchased a product that does not perform as Avanquest represented, and therefore lacks the promised and paid-for utility.

### FOURTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

89.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

90.     In order to benefit from Avanquest's supposed error and threat-removal software products, Plaintiff and the Class affirmatively allowed Avanquest to install the System Suite software on their computers.

91.     Avanquest's agreement to install software to diagnose and remove threats from Plaintiff's and the Class's PCs in the manner depicted in Figure 1 and as described above in exchange for fees is a valid and enforceable contract between Plaintiff and the Class on the one hand, and Avanquest on the other.

92.     Avanquest breached the provisions of the agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations.

93.     California law recognizes the implied covenant of good faith and fair dealing in every contract.

94.     Implicit in the contract were provisions prohibiting Avanquest from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the contract.

95.     Plaintiff and the Class sought to receive the bargained-for benefit of obtaining a software product that performed truthful diagnostic and remedial operations, as advertised by

1    Avanquest.

2         96.     Rather than provide the bargained-for benefit to Plaintiff and the Class, Avanquest

3    produced software that falsely represented the condition of scanned computers and failed to perform

4    its advertised functions. Avanquest's conduct frustrated Plaintiff's and the Class's rights to receive

5    the benefits of the contract by creating the illusion that the benefits were supplied (when in fact,

6    they were not), and leading Plaintiff and the Class to believe that their contracts had been fulfilled.

7         97.     Avanquest's misconduct and breach of the implied covenant of good faith and fair

8    dealing as described herein resulted in injury to Plaintiff and the Class in the form of price paid in

9    excess of the System Suite software's actual utility and/or money conferred on Avanquest by

10   Plaintiff and the Class, in exchange for fully functional software, that was knowingly and

11   wrongfully retained by Avanquest.

12                              **PRAYER FOR RELIEF**

13        WHEREFORE, Plaintiff Johnny Boyd, on behalf of himself and the Class, respectfully

14   requests that this Court enter an Order:

15        A.      Certifying this case as a class action on behalf of the Class defined above, appointing

16   Plaintiff as class representative, and appointing his counsel as class counsel;

17        B.      Declaring that Avanquest's actions, as set out above, violate California's Unfair

18   Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitute fraudulent inducement,

19   breach of contract, and breach of the implied covenant of good faith and fair dealing;

20        C.      Awarding damages, including statutory and punitive damages where applicable, to

21   Plaintiff and the Class in an amount to be determined at trial;

22        D.      Awarding injunctive and other equitable relief as is necessary to protect the interests

23   of the Class, including, *inter alia,* an order: (i) prohibiting Avanquest from engaging in the

24   wrongful and unlawful acts described herein, (ii) requiring Avanquest to disclose and admit the

25   wrongful and unlawful acts described herein, and (iii) requiring Avanquest to fully disclose the true

26   nature of its software products in the future;

27

28

1          E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys'

2     fees;

3          F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

4     allowable;

5          G.      Providing such other injunctive and/or declaratory relief as is necessary to protect

6     the interests of Plaintiff and the Class; and

7          H.      Awarding such other and further relief as the Court deems reasonable and just.

8                                    **DEMAND FOR JURY TRIAL**

9          Plaintiff demands a trial by jury for all issues so triable.

10                                      Respectfully submitted,

11                                      **JOHNNY BOYD**, individually and on behalf of all
                                        others similarly situated,
12
      Dated: October 21, 2014           By:  /s/ Benjamin H. Richman
13                                           One of Plaintiff's Attorneys

14                                      Jay Edelson (Admitted *Pro Hac Vice*)
                                        jedelson@edelson.com
15                                      Rafey S. Balabanian (Admitted *Pro Hac Vice*)
                                        rbalabanian@edelson.com
16                                      Benjamin H. Richman (Admitted *Pro Hac Vice*)
                                        brichman@edelson.com
17                                      Chandler R. Givens (Admitted *Pro Hac Vice*)
                                        cgivens@edelson.com
18                                      EDELSON PC
                                        350 North LaSalle Street, Suite 1300
19                                      Chicago, Illinois 60654
                                        Tel: 312.589.6370
20                                      Fax: 312.589.6378

21                                      Mark Eisen (SBN – 289009)
                                        meisen@edelson.com
22                                      EDELSON PC
                                        555 West Fifth Street, 31st Floor
23                                      Los Angeles, California 90013
                                        Tel: 213.533.4100
24                                      Fax: 213.947.4251

25

26

27

28