UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY BOYD,<br><br>        Plaintiff,<br><br>    v.<br><br>AVANQUEST NORTH AMERICA INC,<br><br>        Defendant. | Case No. 12-cv-04391-WHO<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 190 |

After three years of litigation, plaintiff Johnny Boyd seeks preliminary approval of a class action settlement in a suit against defendant Avanquest North America Inc. ("Avanquest"). The proposed Settlement Agreement would provide class members with a voucher for Avanquest's AutoSave Essentials software as well as prospective relief. While Avanquest's financial difficulties justify much of the relief that has been negotiated, I conclude that there are "obvious deficiencies" in the proposed Settlement Agreement – namely, the overly broad release provision and the failure to specify when the one-year license period begins. Accordingly, I DENY plaintiffs' motion.

**BACKGROUND**

Plaintiff Benson Worley filed this case on August 21, 2012 as the representative of a class of consumers who bought either Fix-It Utilities Professional ("Fix-It") or System Suite PC Tune-up & Repair ("System Suite"). *See* Compl. (Dkt. No. 1). Worley alleged that Avanquest fraudulently induced consumers to buy these products, which he claimed erroneously diagnose computers with a host of problems. *Id.* ¶¶ 1-7. The Complaint alleged that class members paid around $35.00 for System Suite. *See id.* ¶ 34. Ultimately, Boyd replaced Worley in bringing the causes of action against Avanquest relating to Fix-It. *See* Dkt. No. 51; Dkt. No. 143.

Plaintiffs filed three successive complaints. Dkt. Nos. 1, 52, 164. The allegations

1   requested statutory and punitive damages as well as injunctive and declaratory relief. *See* Dkt. No.
2   164 at 23. The complaints contended that Avanquest misleadingly stated that its software will
3   restore a PC's functionality by removing harmful errors and privacy threats and increasing Internet
4   speeds. *See id.* ¶ 1. Consumers were allegedly induced by these representations to purchase the
5   software, and after receiving bogus diagnostics, to purchase further subscriptions. *Id.* ¶¶ 2-7.
6   Boyd alleged violations of California's unfair competition law, fraudulent inducement, breach of
7   contract, and breach of the implied covenant of good faith and fair dealing.

    Avanquest filed four motions to dismiss and two motions to strike. Dkt. Nos. 32, 53, 144,
    169, 170. The Court granted in part and denied in part the first of these motions to dismiss, *see*
    Dkt. No. 48, and denied the second, third and fourth. Dkt. Nos. 66, 163, 173.

    Nearly two years into the litigation, the parties engaged the Honorable Dickran M.
    Tevrizian as a mediator. Settlement Agreement ¶ 8 (Dkt. No. 190-1); Mot. 4 (Dkt. No. 190).
    Although the parties engaged in multiple rounds of negotiations, they were unable to reach an
    agreement for a class-wide settlement. Mot. 4; Richman Decl. ¶¶ 4-5 (Dkt. No. 190-2). This was
    in part due to Avanquest's worsening financial condition. Richman Decl. ¶ 5.

    After the most fourth Order denying Avanquest's motion to dismiss, the parties again
    entered into mediation with Judge Tevrizian. *Id.* ¶ 6. After several months, they reached the
    terms of the proposed settlement before me. *See* Settlement Agreement.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 states that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). The district court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *4 (N.D. Cal. Sept. 13, 2011). A settlement "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

Courts in this district have held that "[a] preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014). (internal quotations omitted).  Other factors in evaluating the fairness of the settlement include "(1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## DISCUSSION

### I. CONDITIONAL CERTIFICATION BASED UPON RULE 23

In order to obtain preliminary approval, the parties must demonstrate that the class action meets the requirements of Rule 23.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Rule 23 provides four threshold requirements:  (i) numerosity; (ii) commonality; (iii) typicality and (iv) adequacy of representation.  *Id.* at 613.  The proposed settlement class is "all individuals and entities in the United States and its territories that purchased Versions 6-12 of Avanquest's System Suite Software."  Settlement Agreement ¶ 1.25.

I conclude that all Rule 23 requirements are satisfied.  The proposed settlement class amounts to nearly 210,000 people, which is large enough that joinder of all class members would be impractical.  *See* FED. R. CIV. P. 23(A)(1); Richman Decl. ¶ 12.  In addition, there are questions of law and fact common to all class members, because all bought the same software from Avanquest and suffered the same general type of injury.  *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar," involving consumer products).

1  Boyd is typical of the class because he bought System Suite and suffered the exact type of injuries
2  alleged. *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010)
3  (typicality where named plaintiff alleged substantially the same misrepresentation regarding
4  products as that suffered by class). Finally, it appears that Boyd and class counsel will adequately
5  represent the interests of the class. Plaintiff's counsel, Edelman PC, has litigated this case for
6  nearly three years, defended four motions to dismiss and two motions to strike, and has substantial
7  experience prosecuting class actions. Richman Decl. ¶¶ 11-13. Similarly, there is no reason to
8  believe that Boyd would be an inadequate class representative. Neither Boyd nor Edelson appear
9  to have any conflicts of interest with the class members.

10  Lastly, plaintiff contends that Rule 23(b)(3) is satisfied, and I agree that common questions
11  of law and fact predominate – in fact there are few questions of law or fact that would not be
12  shared by the class members, other than potential damages – and that a class action is the superior
13  method of resolving class members' claims. Therefore, I conclude that plaintiff has satisfied the
14  burden of demonstrating that conditional certification of the Settlement Class is warranted under
15  Rule 23(a) and (b)(3).

16  **II. PRELIMINARY APPROVAL**

17  In considering the adequacy of the proposed Settlement Agreement before me, I am guided
18  by the factors set forth in *eBay*. First, the proposed settlement agreement appears to be the product
19  of serious, informed, non-collusive negotiations. The parties negotiated at length for around one
20  year, *see* Mot. 17, and enlisted a neutral mediator to assist with negotiations. *See Villegas*, 2012
21  WL 5878390, at *6 (use of mediator "tends to support the conclusion that the settlement process
22  was not collusive"). In addition, the proposed settlement agreement "does not improperly grant
23  preferential treatment to class representatives or segments of the class," *eBay*, 2014 WL 4273888,
24  at *5, because all class members are treated in the same way and there is no difference in
25  treatment throughout the class.

26  The primary question before me is whether there are any "obvious deficiencies" in the
27  proposed settlement. In making this determination, I look to first to the proposed relief, in light of
28  all relevant factors, and then to the release provision, which is overly broad.

4

### A. Class Member Relief

The proposed settlement contains two forms of relief for class members. First, class members shall receive an electronic voucher via email that provides them with a one-year license of Avanquest's "AutoSave Essentials" software. Settlement Agreement ¶ 2.1(a). Class members shall receive this voucher via email and will not need to submit a claim form or enter payment information to access it. *Id.* AutoSave Essentials is a "personal data recovery software that allows users to select documents to be saved . . . and automatically creates and continuously saves a duplicate copy of that data so it can easily be restored in the event of a loss." *Id.* ¶ 2.1(a) n.1. The Settlement Agreement states that the voucher will be freely transferable "and will expire one year from the date it is issued." *Id.* ¶ 2.1(a). In addition, if less than 15% of class members (around 31,500 people) activate, the members that did activate shall receive the remaining vouchers available to that 15%. *Id.* ¶ 2.1(b).

The Settlement Agreement also provides for prospective relief, which requires Avanquest to change System Suite's in-software help file and online FAQs and its marketing materials. *Id.* ¶ 2.2. These changes will provide greater and more accurate descriptions of System Suite's functions. *Id.*

Plaintiffs argue that the non-cash relief in this case is appropriate because (i) Avanquest does not have the ability to fund a class-wide settlement that would provide meaningful monetary relief; (ii) the relief is tailored to the interests of the class; (iii) $ 1 million worth of software is guaranteed to the class; and (iv) the settlement offers valuable prospective relief. Mot. 1.

Courts are wary of non-monetary relief and have held that "gift cards are a form of non-monetary relief and must be carefully scrutinized." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *6 (C.D. Cal. July 21, 2008); *see also Young v. Polo Retail, LLC*, No. C 02 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007); Advisory Committee note for FRCP 23(2)(C)(h) ("Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class."). Here, the AutoSave software is not directly related to the antivirus software bought by class members. It provides automatic backup which users may already have or not want. In

1  addition, it provides only a one-year subscription. Although the parties contend that Avanquest
2  will give the class at least $1 million value in software, which retails for $39.95, the vouchers will
3  not require Avanquest to pay anything; the value of the software is in the amount that Avanquest
4  would earn if the class members decided to purchase AutoSave. Avanquest already has the
5  software available and need only send class members a voucher with a license to use it for one
6  month. I am skeptical of such relief because it does not directly relate to the alleged problems
7  experienced by the class and is arguably favorable to Avanquest, which stands to benefit from
8  class members that choose to renew AutoSave after their vouchers expire.

The prospective relief, while of some value to future consumers, does not provide relief to class members, who have already suffered injury. I am also cognizant that the overall cost to Avanquest of executing this settlement is not great. The only financial cost that it will bear is the cost of attorneys' fees, the incentive award, and the Settlement Administration expenses. The cost of implementing the prospective relief is low, and the cost of giving vouchers to class members is essentially non-existent.[1] For these reasons, if Avanquest was in better financial condition I would be hesitant to approve this settlement.

That said, courts do not categorically reject such non-cash settlement relief. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.") (internal quotations omitted); *Fernandez*, 2008 WL 8150856, at *6, 12 . The settlement here was predicated on Avanquest's perilous financial condition. I have reviewed the defendant's financial documents and am satisfied that Avanquest does not have the ability to fund a settlement that would provide meaningful monetary relief to class members. Plaintiff's counsel stated at the hearing that his firm had carefully evaluated the available software produced by Avanquest that could be used to provide some benefit to the class, and he appeared to have valid reasons for choosing Avanquest's AutoSave software instead of other software, such as System Suite.

---

[1] In their briefs and at oral argument, counsel confuse the potential market value of AutoSave and the actual cost to Avanquest of providing it to class members.

The issue here, then, is whether plaintiffs have secured a settlement that is within the range of one that is fair, reasonable and adequate in light of the circumstances. The parties have presented evidence that defendant cannot provide a significantly more favorable settlement due to its financial condition. Avanquest has defended its case thus far with an insurance policy that is now near exhaustion. These considerations demonstrate that the proposed relief in the Settlement Agreement is fair to class members, who otherwise risk obtaining nothing. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992) ("a settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement"); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 WL 2568151, at *1 (N.D. Cal. June 25, 2012) ("Although the Settlement does not provide for cash payments to the unnamed Class members, the record demonstrates that such payments are not realistically possible because they would likely result in the Defendants and/or their corporate affiliates entering bankruptcy proceedings. Given Defendants' demonstrated financial condition, continued litigation is unlikely to yield a recovery greater than that provided for under the Settlement.") (internal citations and quotations omitted).

I am concerned, however, that the provision that the vouchers will expire one year from the date they are "issued" is ambiguous. To me, this indicates that the vouchers will expire one year from the date that class members receive the email containing the license for AutoSave. But at the hearing, counsel represented that the vouchers would expire one year from the date of activation.

Obviously, what counsel said at the hearing is more beneficial to the class members. Read as I interpret it, this provision requires class members to activate the license immediately or lose some or all of the benefit of the settlement. Class members may not immediately receive or read the email, or may simply wait to activate for a month or several weeks. In addition, such a temporal limitation would severely undermine the benefits of the "freely transferable" provision by making it more difficult and less profitable for class members to exchange the vouchers for cash. *See Young v. Polo Retail, LLC*, No. C 02 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (approving settlement with gift cards as relief, noting that the transferability of the gift cards "enables class members to obtain cash - something all class members will find useful").

As drafted, the Settlement Agreement's ambiguity regarding the time of expiration presents an obvious deficiency.

**B. Release**

More to the point, the proposed release is overly broad. The Settlement Agreement provides the following definitions:

> "*Released Parties*" – Avanquest and any and all of its present or former heirs, executors, estates, administrators, predecessors, successors, assigns, parents (including but not limited to Avanquest Software, S.A.), subsidiaries, associates, affiliated and related entities, employers, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, paliners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, insurers, unde1writers, shareholders, lenders, auditors, investment advisors, and any and all present and former companies, fi1ms, trusts, corporations, officers, directors, other individuals or entities in which Avanquest has a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities.
>
> "*Released Claims*" – any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, damages (including but not limited to punitive, exemplary or multiple damages), charges, penalties, losses, rights, actions, causes of action, claims, contracts or agreements, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States (including both direct and derivative claims) against the Released Parties, or any of them, arising out of the facts transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions, or failures to act regarding the design, use, marketing, advertising, functionality, operation, and/or performance of the System Suite Software, including all claims that were brought or could have been brought in the Action, belonging to any and all Plaintiffs and Releasing Parties relating to the System Suite Software.

Settlement Agreement ¶¶ 1.19, 1.20. The Settlement Agreement states that it is "a full and final disposition of any and all Released Claims, as against Released Parties." *Id.* ¶¶ 3.1-3.3. It also operates as a waiver of all unknown claims and is stated in the broadest possible terms. *Id.* ¶ 1.28.

This release is overly broad because it covers more causes of action than the Complaint alleges. *See Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA, 2013 WL 60464, at *9 (N.D. Cal. Jan. 2, 2013) (release overly broad where it did not "appropriately track the extent and breadth of Plaintiffs' allegations in the FAC and releases unrelated claims"); *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013) (approving a revised

8

release that where "the only claims that would be released are those that arise out of the allegations in the operative complaint."). For example, the release covers all causes of action that may arise out of the "performance" of System Suite. Class members would be barred from bringing a cause of action that alleges that System Suite caused a serious security breach or corruption of their data. Such claims are not alleged in the Complaint.

This release would also prevent a party from bringing future causes of action based upon a set of facts that differs from the one here. The Ninth Circuit has stated that "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotations omitted). This release does not contain limitations on future causes of action that *Hesse* requires. Finally, such a broad release including unknown claims is unreasonable considering the lack of cash relief to the class members. *Wehlage*, 2012 WL 2568151, at *1 (in approving non-cash settlement, noting that that the release was narrow enough to allow separate claims for damages).

The breadth of the release in the proposed Settlement Agreement presents an obvious deficiency, especially given the relief provided in this case.

### III. APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL AND NOTICE

Although I deny plaintiffs' motion for preliminary approval, I briefly discuss the notice provisions of the proposed Settlement Agreement in the anticipation that the obvious deficiencies can and will be readily cured. Federal Rule of Civil Procedure 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(2).

The notice email and the notice to be put on the website is straightforward and contains the necessary information. The Settlement Agreement provides that CAA[2] will send an email to all

---

[2] CAA, or "Class Action Administration," is the third party designated as the settlement administrator. Settlement Agreement ¶ 1.23. The court may request that the parties, in conjunction with CAA, submit a report summarizing his work. *Id.* ¶ 5.1.

9

1  class members for whom Avanquest has an email address by a date set by the court, or within 28
2  days of the preliminary order. Settlement Agreement ¶ 4.1(a). CAA will send a reminder notice
3  to members that do not activate the voucher within 60 days. *Id.* No claims process is required,
4  because Avanquest will send emails to all class members that will contain a license to obtain
5  AutoSave. Plaintiff has attached this email to the proposed Settlement Agreement and I find that
6  it is clear and provides the necessary information to class members. *See* Dkt. No. 190-1, Ex. A.
7  In addition, the Settlement Agreement provides that CAA will set up a settlement website by the
8  time the email notice is sent out. Settlement Agreement ¶ 4.1(b). Plaintiffs have attached a
9  proposed website as well. Dkt. No. 190-1, Ex. B. This shall contain the Class Notice, Settlement
10  Agreement, Preliminary Approval Order, the operative Complaint, the toll free IVR phone line,
11  and the mailing address to directly contact CAA. *Id.*; Settlement Agreement ¶ 1.4(b).

12  Objections and exclusions will be filed by a date set by the court, or 45 days after the
13  notice date, which is 28 days after the preliminary approval or other date set by the court.
14  Settlement Agreement ¶¶ 1.14, 4.3-4.5. CAA shall receive requests for exclusion. *Id.* ¶ 5.1.
15  Within 10 days after the Settlement Agreement is filed with the court, CAA will serve CAFA
16  notice on relevant government officials in accordance with 28 USC § 1715. *Id.* ¶ 4.2. Avanquest
17  will bear all costs of the Settlement Administration. *Id.* ¶ 5.1(c).

18  I find that the notice provisions set forth in the proposed Settlement Agreement are
19  adequate. The parties have provided the means to identify and inform all class members of the
20  settlement and to give them vouchers without any claims process. In addition, the format and
21  language of the proposed email and website are straightforward and provide the necessary
22  information. Accordingly, the proposed notice is adequate.

## CONCLUSION

Because I find that there are obvious deficiencies in the Settlement Agreement, the motion for preliminary approval of a class action settlement is DENIED. If they choose to do so, the parties may file a revised motion with a hearing on two weeks' notice. They should provide a redlined copy of the revisions from the original motion and agreement. If no revised motion is filed, the parties shall appear for a Case Management Conference on September 29, 2015 at 2

1  p.m., having filed a Joint Statement on September 22, 2015.

2  **IT IS SO ORDERED**.

3  Dated: July 17, 2015



WILLIAM H. ORRICK
United States District Judge

11