Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Samuel Lasser (SBN – 252754)
samlasser@hotmail.com
LAW OFFICE OF SAMUEL LASSER
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHNNY BOYD, individually and on behalf of all others similarly situated, | Case No. 3:12-cv-04391-WHO |
| *Plaintiff,* | **PLAINTIFF'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |
| *v.* | |
| AVANQUEST NORTH AMERICA, INC., a California corporation, | Judge:   Hon. William H. Orrick |
| | Date:    October 14, 2015 |
| *Defendant.* | Time:    2:00 p.m. |

1

## NOTICE OF MOTION

2     **PLEASE TAKE NOTICE** that on October 14, 2015 at 2:00 p.m., or at such other time as may

3 be set by the Court, Plaintiff Johnny Boyd will appear, through counsel, before the Honorable William H.

4 Orrick, or any Judge sitting in his stead, in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San

5 Francisco, California 94102, and then and there, respectfully move the Court, pursuant to Federal Rule of

6 Civil Procedure 23(e), to grant preliminary approval of the proposed class action settlement reached

7 between himself and Defendant Avanquest North America, Inc.

8     Plaintiff Boyd's motion is based upon this Notice, the Memorandum of Points and Authorities

9 filed herewith, the exhibits attached thereto, including the Parties' proposed class action settlement

10 agreement and the record in this matter, along with any oral argument that may be presented to the Court

11 and evidence submitted in connection therewith.

12                               Respectfully Submitted,

13                               **JOHNNY BOYD**, individually and on behalf of all
14                               others similarly situated,

Dated:  September 29, 2015           By:  /s/ Benjamin H. Richman
15                                 One of Plaintiff's attorneys

16                           Jay Edelson (Admitted *Pro Hac Vice*)
17                           jedelson@edelson.com
                          Rafey Balabanian (Admitted *Pro Hac Vice*)
18                           rbalabanian@edelson.com
                          Benjamin H. Richman (Admitted *Pro Hac Vice*)
19                           brichman@edelson.com
                          EDELSON PC
20                           350 North LaSalle Street, Suite 1300
                          Chicago, Illinois 60654
21                           Tel: 312.589.6370
                          Fax: 312.589.6378

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND .............................................................................................. 2

       A.     Plaintiff's Allegations ........................................................................ 2

       B.     The Litigation and Settlement Discussions ..................................... 2

       C.     Plaintiff's Initial Motion for Preliminary Approval, the Court's Concerns,
              and the Parties' Amendment to the Settlement Agreement ........................... 4

III.   THE TERMS OF THE SETTLEMENT AGREEMENT ............................. 6

       A.     Class Definition ................................................................................. 6

       B.     Class Member Relief ......................................................................... 6

       C.     Prospective Relief ............................................................................. 6

       D.     Settlement Administration Expenses ............................................... 7

       E.     Class Representative Incentive Award ............................................. 7

       F.     Attorneys' Fees and Costs ................................................................ 7

       G.     Release ............................................................................................... 7

IV.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS
       FOR SETTLEMENT PURPOSES ............................................................... 7

       A.     The Proposed Settlement Class Meets the Requirements of Rule 23 ....................... 8

              1.     The proposed Settlement Class is sufficiently numerous ............................. 9

              2.     Settlement Class Members share common questions of law
                     and fact ..................................................................................... 9

              3.     Plaintiff's claims are typical of the Settlement Class Members'
                     claims ..................................................................................... 10

              4.     Plaintiff and Class Counsel will adequately represent the
                     Settlement Class ...................................................................... 11

              5.     The proposed Settlement Class satisfies the requirements of Rule
                     23(b)(3) .................................................................................. 13

                     i.     Common questions of law and fact predominate ...................... 13

                     ii.    A class action is the superior method of resolving the
                            controversy ............................................................... 14

V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ................. 15

VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 16

    A.   The Settlement is the Product of Arm's-Length, Informed, and
         Non-Collusive Negotiations Amongst Experienced Counsel ...................................... 17

    B.   The Settlement is Clear of Defects and Provides Real, Immediate Relief ................ 18

    C.   The Settlement Treats Settlement Class Members Fairly and Falls
         Squarely Within the Range of Possible Approval ........................................ 21

VII.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ........................ 24

VIII. CONCLUSION ................................................................................................ 25

1

## TABLE OF AUTHORITIES

2

**United States Supreme Court Cases**:

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................ 7, 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................... 24

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)....................................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................ 9

**United States Circuit Court of Appeals Cases**:

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ............................................. 8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................ 16

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ...................................... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 11, 13, 16

*Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ......................................................... 19

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454 (9th Cir. 2000)............................................. 20

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ....................................................... 16

*In re Wireless Tele. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005)................... 23

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ............................................... 13, 14

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)................................................................................................ 16

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ................................................................. 9

*Redman v. Radioshack*, 768 F.3d 622 (7th Cir. 2014)............................................................... 23

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................... 10, 13, 14

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ........................... 13, 14

*Zinser v. Accufix Research Institute*, 253 F.3d 1180 (9th Cir. 2001)........................................ 14

**United States District Court Cases**:

*Bruno v. Quten Research Inst., LLC*,
    No. 11-cv-00173, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013)......................................... 22

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ........................... 8

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ............................. 22

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Flores v. Velocity Exp., Inc.*,
  No. 12-cv-05790, 2013 WL 2468362 (N.D. Cal. June 7, 2013) ........................... 7-8

*Gross v. Symantec, Inc.*, No. 12-cv-00154 (N.D. Cal.) ........................................ 12, 16

*Hall v. TuneUp Corporation*, No. 13-cv-01804 (N.D. Ill.) .................................... 25

*Harris v. Vector Mktg. Corp.*,
  No. 08-cv-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ........................... 17

*Heffelfinger v. Elec. Data Sys. Corp.*,
  No. 07-cv-00101, 2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) ........................... 7

*In re Google Referrer Header Privacy Litig.*,
  No. 10-cv-04809, 2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ........................ 9

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ........................... 17

*In re Netflix Privacy Litig.*,
  No. 11-cv-00379, 2012 WL 2598819 (N.D. Cal. July 5, 2012) ........................... 12

*In re Netflix Privacy Litig.*,
  No. 11-cv-00379, 2013 WL 1120801 (N.D. Cal. March 18, 2013) ...................... 22

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
  282 F.R.D. 486 (C.D. Cal. 2012) ....................................................................... 15

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005) ................. 9

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............. 16, 20

*In re TD Ameritrade Account Holder Litig.*,
  No. 07-cv-2852, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ........................ 16

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008) ................................. 12

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ........... 8

*Kulesa v. PC Cleaner, Inc.*, No. 12-cv-00725 (C.D. Cal.) .............................. 10, 12, 25

*LaGarde v. Support.com, Inc.*, No. 12-cv-00609 (N.D. Cal.) ............................ 12, 15

*Rottner v. AVG Techs., Inc.*, No. 12-cv-10920 (D. Mass.) .................................. 25

*Satchell v. Fed. Exp. Corp.*,
  No. 03-cv-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................ 17

*Schwarm v. Craighead*, 814 F. Supp. 2d 1025 (E.D. Cal. 2011) ........................... 22

*State of California v. eBay, Inc.*,
  No. 12-cv-05874, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ...................... 16

*Swift, et al. v. Direct Buy, Inc., et al.*, No. 11-cv-401 (N.D. Ind.) ........................ 21

*Tijero v. Aaron Bros.*,
    No. 10-cv-01089, 2013 WL 6700102 (N.D. Cal. Dec. 19, 2013)............................................ 17, 19

*Villegas v. J.P. Morgan Chase & Co.*,
    No. 09-cv-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....................................... 17, 20

*Wehlage v. Evergreen at Arvin LLC*,
    No. 4:10–cv–05839, 2012 WL 2568151 (N.D. Cal. June 25, 2012) ...................................... 19, 22

**Statutes & Miscellaneous**:

28 U.S.C. § 1715............................................................................................................................. 25

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002)....................................... 17, 24

*CAA:XV*, Class Action Administration, Inc.*, available at* http://www.classactionadmin.com
    (last visited September 29, 2015) ............................................................................................. 24

Cal. Bus. & Prof. Code §§ 17200 ........................................................................................................ 10

Charles Wright, et al., Federal Practice and Procedure (3d ed. 2005) ......................................................... 14

Fed. R. Civ. P. 23 .................................................................................................................*passim*

Manual for Complex Litigation (Fourth) (2004)......................................................................... 7, 16

I.      **INTRODUCTION**

On July 1, 2015, the Court held a preliminary approval hearing to determine whether the Parties' proposed class action settlement was within the range of possible approval. During the hearing, the Court raised concerns regarding the adequacy of the settlement, specifically as it related to (i) Defendant Avanquest North America, Inc.'s ("Avanquest" or "Defendant") financial condition, (ii) the start date of the electronic one-year voucher to Avanquest's AutoSave Essentials software ("Voucher"), and (iii) the scope of the released claims. On July 17, 2015, the Court entered an Order denying preliminary approval, but otherwise finding that class certification was appropriate for settlement purposes and approving the proposed notice and settlement administration procedures. (Dkt. 193 [the "July Order"].) Having reviewed Avanquest's financial condition and finding that it "does not have the ability to fund a settlement that would provide meaningful monetary relief" to the Settlement Class, the remaining concerns the Court had with the proposed settlement were that (i) the settlement agreement did not identify with enough specificity when the one-year Vouchers begun to run, and (ii) the breadth of the release in that it included claims not related to the underlying facts of this matter. (July Order at 7-9.) "[A]nticipati[ng] that the obvious deficiencies can and will be readily cured," (July Order at 9), the Court granted the Parties leave to file a revised motion for preliminary approval on two weeks' notice. (*Id.*)

Since the Court entered its Order, the Parties have negotiated and executed an amendment to their settlement agreement (the "Amendment"), a true and accurate copy of which is attached hereto as Exhibit 2, through which they (i) expressly identify that all Vouchers must be activated within one hundred twenty (120) days of receipt and will expire one (1) year from their activation, and (ii) narrow the scope of the release to include only claims that are expressly "based on the allegations asserted in the operative Second Amended Class Action Complaint ["SAC"]." With those modifications having been made—and the Court already recognizing that they were all that stood between the settlement and preliminary approval— the Court should have no doubt that the settlement is fundamentally fair, reasonable and adequate, and well within the range of possible approval.

For all of these reasons and as described in detail below, Plaintiff Boyd respectfully requests that the Court grant the instant motion, certify the Settlement Class for settlement purposes, appoint him as

1   Class Representative and his counsel as Class Counsel, approve the Notice Plan, and preliminarily

2   approve the settlement.

3   **II.      BACKGROUND**

4          **A.      Plaintiff's Allegations**

5          Avanquest is a multi-national developer of software products that it claims will increase the speed,

6   performance, and stability of a consumer's personal computer ("PC"), protect against privacy risks,

7   remove harmful errors, and improve Internet speeds. (Dkt. 164 ["SAC"] ¶ 1.) One such software product

8   is SystemSuite PC Tune-Up & Repair. (*Id.* ¶ 2.) In his complaint, Plaintiff alleges that Defendant

9   deceptively designed and marketed System Suite to entice consumers into purchasing it with the promise

10  that it will, *inter alia*, stop PCs from crashing and freezing, repair detected system errors, enhance the

11  speed and memory of the computer, and provide virus and spyware protection. (*Id.* ¶¶ 26-28.) Boyd

12  further claims that to convince consumers of the Software's supposed utility, Avanquest designed System

13  Suite to appear as though it was detecting and removing errors every time consumers ran the Software.

14  (*Id.* ¶¶ 6–7, 62, 65.) As a result, consumers were induced to purchase, continue using, and/or renew

15  subscriptions to the Software. (*Id.* ¶ 65.)

16         Boyd claims that despite Avanquest's representations, the Software did not accurately identify

17  errors and threats or eliminate PC crashes and freezes, nor was it designed to do so. Instead, Boyd alleges

18  that System Suite was designed to always identify problems on a user's PC, inflate the number of errors

19  detected, characterize items as more harmful than they otherwise were and, as a result, report that a

20  computer's health statuses were low. (*Id.* ¶ 39.) Avanquest has at all times denied these allegations and

21  steadfastly argued that the Software functions as advertised.

22         **B.      The Litigation and Settlement Discussions**

23         On August 21, 2012, this Action was filed by then party-plaintiff Benson Worley, who alleged

24  claims for damages, injunctive and declaratory relief against Avanquest arising out of, *inter alia*, the

25  design and marketing of Avanquest's System Suite Software. (Dkt. 1.) Avanquest moved to dismiss the

26  original complaint on November 30, 2012, which the Honorable Susan Illston granted in part and denied

27  in part. (Dkts. 37, 48.) On February 22, 2013, Plaintiffs Worley and Boyd filed their First Amended

28

Complaint, providing greater detail regarding the alleged falsity of Avanquest's advertisements and in-software representations, and naming Boyd as a putative class representative. (Dkt. 52.) Defendant then filed a motion to dismiss the First Amended Complaint on March 8, 2013, which Judge Illston denied in its entirety. (Dkts. 53, 66.) On June 27, 2013, the Action was reassigned to this Court and approximately one month later, Avanquest filed a motion to transfer the action to the Central District of California, which, after limited discovery and full briefing from the Parties, this Court denied as well. (Dkts. 79–83, 95-100, 102–104.)

Upon the Court's denial of Avanquest's motion to transfer and over the course of more than one year, the Parties exchanged multiple sets of written discovery requests and their respective responses (including, tens of thousands of pages of responsive documents), and Plaintiff inspected (over the course of three full days) the source code underlying the System Suite Software. (*See* Declaration of Benjamin H. Richman ("Richman Decl.") ¶ 3, attached hereto as Exhibit 5.) The Parties also engaged in numerous telephonic and written meet-and-confers regarding their respective discovery responses and perceived deficiencies in the same, some of which ultimately required the assistance of Magistrate Judge Laurel Beeler to resolve. (*Id.*; *see also* Dkts. 116, 121, 123, 136–137, 139–140, 146, 153, 155.)

In the midst of the litigation and discovery—and nearly two years after the Action was filed—the Parties determined that they had obtained enough information to proceed with a formal mediation aimed at resolving the case. Accordingly, they engaged the Honorable Dickran M. Tevrizian (Ret.) of JAMS in Los Angeles and proceeded with mediation on June 3, 2014. (*See, e.g.,* Dkt. 157.) (Richman Decl. ¶ 4.) Despite numerous rounds of arm's-length negotiations, the Parties were unable to reach a resolution of the action, the main reason being Avanquest's limited ability to fund a class-wide settlement. (*Id.* ¶ 5.) The Parties nevertheless agreed to exchange certain information relating to Avanquest's financial condition and applicable insurance coverage and otherwise continue their settlement efforts. (*Id.*) Notwithstanding their continued efforts and Plaintiff's extensive review of Avanquest's financial statements—which confirmed Avanquest's stated-position—the Parties were unable to reach a resolution and determined to proceed with the litigation. (*Id.*)

Later, on August 25, 2014, then party-plaintiff Worley determined that he would not proceed with his claims in this matter, and the Parties stipulated to the dismissal of his claims with prejudice and the claims of the putative class he sought to represent without prejudice. (Dkt. 143.) Days later, Avanquest filed a third motion to dismiss, this time on the basis that Boyd misidentified the software he purchased from Avanquest. (Dkt. 144.) The Court denied that motion as well and granted Boyd leave to file an amended complaint clarifying the issue. (Dkt. 163.) On October 21, 2014, Boyd filed his Second Amended Complaint. (Dkt. 164.) Avanquest thereafter filed—and the Court denied—a fourth motion to dismiss. (Dkts. 169, 178.)

After the Court's entry of the Order denying Avanquest's motion to dismiss, the Parties decided to redouble their settlement efforts in an attempt to reach a resolution of the claims at issue and engaged in months of additional settlement discussions. (Richman Decl. ¶ 6.) As a result of their discussions, and only after obtaining Judge Tevrizian's assistance and using a settlement framework similar to that suggested by him at the mediation, the Parties reached the principal terms of the proposed class action settlement. (*Id.*) The Parties thereafter reduced those terms to writing in the form of the proposed Class Action Settlement Agreement. (*See* the Parties' Class Action Settlement Agreement, a true and accurate copy of which is attached hereto as Exhibit 1.)

### C.     Plaintiff's Initial Motion for Preliminary Approval, the Court's Concerns, and the Parties' Amendment to the Settlement Agreement

On May 19, 2015, Plaintiff Boyd filed his original motion for preliminary approval of the Parties' proposed class action settlement. (Dkt. 190.) On July 1, 2015, the Court held a hearing on the motion to determine whether the settlement was fair, reasonable and adequate and whether preliminary approval should be granted and notice should be distributed. (Dkt. 192.) During the hearing, the Court expressed that it had concerns because the proposed settlement did not offer individuals monetary relief, it was not clear whether the one-year license to use the Vouchers would begin upon receipt or activation, and that the scope of the release was overly broad because it included claims that did not necessarily relate to the facts at issue in the SAC. (*See* Dkt. 192; July Order.)

As it relates to the Court's first concern, Class Counsel explained that they had thoroughly reviewed Avanquest's finances and confirmed Avanquest is not in a position to fund a classwide

settlement, explored options as to the relief that could nevertheless be provided to the Settlement Class, determined the best and most directly related relief would be in-kind, and tested the AutoSave Essentials software to ensure that its functionality—unlike System Suite's—was represented accurately. Avanquest thereafter provided the same evidence of their finances to the Court for *in camera* review. (July Order at 6.) And as it relates to the Court's latter concerns, Class Counsel explained that the one-year license to the Vouchers begins upon their activation and that the scope of the release is not atypical of similar class action settlements.

On July 17, 2015, the Court entered an Order denying Plaintiff's initial motion for preliminary approval. (July Order.) In its Order, the Court "conclude[d] that all Rule 23 requirements are satisfied," (*id.* at 3), held "that the notice provisions set forth in the proposed Settlement Agreement are adequate," (*id.* at 10), and found that—after reviewing Avanquest's financial condition—Avanquest could not fund a classwide settlement that would provide even modest monetary relief directly to Settlement Class members. (July Order at 6.) Thus, the remaining issues that the Court found with the Settlement were that "the provision that vouchers will expire one year from the date they are 'issued' is ambiguous," (*id.* at 7), and that the "release is overly broad because it covers more causes of action than the Complaint alleges." (*Id.* at 8.) "[A]nticipat[ng] that the obvious deficiencies can and will be readily cured," (*id.* at 9), the Court granted the Parties leave to file a revised motion for preliminary on two weeks' notice, and ordered the Parties to provide redlined copies of both the original motion and agreement. (*Id.* at 10-11.)[1]

With the Court's Order as guidance, the Parties drafted and executed their Amendment to the settlement agreement that—as the Court anticipated—readily cures both deficiencies. First, it narrows the scope of the release to include only those claims that arise from the facts and circumstances actually alleged in Plaintiff's SAC. (Amendment ¶¶ 1.19, 1.28.) It also explicitly identifies that the Vouchers will expire one year *from their activation* and that individuals will have one hundred twenty (120) days from receipt of a Voucher to activate it. (*Id.* at 3.)

---

[1]    Redlined copies comparing the instant motion to Plaintiff's original motion for preliminary approval and the revised relevant terms of the Settlement Agreement to the original agreement are attached hereto as Exhibits 3 and 4, respectively.

## III.     THE TERMS OF THE SETTLEMENT AGREEMENT.

A copy of the settlement agreement ("Settlement Agreement" or "Agreement") is attached hereto as Exhibit 1. The key terms of the Agreement are briefly summarized below:

**A.     Class Definition:** The Settlement Class includes all individuals and entities in the United States and its territories that purchased Versions 6-12 of Avanquest's System Suite Software. (Agreement ¶ 1.25.)

**B.     Class Member Relief:** Each Settlement Class Member for whom Avanquest has an email address will automatically receive an electronic voucher ("Voucher") for a one (1) year license of Avanquest's AutoSave Essentials Software. To obtain access to the AutoSave Essentials Software, Settlement Class Members will not be required to submit a claim form, will not be required to provide any payment information to access their free license, and will not be subject to automatic renewals of the one-year license. The Voucher will be freely transferable and will expire one year from the date it is activated—Settlement Class Members shall have one hundred twenty (120) days from receipt of the Voucher to activate it. (*Id.* ¶ 2.1(a).) If less than fifteen percent of the Settlement Class Members (the "Minimum Activation Amount") have activated their one-year license to AutoSave Essentials, the difference between the total number of license years for AutoSave Essentials represented by the Minimum Activation Amount and the total number of license years for AutoSave Essentials that have been activated shall be automatically and evenly distributed amongst all Settlement Class Members that have activated. (*Id.* ¶ 2.1(b).)

**C.     Prospective Relief:** Defendant has agreed (i) to modify the System Suite Software's in-software help file and online FAQs to include more comprehensive descriptions of the problems it detects; (ii) to provide individuals with descriptions that explain the effect that fixing (or not fixing) detected problems will have on the graphical gauges shown in the Software's main user interface; (iii) to modify the Software's online marketing materials to more specifically describe the potential gains in computing performance and operations offered by the Software; and (iv) when a new version of the Software is released, to modify the physical packaging for the Software to more specifically describe the potential gains in computer performance offered by the Software. (*Id.* ¶ 2.2.)

**D.    Settlement Administration Expenses**: Defendant has agreed to pay for the expenses incurred by the Settlement Administrator in sending the Notice, processing requests for exclusion, establishing and maintaining the settlement website and toll-free IVR telephone line, overseeing the implementation of the settlement, and sending CAFA notice. (*Id.* ¶ 1.22.)

**E.    Class Representative Incentive Award:** Defendant has agreed to pay Plaintiff a reasonable incentive award in recognition of his efforts on behalf of the Settlement Class, in an amount to be determined by the Court. Plaintiff has agreed to limit his request for such award to no more than $1,500.00. (*Id.* ¶ 8.3.)

**F.    Attorneys' Fees and Costs:** Defendant has agreed to pay Class Counsel an award of reasonable attorneys' fees and expenses in an amount to be determined by the Court. Class Counsel have agreed to limit their request for such award to no more than $440,000.00. (*Id.* ¶ 8.1.)

**G.    Release:** In exchange for the relief described above, upon the entry of final approval of the settlement, Settlement Class Members shall be deemed to have released all claims arising out of or relating to Plaintiff's claims and the allegations in the SAC for Avanquest's design, use, marketing, advertising, functionality, operation, and/or performance of the System Suite Software. (*Id.* ¶¶ 1.19, 1.20, 3.)

## IV.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES.

Before granting preliminary approval, the Court must determine that the proposed Settlement Class is appropriate for certification by ensuring that it meets the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997); Manual for Complex Litigation (Fourth) § 21.633 (2004).[2] As explained below, and as this Court already held, the proposed Settlement Class easily satisfies Rule 23's requisites to certification. (July Order at 4) ("I conclude that plaintiff has satisfied the burden of

---

[2]    Although the proposed Settlement Class definition differs from the definition Plaintiff Boyd originally proposed in his Second Amended Complaint, an amended class definition is permissible in conjunction with a motion to certify. *See Heffelfinger v. Elec. Data Sys. Corp.*, No. 07-cv-00101, 2008 WL 8128621, at *10 (C.D. Cal. Jan. 7, 2008) (noting that "the court has discretion either to redefine the class or to afford plaintiffs an opportunity to do so" and collecting cases), *aff'd and remanded*, 492 F. App'x 710 (9th Cir. 2012); *Flores v. Velocity Exp., Inc.*, No. 12-cv-05790, 2013 WL 2468362, at *8 (N.D. Cal. June 7, 2013) (granting motion for conditional class certification in FLSA collective action based on amended class definition).

1   demonstrating that conditional certification of the Settlement Class is warranted under Rule 23(a) and

2   (b)(3).")

3           **A.      The Proposed Settlement Class Meets the Requirements of Rule 23.**

4           Plaintiff Boyd respectfully requests that the following class (the "Settlement Class") be certified

5   for settlement purposes:

> All individuals and entities in the United States and its territories that purchased Versions
> 6-12 of Avanquest's System Suite Software.

To be certified, a proposed class must satisfy the criteria set forth in Federal Rule of Civil Procedure 23(a)

and fit into one of the three categories described in Rule 23(b). *Amchem*, 521 U.S. at 614; *Bateman v. Am.

Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted). Rule 23(a) requires that (1) the

proposed class is so numerous that joinder of all individual class members is impracticable (numerosity),

(2) there are questions of law or fact common to the proposed class (commonality), (3) plaintiff's claims

are typical of those of the class (typicality), and (4) plaintiff and his counsel will adequately protect the

interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). In addition, where, as here, certification is

sought under Rule 23(b)(3), the proponent of the class must show that (1) common questions of law or

fact predominate over questions affecting only individual class members (predominance), and (2) a class

action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P.

23(b)(3). Here, the proposed Settlement Class satisfies all of these requirements and should therefore be

certified.[3] (*See* July Order at 4) (holding that "conditional certification of the Settlement Class is warranted

under Rule 23(a) and (b)(3).")

---

[3]     In addition to the Rule 23 requirements, some courts require that "the class must be
adequately defined and clearly ascertainable before a class action may proceed." *Chavez v. Blue
Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (collecting cases and requiring
that "it must be administratively feasible to determine whether a particular person is a class
member"). Here, Avanquest has records of each consumer who purchased the Software and the e-
mail addresses associated with their registration of the Software. (Richman Decl. ¶ 9.)
Consequently, it is completely feasible to determine whether any particular person is a Settlement
Class Member, and the Settlement Class is thus definite and ascertainable. *See, e.g., Kristensen v.
Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (holding class ascertainable
where cellular telephone company agreed to provide a list of subscribers that would identify
individual class members).

1

**1.      The proposed Settlement Class is sufficiently numerous.**

2      The first requirement of Rule 23(a)—numerosity—is clearly satisfied because "the class is so

3  numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); (*see also* July Order at 3)

4  ("The proposed settlement class amounts to nearly 210,000 people, which is large enough that joinder of

5  all class members would be impractical.") (citations omitted). No specific number of class members is

6  required for numerosity, nor is Plaintiff required to state the exact number of potential class members. *In*

7  *re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). Numerosity is generally

8  satisfied where the number of class members exceeds forty, and particularly where class members number

9  in excess of one hundred. *In re Google Referrer Header Privacy Litig.*, No. 10-cv-04809, 2014 WL

10  1266091, at *3 (N.D. Cal. Mar. 26, 2014) (citation omitted). Here, Avanquest's sales records show that

11  the Settlement Class includes nearly 210,000 persons, thus easily satisfying this requirement. (Richman

12  Decl. ¶ 10); *see also In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *3 ("Where the

13  exact size of the class is unknown but general knowledge and common sense indicate that it is large, the

14  numerosity requirement is satisfied.") (citation and internal quotations omitted); (July Order at 3.)

15

**2.      Settlement Class Members share common questions of law and fact.**

16      The second requirement of Rule 23(a)—commonality—is also satisfied here, because "there are

17  questions of law and fact common to all class members." (July Order at 3); Fed. R. Civ. P. 23(a)(2).

18  Commonality exists "[w]here the circumstances of each particular class member vary but retain a

19  common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975,

20  978–79 (9th Cir. 2008). The standard is "construed permissively," *id.* at 978, and "[i]t is not necessary that

21  members of the proposed class share every fact in common." *Evon v. Law Offices of Sidney Mickell*, 688

22  F.3d 1015, 1030 (9th Cir. 2012) (internal quotations omitted). As the Supreme Court has noted, "even a

23  single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal

24  quotations and alterations omitted).

25      As the Court already held, the proposed Settlement Class here satisfies the commonality

26  requirement of Rule 23(a). (July Order at 3) ("there are questions of law and fact common to all class

27  members, because all bought the same software from Avanquest and suffered the same type of injury.")

28

(citations omitted). Boyd alleges that Avanquest uniformly marketed and advertised the Software based upon its supposed functionality and that Avanquest designed the Software so that it functioned (or failed to function) in the same manner on each Settlement Class Member's computer. Plaintiff has therefore identified an alleged pattern of standardized conduct that raises several issues of fact common to the proposed Settlement Class, including whether, as alleged: (i) Avanquest designed the Software to falsely report the existence of errors and threats on users' computers; (ii) the Software uniformly exaggerates the severity of errors detected on users' computers, (iii) Avanquest misrepresented the functionality of the Software, and (iv) the proposed Settlement Class Members overpaid for the Software as a result. Those common factual questions raise several common legal questions, including whether Defendant's alleged conduct constitutes (i) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (ii) fraudulent inducement, (iii) breach of contract, and (iv) breach of the implied covenant of good faith and fair dealing. These common questions—whose answers depend solely on Avanquest's identical conduct towards every member of the Settlement Class—are sufficient to establish commonality. *See, e.g., Kulesa v. PC Cleaner, Inc.*, No. 12-cv-00725-FMO, Dkt. 88 at 9 (C.D. Cal. February 10, 2014) (preliminarily approving proposed class action settlement against Avanquest's industry competitor and finding that "[w]here, as here, class members allege that a defendant made uniform deceptive representations regarding its product, common questions of law exist", and collecting cases) and 101 (finally approving class action settlement and incorporating commonality analysis from preliminary approval order).

### 3.   Plaintiff's claims are typical of Settlement Class Members' claims.

The third requirement of Rule 23(a)—typicality—is also satisfied because "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3); (July Order at 4) (holding that the typicality requirement is satisfied). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Like commonality, typicality is viewed "permissive[ly]," and the standard is satisfied if the class representative's claims "are reasonably

co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, "Boyd is typical of the class because he bought System Suite and suffered the exact type of injuries alleged." (July Order at 4) (citation omitted). Indeed, although only reasonable co-extensiveness is required, Boyd's claims are essentially identical to the claims of the absent Settlement Class Members. In particular, Boyd alleges that he purchased the Software after reviewing and relying upon Avanquest's statements that it could repair computer errors and threats and otherwise improve the performance of his computer. (SAC ¶¶ 45–46.) In reality, the Software did not perform the functions promised to Boyd. (*Id.* ¶ 48.) Indeed, Boyd alleges that Avanquest (i) made the same misrepresentations about the Software's functionality to himself and each Settlement Class Member, (ii) designed the Software to uniformly misrepresent the condition of their computers, and (iii) did so to induce them to continue using and/or renewing their subscriptions to the Software. (*See id.* ¶¶ 25–28, 31, 36–41, 51.)

In other words, Boyd and the Settlement Class Members "have the same or similar injury" and "have been injured by the same course or conduct," and the typicality requirement of Rule 23(a) is therefore satisfied as well.

### 4. Plaintiff and Class Counsel will adequately represent the Settlement Class.

The fourth and final requirement of Rule 23(a)—adequacy—is also satisfied because "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); (July Order at 4) (holding that the adequacy requirement is satisfied.) Adequacy has two components: (i) whether the named plaintiff and his counsel have any conflicts of interest with other class members, and (ii) whether plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, "[n]either Boyd nor Edelson appear to have any conflicts of interest with the class members" (July Order at 4), as they are all seeking recovery against the same Defendant, under the same law, for the same kind of injury. *Cf. Hanlon*, 150 F.3d at 1020–21 (noting that intra-class conflicts can arise where class members have suffered different injuries or seek relief under different state laws).

In addition, Boyd and his counsel have vigorously pursued this Action on behalf of the Settlement Class and will continue to do so throughout its pendency. (Richman Decl. ¶ 11.) In particular, "Plaintiff's

counsel, Edel[son] PC, has litigated this case for nearly three years, defended four motions to dismiss and two motions to strike, and has substantial experience prosecuting class actions." (July Order at 4; *see also* Dkts. 32–37, 40–43, 53 – 54, 57, 62–63, 79–83, 89, 95–100, 102–104, 116, 121, 123, 136–137, 139–140, 144–147, 153, 155, 157–158, 160–161, 169–173.) And as explained more fully below, *see infra* Section V, Plaintiff's counsel are well-respected members of the plaintiffs' bar who have extensive experience prosecuting class actions of similar size, scope, and complexity as the instant Action, particularly in the utility software industry. (*See* Richman Decl. ¶ 12.) Indeed, numerous courts throughout the country— including in this District—have previously found Plaintiff's counsel to be adequate representatives of a settlement class of individuals who purchased utility software that did not perform the functions advertised. *See, e.g., Gross v. Symantec, Inc.*, No. 12-cv-00154, Dkt. 70 (N.D. Cal. May 28, 2013) (appointing Jay Edelson, Rafey S. Balabanian and Benjamin H. Richman as class counsel in similar software action); *LaGarde v. Support.com, Inc.*, No. 12-cv-00609, Dkt. 50 at 7 (N.D. Cal. Nov. 12, 2012) (finding attorneys at Edelson PC adequate representatives because they "ha[d] represented numerous class actions in the technology field, and this district has previously found the firm 'experienced and knowledgeable' in this type of litigation.") (citing *In re Netflix Privacy Litig.*, 2012 WL 2598819, at *4 (N.D. Cal. July 5, 2012)); *Kulesa*, No. 12-cv-00725, Dkt. 88 at 12 (Feb. 10, 2014) ("the court is convinced that plaintiff's counsel are competent and willing to prosecute this action vigorously, and the adequacy-of-representation is accordingly satisfied.") (citation omitted). Additionally, Plaintiff's counsel have already dedicated substantial resources to the prosecution of this Action—e.g., investigating the claims of Boyd and the Settlement Class, working to understand the technology at issue, engaging in extensive briefing on the sufficiency of Plaintiff's claims, engaging in formal and informal discovery, participating in numerous meet and confers and litigating multiple discovery disputes, and otherwise maintaining an ongoing dialogue with Avanquest—and they will continue to do so. (Richman Decl. ¶ 13.)

The adequacy requirement is therefore met as well. (July Order at 4) ("it appears that Boyd and class counsel will adequately represent the interests of the class"); *see also Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (holding that adequacy requirement was met where named plaintiffs "demonstrated their commitment to the action" and attorneys were "qualified to represent the class").

**5.** **The proposed Settlement Class satisfies the requirements of Rule 23(b)(3).**

In addition to meeting all four of Rule 23(a)'s prerequisites for certification, the proposed

Settlement Class also satisfies Rule 23(b)(3)'s predominance and superiority requirements. (July Order at

4 ("I agree that common questions of law and fact predominate…and that a class action is the superior

method of resolving class members' claims."); Fed. R. Civ. P. 23(b)(3). Certification is encouraged under

Rule 23(b)(3) where, as here, "the actual interests of the parties can be served best by settling their

differences in a single action." *Hanlon*, 150 F.3d at 1022. As detailed below, both of these requirements

are satisfied. (*See* July Order at 4.)

*i.* *Common questions of law and fact predominate.*

"While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks

whether these common questions predominate." *Wolin*, 617 F.3d at 1172. That is, Rule 23(b)(3) tests

"whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.*

(citing *Amchem*, 521 U.S. at 623). Whether common issues predominate depends on "the elements of the

underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).[4]

Here, not only do "common questions of law and fact predominate . . . [but] there are few

questions of law or fact that would not be shared, other than potential damages." (July Order at 4.) The

common factual and legal questions detailed in Section IV.A.2, *supra*, are the pillars of Plaintiff's and the

Settlement Class Members' claims for fraudulent inducement, breach of contract, breach of the implied

covenant of good faith and fair dealing, and violation of the UCL. And, given that the Settlement Class

Members viewed and relied upon the same allegedly material representations made by the same

Defendant to purchase the same Software, the evidence needed to establish the elements of these claims

will be the same for every Class Member. As the Court already recognized, the only arguably individual

issue likely to be presented is the amount of damages each Settlement Class Member is entitled to based

on any variation in price of the Software, but that issue in no way detracts from the core questions of

---

[4]     It is also well established that even where individual damage calculations may be
necessary in a case, common issues may still predominate. *Leyva v. Medline Indus. Inc.*, 716 F.3d
510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class
certification under Rule 23(b)(3)."); *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d
1087, 1094 (9th Cir. 2010) (noting that individual damages calculations do not detract from an
action's suitability for class certification).

1   liability that predominate here. *See Leyva*, 716 F.3d at 514 (holding that common questions predominated

2   when issues of individual damages could be "feasibly and efficiently" calculated based on defendant's

3   evidence); *Yokoyama*, 594 F.3d at 1094.

4       As a result, common questions of law and fact predominate, and Rule 23(b)(3)'s predominance

5   requirement is satisfied. (July Order at 4.)

6                   ii.       *A class action is the superior method of resolving the controversy.*

7       Finally, this class action is superior to other methods of resolving this controversy. (July Order at

8   4) ("a class action is the superior method of resolving class members' claims."); Fed. R. Civ. P. 23(b)(3).

9   This requirement, rooted in a concern for judicial economy, ensures "that the class action is the most

10  efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citing Charles

11  Wright, et al., Federal Practice and Procedure § 1779 (3d ed. 2005)). When the expense of litigating on an

12  individual basis would completely subsume any recovery an individual could hope for, this factor weighs

13  in favor of certification. *Id.* (citing *Zinser v. Accufix Research Institute*, 253 F.3d 1180, 1191 (9th Cir.

14  2001)).

15      This is certainly the case here, where Settlement Class Members paid on average $39.95 for each

16  version of the Software. By comparison, the cost of litigating the claims at issue on an individual basis—

17  including the cost of taking and reviewing highly technical discovery, substantial motion practice, and

18  trial—would be prohibitively expensive. In addition, individual claims would clog the courts with an

19  influx of separate but nearly identical actions, further delaying the possibility of relief. By providing swift

20  resolution of common claims in a way that would not be possible on an individual basis, this class action

21  is the superior method of adjudication here.

22      Accordingly, and as the Court already held, the requirements of both Rule 23(a) and 23(b)(3) are

23  satisfied, and certification of the proposed Settlement Class for settlement purposes is appropriate. (July

24  Order at 4) ("I conclude that plaintiff has satisfied the burden of demonstrating that conditional

25  certification of the Settlement Class is warranted under Rule 23(a) and (b)(3).")

26  **V.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.**

27      When certifying a class, a court must also appoint class counsel who will "fairly and adequately

28

represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *see, e.g.*, *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 491–92 (C.D. Cal. 2012) (finding criteria of Rule 23(g) satisfied where proposed class counsel had researched, prepared, and filed cases, dedicated their careers to class action litigation, and demonstrated "extensive experience" in this realm). Proposed Class Counsel readily satisfy the criteria of Rule 23(g).

First, they have devoted—and will continue to devote—a significant amount of time and other resources to this litigation, beginning with their initial investigation of Plaintiff's allegations. (July Order at 4) ("Edel[son] PC[] has litigated this case for nearly three years, defended four motions to dismiss and two motions to strike, and has substantial experience prosecuting class actions."); (*See* Richman Decl. ¶ 13.) Through their initial investigation and both formal and informal discovery, proposed Class Counsel have tirelessly sought to obtain the information needed to develop Boyd's claims and represent the Settlement Class. (*Id.*) Likewise, proposed Class Counsel have dedicated a substantial amount of time and resources to the briefing of, *inter alia*, four motions to dismiss, a motion to transfer, and two motions to strike, and otherwise actively litigating this case for nearly three years. (*See* Dkts. 32–37, 40–43, 53–54, 57, 62–63, 79–83, 89, 95–100, 102–103, 144–147, 157–158, 160–161, 169–173.)

Second, and as described in Section IV.A.4, *supra*, proposed Class Counsel have extensive experience in similar complex litigation and have been appointed class counsel in numerous class actions against Defendant's industry competitors, many of them in this District. (*See* Firm Resume of Edelson PC, a true and accurate copy of which is attached as Exhibit 5-A to the Richman Decl.); *see also LaGarde*, No. 12-cv-00609, Dkt. 50 at 9 (N.D. Cal. Nov. 2, 2012) (appointing attorneys from Edelson PC as class counsel and noting that "this District has previously recognized Plaintiffs' counsel as experienced and able in representing similar class actions involving a large number of class members in a technology-related dispute."); *Gross*, No. 12-cv-00154, Dkt. 70 at 2–3 (N.D. Cal. May 28, 2013) (appointing Jay

1   Edelson, Rafey S. Balabanian, and Benjamin H. Richman as Class Counsel in action against Defendant's

2   industry competitor).

3         Accordingly, the Court should appoint Jay Edelson, Rafey S. Balabanian, and Benjamin H.

4   Richman of Edelson PC as Class Counsel.

5   **VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.**

6         Next, Rule 23(e) requires judicial approval of a proposed class action settlement based on a

7   finding that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlement

8   approval follows a well-established two-step process, beginning with a preliminary evaluation of the

9   settlement's fairness. *In re TD Ameritrade Account Holder Litig.*, No. 07-cv-2852, 2011 WL 4079226, at

10  *4 (N.D. Cal. Sept. 13, 2011); Manual for Complex Litigation (Fourth) § 21.632. Once preliminary

11  approval is granted, the court will order notice to be disseminated and then carry out the second step of the

12  process—the final fairness determination. *Id.*; Fed. R. Civ. P. 23(e)(2). Whether a settlement should be

13  approved rests within the sound discretion of the court, *see Officers for Justice v. Civil Serv. Comm'n of*

14  *the City and Cnty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982), however, deference should be

15  afforded to the private consensual decision of parties to resolve disputes between them. *Hanlon*, 150 F.3d

16  at 1027 (citing *Officers for Justice*, 688 F.2d at 625). The Ninth Circuit recognizes a strong judicial policy

17  in favor of the voluntary settlement of class action litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095,

18  1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

19        Although the Ninth Circuit has not articulated a particular standard for evaluating whether

20  preliminary approval of a class settlement should be granted, courts within this District typically grant

21  preliminary approval when: "[1] the proposed settlement appears to be the product of serious, informed,

22  non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential

23  treatment to class representatives or segments of the class, and [4] falls within the range of possible

24  approval." *See State of California v. eBay, Inc.*, No. 12-cv-05874, 2014 WL 4273888, at *5 (N.D. Cal.

25  Aug. 29, 2014) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007));

26  *Tijero v. Aaron Bros.*, No. 10-cv-01089, 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013) (citation

27  omitted). The instant Agreement easily satisfies all four factors and is deserving of preliminary approval.

28

A.   **The Settlement is the Product of Arm's-Length, Informed, and Non-Collusive Negotiations Amongst Experienced Counsel.**

First, and as the Court has held, "the proposed settlement agreement appears to be the product of serious, informed, non-collusive negotiations." (July Order at 4.) While the other three factors also support preliminary approval, settlements that are the result of arm's-length negotiations among experienced counsel, such as this one, are "entitled to an initial presumption of fairness." *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citing Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)) (internal quotations omitted); *see also Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). The involvement of a third-party neutral also tends to support a finding that the process used to reach the settlement was not collusive. *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citing *Satchell v. Fed. Exp. Corp.,* No. 03-cv-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

Here, the settlement is the product of arm's-length negotiations, as "[t]he parties negotiated at length for around one year…and enlisted a neutral mediator to assist with negotiations." (July Order at 4) (citations omitted.) The settlement was reached only after a formal mediation before the Honorable Dickran M. Tevrizian (Ret.) of JAMS and only after nearly a year's worth of additional exchanges of information and negotiations.[5] (*See id.*) Though the Parties were unable to reach an agreement at the mediation, they agreed to continue their settlement efforts and exchange certain information regarding Avanquest's financial condition and insurance coverage, with the assistance of Judge Tevrizian. (Richman Decl. ¶ 17.) Nevertheless, the Parties ultimately reached an impasse and determined to return to litigation. (*Id.*)

---

[5]   It also bears noting that at the outset of the case, the Parties met and conferred through counsel—at that time, Avanquest was represented by its former counsel at DLA Piper—regarding their respective views of the case. (Richman Decl. ¶ 16.) At that time, Plaintiff's counsel gave Avanquest a presentation that outlined their investigation into the claims at issue and the bases of Plaintiff's allegations, as well as Plaintiff's views on the potential resolution of this matter, in particular, and settlements in similar actions against Avanquest's industry competitors. (*Id.*) Despite those discussions, the Parties determined that they were not then in a position to discuss resolution further and proceeded with the litigation. (*Id.*)

1    In the months that followed, the Parties briefed multiple additional motions, participated in

2    numerous meet and confers on ongoing discovery disputes, and otherwise vigorously litigated the claims

3    at issue. (*Id.* ¶ 18; *see also* Dkts. 140, 144–147, 153, 155, 157–158, 160–161, 169–173.) It was only after

4    Plaintiff prevailed on Defendant's fourth motion to dismiss and second motion to strike that the Parties

5    redoubled their efforts at resolving the action. (Richman Decl. ¶ 18.) Still then, it was only after months of

6    additional settlement discussions that the Parties were able to agree on a settlement framework—in

7    particular, one similar to what Judge Tevrizian had suggested in mediation—and the principal terms of a

8    class-wide settlement. (*Id.*) And even then, it would take weeks of additional back and forth to reduce

9    their agreement to writing in the form of the proposed Settlement Agreement. (*Id.*)

10    As a result, it is clear that the settlement is the result of non-collusive, arm's-length negotiations

11    presided over by a third-party neutral, which alone warrants preliminary approval of the settlement. (July

12    Order at 4.)

13    **B.    The Settlement is Clear of Defects and Provides Real, Immediate Relief.**

14    Next, and after considering the Court's concerns and executing their Amendment, the Parties have

15    modified the agreement to ensure that it is free of any obvious deficiencies. In its July Order, the Court

16    denied preliminary approval based on its findings that the settlement agreement fell short in two

17    respects—first, "that the provision that the vouchers will expire one year from the date they are 'issued' is

18    ambiguous," (July Order at 7), and second, that the release was too broad. (*Id.* at 8-9.) Both of those

19    deficiencies have been cured.

20    In particular, the Amendment removes all ambiguity from the settlement agreement by clearly

21    stating that the Vouchers will expire one (1) year from their *activation* (rather than their issuance) and that

22    Settlement Class Members will have one hundred twenty (120) days to activate them. (Amendment at 3.)

23    This 120-day activation period allows Settlement Class Members the opportunity to freely transfer the

24    Vouchers should they choose, as well as activate the Vouchers when it will be most beneficial for them.

25    Additionally, the fact that the one-year license to the Vouchers will only begin once individuals activate

26    them ensures that Settlement Class members (or the individuals to whom the Vouchers are transferred)

27    will have at least one full year to use the product.

28

Next, the Parties narrowed the scope of the release to include only claims that stem from the exact factual predicate of the claims asserted in the SAC. More specifically, the definition of "Released Claims" was amended to include only those claims that "aris[e] out of *the facts as alleged in the operative Second Amended Complaint* in this Action," (Amendment ¶ 1.19 (emphasis added)), and the "Related Unknown Claims" were modified to include only those "claims which *are based on the allegations asserted in the operative Second Amended Complaint*…." (*Id.* ¶ 1.28 (emphasis added).) Such releases are regularly recognized by courts to be proper in the class action context. *Tijero*, 2013 WL 60464, at *9 (finding a release appropriate when it " appropriately track[ed] the extent and breadth of [the p]laintiffs' allegations in the FAC [.]").

In fact, the *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) matter, which the Court relied upon in its July Order (*see* July Order at 9),[6] supports the proposition that preliminary approval should be granted here, as it recognizes "that federal district courts properly release[] claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Hesse*, 598 F.3d at 590. Because Boyd and Avanquest have agreed to release only those claims that stem from Plaintiff's allegations in the SAC—that Avanquest intentionally designed and advertised the Software to function in a way that it did not (and could not)—the proposed release extends only to those claims that "depend[] on the same set of facts as the claims that gave rise to the settlement." *Id.* (holding that a release in a class action settlement was overly broad and did not preclude claims in a separate class action when it sought to release claims that "deal[t] with different surcharges[ and were] imposed to recoup different costs").

---

[6]     The July Order also cited to *Wehlage v. Evergreen at Arvin LLC,* No. 10-cv-05839, 2012 WL 2568151, at *1 (N.D. Cal. June 25, 2012), for the proposition that the original proposed release here was overly broad "considering the lack of cash relief to the class members." (July Order at 9.) The *Wehlage* settlement, however, involved a somewhat different set of circumstances from the instance case. For example, the settlement class there was certified pursuant to Rule 23(b)(2) and therefore, the parties sought to settle only the "injunctive" claims of the class. *Wehlage*, 2012 WL 2568151, at *3. The potential damages per class member in that case were also significantly larger than those here—up to $500 in damages per class member in *Whelage* (*see* Cal. Health & Safety Code § 1430) as compared to, at most, the $40 purchase price of the Software here (which Plaintiff never sought to recover in its entirety).

1    With those deficiencies remedied, there should be no question that the settlement is approvable, as

2    a court is likely to find a settlement agreement free from obvious deficiencies when it provides a real,

3    immediate benefit to the class despite numerous risks. *See Villegas*, 2012 WL 5878390, at \*6 (citing *In re*

4    *Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000)) (finding that fairness and adequacy of the

5    settlement are assessed "relative to [the] risks of pursuing the litigation to judgment.").

6    Despite Avanquest's financial condition—which the Court already found establishes that

7    Avanquest "does not have the ability to fund a settlement that would provide meaningful monetary relief

8    to the class members" (July Order at 6)—the  proposed settlement provides real, immediate and valuable

9    in-kind and prospective relief to the Settlement Class without requiring them to so much as submit a claim

10   form. In particular, Avanquest has agreed to provide each Settlement Class Member a Voucher for a one-

11   year license to Avanquest's AutoSave Essentials Software, which has a value of approximately $30—a

12   price just short of the $39.95 typical purchase price for System Suite. (Agreement ¶ 2.1(a).) The AutoSave

13   Essentials Software provided pursuant to the Settlement Agreement is a product completely independent

14   of the Software that was being challenged in this case and Plaintiff believes, after his experts did their own

15   analysis, that it offers real value to the Settlement Class. (Richman Decl. ¶ 7.) The Settlement Class

16   Members will automatically receive the Vouchers, will have 120 days to activate them, will not need to

17   provide any payment information to redeem them, and will not be subject to automatic renewals or

18   renewal fees upon their expiration. (Agreement ¶ 2.1(a); *see also* Amendment at 3.) And if less than

19   fifteen percent of the Settlement Class activates the Voucher, the difference between the total number of

20   license years that would have been activated if fifteen percent of the Settlement Class activated them and

21   the total number of license years that were actually activated will be evenly distributed among those who

22   did. Thus, at a minimum, Avanquest will be required to distribute nearly $1 million of in-kind benefits

23   under the settlement.

24   The settlement also requires Defendant to provide substantial prospective relief, as Avanquest has

25   agreed to modify System Suite's in-software help file and online Frequently Asked Questions to include

26   more comprehensive descriptions of the problems detected and the effect that fixing the detected items

27   will have in the Software's main user interface. Avanquest has also agreed to modify the Software's

28

online marketing materials to more accurately describe the benefits of using the Software—including, for example, by refraining from claiming without qualification that the Software is capable of eliminating all PC crashes and freezes or fixing all Windows registry errors—and to make the same revisions to the Software's physical packaging when a new version of the Software is released. This strong combination of individual and prospective relief will undoubtedly compensate the Settlement Class for their purchase of Software that did not perform as advertised, as well as ensure that similar conduct does not continue into the future.

The fairness of the relief provided under the settlement is even more apparent when considered in light of the risks of continued litigation. Indeed, though Plaintiff is confident that he would ultimately prevail at trial, the risks of further litigation are significant. (Richman Decl. ¶ 19.) Absent settlement, the expense, duration, and complexity of protracted litigation would be substantial and require further discovery, adversarial class certification, briefing on numerous substantive issues, extensive expert analysis, continued technical research into the content and capabilities of the Software, and ultimately, trial preparation and trial. (*Id.*) Additionally, given Avanquest's financial condition and limited insurance coverage, even if Plaintiff did ultimately prevail at trial, the class cannot be assured of recovery. (*Id.*; *see also* July 3 Order at 6.) And in light of the amount at stake and Avanquest's reputational interests, if Plaintiff could overcome all of these hurdles, Avanquest is certain to appeal, further delaying any relief to the class. (Richman Decl. ¶ 19); *see also Swift, et al. v. Direct Buy, Inc., et al.*, No. 11-cv-401, Dkt. 189 at 7, 9 (N.D. Ind. Oct. 24, 2013) (preliminarily approving settlement against defendant in "dire financial situation," when "a major benefit of the settlement [was] that class members [would] obtain these benefits much more quickly than had the parties not settled," because "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all.").

In the end, it should be clear that Plaintiff obtained a substantial result for the Settlement Class and that no deficiencies are present. The settlement therefore warrants preliminary approval.

**C.     The Settlement Treats Settlement Class Members Fairly and Falls Squarely Within the Range of Possible Approval.**

Finally, this settlement falls well within the range of possible approval—indeed, the Court already determined "that the proposed relief in the Settlement Agreement is fair to class members, who otherwise

risk obtaining nothing." (July Order at 7) (citations omitted.) "To determine whether a settlement falls within the range of possible approval a court must focus on substantive fairness and adequacy, and consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011) (quoting *In re Tableware,* 484 F. Supp. 2d at 1080) (internal quotations omitted).

As described above, the value of the settlement—in terms of tangible individual relief and Avanquest's revised marketing practices going forward—is strong compared to the risks of litigation. Here, Boyd had two primary purposes in pursuing and resolving this case: (i) to ensure that Avanquest did not continue to utilize its alleged deceptive design and marketing of the Software, and (ii) to obtain appropriate relief for everyone who overpaid for the Software. Plaintiff's first goal was undoubtedly achieved: Avanquest has agreed to modify the Software to more accurately represent the problems the Software detects on individuals' computers and describe the effect that fixing (or not fixing) those problems would have, and to better advertise the true functionalities of the Software both online and on its physical packaging. This prospective relief alone creates a substantial benefit for the Settlement Class Members—as well as for consumers nationwide—rendering the settlement within the range of possible approval. That is especially true in light of Avanquest's financial condition. *See*, *e.g.*, *Wehlage*, 2012 WL 2568151, at *1 (holding that a stipulated injunction against a defendant with a poor "financial condition" requiring that its practices comply with the law carried "a substantial value and obtains fair and adequate relief for the [c]lass"); *Schwarm v. Craighead*, 814 F. Supp. 2d 1025, 1029 (E.D. Cal. 2011) (explaining that even though "[c]lass members may never benefit financially" from a settlement agreement, "they do benefit from the attorneys' success in stopping defendants' illegal practices and protecting class members from further harassment"); *Bruno v. Quten Research Inst., LLC*, No. 11-cv-00173, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) (deciding that there was "a high value to the injunctive relief obtained" in a settlement, as it would "bring a benefit to class consumers" as well as to "the marketplace" as a whole); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, 2013 WL 1120801, at *5 (N.D. Cal. March 18, 2013) (holding that "the value of the injunctive relief" in a settlement "weigh[ed] strongly in favor of approval").

1    Indeed, without Plaintiff's vigorous litigation of this Action, Defendant would continue its allegedly

2    deceptive design and marketing practices and therefore continue to profit off of unsuspecting consumers.

3         Plaintiff's second goal was likewise achieved, as the settlement provides all Settlement Class

4    Members a Voucher for one year of free access to AutoSave Essentials—which has a value of $30.00—

5    without requiring any effort on behalf of the Settlement Class Member. This relief is significant for two

6    reasons. First, Boyd's theory of this case has always been that while System Suite did not perform all of

7    the beneficial tasks advertised, the Software did not lack utility altogether. Thus, even if Plaintiff were

8    ultimately successful in obtaining a judgment against Avanquest, he could only obtain a portion of the

9    purchase price he and the Class Members paid for the Software. And second, Avanquest's financial

10   condition would allow Settlement Class Members to—at most—recover a small fraction of that purchase

11   price (or the portion to which they are entitled), especially when taking into account the additional notice

12   and administration expenses such monetary relief would require. (July Order at 6) (finding that Avanquest

13   does not have the ability to fund a class-wide settlement); *see also Redman v. Radioshack*, 768 F.3d 622,

14   632 (7th Cir. 2014) (finding that the defendant "is in terrible financial shape" and recognizing that

15   "[a]dding millions to the cost of the settlement to [the defendant] might, if not precipitate the company's

16   failure, make it more likely—an outcome that might leave very little for the class members."); *Swift,* No.

17   11-cv-401, Dkt. 189 at 13 (finding that "[t]he financial condition of the defendant in [a] class action

18   settlement is a legitimate—if not entirely pragmatic—consideration" when considering whether approval

19   is appropriate) (citing *In re Wireless Tele. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir.

20   2005)). Under the settlement, on the other hand, all Class Members are entitled to a Voucher valued close

21   to the amount of their purchase price of System Suite—or potentially even more depending on the number

22   of individuals who redeem their free access.[7] *See Redman*, 768 F.2d at 633 (finding non-pecuniary class-

23   wide settlement relief appropriate and a "modest settlement…the prudent course" when the defendant was

24   on the verge of bankruptcy and added relief would likely leave less for the class—not to mention advance

25   the defendant's failure).

26   ───────────────
     [7]      Again, if less than fifteen percent of the Settlement Class Members activate their
27   Vouchers, those who did activate their free access will receive an equal increase in the amount of
     time they can use it in excess of one year. (Agreement ¶ 2.1(b).)
28

In the end, in light of the substantial risks of ongoing litigation and Avanquest's financial condition, the immediate, substantial, and fair recovery the Agreement affords to Settlement Class Members falls well within the range of possible approval.

**VII.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN.**

Next, the Court should approve the Parties' proposed notice plan, which it has already found to be adequate. (July Order at 9-10.) Once a class has been certified, Due Process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is, whenever possible "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Likewise, Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Pursuant to Rule 23(c)(2)(B), the notice must describe the action, define the class, inform class members that they may enter an appearance through an attorney or, if desired, request exclusion. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Notice is adequate when it provides the information necessary to make a decision in language that can be readily understood by the average class member. Newberg on Class Actions § 11:53 (4th ed. 2002). This is the case here, where the format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. All forms of notice are attached to the Agreement as Exhibits 1-A and 1-B.

On that front, the Parties have agreed to (and the Court has confirmed the adequacy of) a comprehensive notice plan overseen by Class Action Administration, Inc. ("CAA"), an experienced class action settlement administrator. (*See CAA:XV*, Class Action Administration, Inc., *available at* http://www.classactionadmin.com (last visited September 29, 2015).) CAA will send direct notice via email to each Settlement Class Member for whom Avanquest has a valid email address,[8] which will direct

---

[8]     The Parties and the Settlement Administrator expect direct e-mail notice to be particularly effective in this case given that e-mail was the primary means by which Avanquest communicated with its customers, and each customer that registered to use the Software was required to provide a valid e-mail address to do so. (Richman Decl. ¶ 21.)

Settlement Class Members to the settlement website. If any emails immediately result in a bounce-back or are otherwise undeliverable, the settlement administrator will attempt to re-send the notice. Additionally, if the Minimum Activation Amount has not ultimately been reached, CAA will transmit a reminder notice to all Settlement Class Members who did not activate their free one-year license to AutoSave Essentials.

Third, the settlement administrator will host a settlement website that will serve as the central hub for potential Settlement Class Members to gather information on the settlement. The website will include copies of the notice, the Settlement Agreement and its exhibits, and other relevant court documents. The website will also provide Settlement Class Members with additional information regarding their rights to exclude themselves from or object to the settlement, and contact information in the event they have questions.

Finally, no later than ten days after filing the Agreement with the Court, CAA will serve upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials notice of the proposed Agreement in accordance with the requirements set forth in 28 U.S.C. § 1715(b)(1)–(8).

In the end, "[t]he parties have provided the means to identify and inform all class members of the settlement and to give them [V]ouchers without any claims process [and] the format and language of the proposed email and website are straightforward and provide the necessary information." (July Order at 10.) The Court should therefore approve the proposed notice plan. *See Kulesa*, No. 12-cv-00725, Dkt. 88 (C.D. Cal. Feb. 10, 2014) (approving similar notice plan against Avanquest's industry competitor); *Hall v. TuneUp Corporation*, No. 13-cv-01804, Dkt 75 (N.D. Ill. Aug. 28, 2014) (same); *Rottner v. AVG Techs., Inc.*, No. 12-cv-10920, Dkt. 100 (D. Mass. Dec. 17, 2013) (same).

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff Johnny Boyd respectfully requests that the Court enter an Order (1) certifying the Settlement Class for settlement purposes, (2) appointing him as Class Representative, (3) appointing his counsel, Jay Edelson, Rafey Balabanian, and Benjamin H. Richman of Edelson PC, as Class Counsel, (4) granting preliminary approval of the proposed Settlement Agreement, (5) approving the proposed notice plan, and (6) providing such other and further relief the Court deems

1   reasonable and just.

2                                          Respectfully Submitted,

3                                          **JOHNNY BOYD,** individually and on behalf of all
                                           others similarly situated
4
    Dated: September 29, 2015              By: /s/ Benjamin H. Richman
5                                                  One of Plaintiff's attorneys

6                                          Jay Edelson (Admitted *Pro Hac Vice*)
                                           jedelson@edelson.com
7                                          Rafey Balabanian (Admitted *Pro Hac Vice*)
                                           rbalabanian@edelson.com
8                                          Benjamin H. Richman (Admitted *Pro Hac Vice*)
                                           brichman@edelson.com
9                                          EDELSON PC
                                           350 North LaSalle Street, Suite 1300
10                                         Chicago, Illinois 60654
                                           Tel: 312.589.6370
11                                         Fax: 312.589.6378

12                                         Samuel Lasser (SBN – 252754)
                                           slasser@edelson.com
13                                         EDELSON PC
                                           1934 Divisadero Street
14                                         San Francisco, California 94115
                                           Tel: 415.212.9300
15                                         Fax: 415.373.9435

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFF'S RENEWED MOTION FOR              26              CASE NO. 3:12-cv-04391-WHO
PRELIMINARY APPROVAL